**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: | Chapter 11 |
| The Mark Real Estate Holdings, LLC,[1] | Case No. 25-20100 |
| Debtor. | |

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER ON AN INTERIM AND THEN
FINAL BASIS: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION
FINANCING PURSUANT TO § 364 OF THE BANKRUPTCY CODE; (II)
AUTHORIZING THE USE OF CASH COLLATERAL; (III) GRANTING LIENS
AND SUPER-PRIORITY CLAIMS; (IV) GRANTING REQUEST FOR
EXPEDITED DETERMINATION AND LIMITATION OF NOTICE;
AND (V) SCHEDULING A FINAL HEARING**

**REQUEST FOR EXPEDITED DETERMINATION
REGARDING THE INTERIM RELIEF ONLY**

**This Motion includes a request for an expedited determination pursuant to
Local Rule 9013-4 as to the request for interim relief only, with a proposed
hearing on May 1, 2025.  A statement of the facts and circumstances justifying
expedited determination, as required by Local Rule 9013-4, is included herein.**

The Mark Real Estate Holdings, LLC, the above-captioned debtor and debtor-in-

possession ("**Debtor**"), by and through undersigned proposed counsel, moves this Court (the

"**Motion**"), pursuant to §§ 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code

(the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-2, and 9013-1 of the

Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"),

for entry of an order providing the following relief on an interim basis substantially in the form

filed contemporaneously herewith (the "**Interim Order**") and, subsequently, after adequate notice

---

[1] The Mark Real Estate Holdings, LLC's principal place of business is 100 US Route 1, Cumberland, Maine 04021, and the last four digits of its taxpayer identification number are 8757.

and hearing, on a final basis (the "**Final Order**"):

(a)     authorizing the Debtor, as borrower, to obtain postpetition financing from Titan Funding, LLC (the "**DIP Lender**"), as lender, up to the maximum principal amount of **$2,725,000.00** (the "**DIP Facility**"), subject to the terms and conditions in the Interim Order, the Final Order, and that certain DIP Loan Term Sheet attached hereto as **Exhibit 1**;

(b)     approving, pursuant to § 364 of the Bankruptcy Code: (i) that under the Interim Order, the DIP Obligations arising from Advances (each defined below) by the DIP Lender up to **$200,000.00** shall be secured, on an interim basis, by DIP Liens that are *pari passu* with the DIP Lender's prepetition junior security interests[2] in the DIP Collateral (defined below); and (ii) that upon entry of the Final Order, the DIP Obligations shall (1) have priority over any and all administrative expenses, including, without limitation, the kind specified in §§ 105, 326, 328, 330, 331, 365, 503(b), 507(a), 507(b), 726, 1113, and/or 1114 of the Bankruptcy Code and all administrative claims granted pursuant to an order of the Bankruptcy Court; and (2) be secured by valid, binding, continuing, enforceable, fully perfected, and unavoidable liens (the "**DIP Liens**") on all assets of the Debtor (other than Avoidance Actions (defined below)) (the "**DIP Collateral**"), all subject to the Carve Out (defined below);

(c)     authorizing the Debtor to use cash collateral (as such term is defined in § 363(a) of the Bankruptcy Code) (as so defined, the "**Cash Collateral**"), which constitutes the proceeds of the DIP Facility, on the terms and conditions set forth in the Interim Order and the budget attached as **Exhibit A** to the Interim Order (such budget, as may be modified or continued from time to time in accordance with the Interim Order and Final Order, the "**Budget**"); and

(d)     limiting notice and scheduling a final hearing (the "**Final Hearing**") to consider entry of a Final Order regarding the relief sought herein and setting related deadlines.

## JURISDICTION AND VENUE

1.     The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b).  Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the

---

[2] The Debtor's prepetition obligations to the DIP Lender are secured by a mortgage, recorded in the Cumberland County Registry of Deeds at Book 40369, Page 264 (the "**Mortgage**"), which Mortgage encumbers the real estate located at 100 US Route 1, Cumberland, Maine 04021, as well as a UCC lien filed with the Maine Secretary of State's Office (the "**UCC Lien**").  The Mortgage and UCC Lien were second priority liens, subject to any priming statutory liens under Maine law.

2

District Court has authority to refer and has referred this proceeding to this Court.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4.      The statutory predicates for the relief sought herein are the sections of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules set forth above.

## CASH COLLATERAL AND BORROWING DISCLOSURES

5.      Pursuant to the Bankruptcy Rules and the Local Rules, the Debtor makes the following disclosures regarding the relief sought in this Motion:

| Category | Disclosure |
|---|---|
| Borrower | The Mark Real Estate Holdings, LLC |
| Guarantor | None |
| DIP Lender | Titan Funding, LLC |
| DIP Facility Commitment | The DIP Facility shall be available in the maximum principal amount of **$2,725,000.00**, provided that only up to $200,000.00 shall be advanced under the Interim Order.<br><br>All obligations arising under the DIP Facility are referred to herein as the "**DIP Obligations**." |
| Term | The DIP Facility shall mature and be payable in full (the "**DIP Maturity Date**") on the later of: (i) the 120th day after entry of the Final Order by the Bankruptcy Court; or (ii) a date otherwise agreed to by the DIP Lender and the Debtor. |
| Conditions of Borrowing | The obligation of the DIP Lender to make an advance (an "**Advance**") under the DIP Facility shall be subject to the conditions precedent that on the date of each such Advance, the following shall be true: |

| | |
|---|---|
| | (a) The Court has entered the Interim Order (or Final Order, once applicable), and such order has not been otherwise stayed or reversed; |
| | (b) The Interim Order (or Final Order, once applicable) grants the DIP Lender the DIP Liens upon the terms consistent with this Motion; |
| | (c) The Debtor is in compliance in all material respects with the Budget (subject to permitted variances); |
| | (d) No Event of Default (defined below) has occurred; and |
| | (e) The Debtor has delivered a written request to the DIP Lender stating the amount of the Advance requested and a certification that the conditions herein as satisfied. |
| Interest Rate | Interest shall accrue on actual Advances from the DIP Lender at the rate of 12.00% per annum. |
| Expenses and Fees | The Debtor shall not pay any commitment or exit fees to the DIP Lender under the DIP Facility.  The DIP Obligations shall include the DIP Lender's reasonable attorneys' fees incurred in its capacity as the DIP Lender. |
| Budget | See **Exhibit A** to Interim Order |
| DIP Facility Liens and DIP Collateral | Subject to the Carve Out, upon entry of the Final Order, the DIP Obligations shall be secured by first priority DIP Liens on all of the DIP Collateral.  For avoidance of doubt, the DIP Collateral shall not include Avoidance Actions[3] and the proceeds thereof.<br><br>The Advances under the Interim Order shall be secured, on an interim basis, by DIP Liens that are *pari passu* with the DIP Lender's Mortgage and UCC Lien.<br><br>Subject to the Carve Out and entry of the Final Order, the DIP Obligations shall also be deemed superpriority administrative expense claims in the chapter 11 case (the "**DIP Superpriority Claims**"). |

---

[3] As used herein, "**Avoidance Actions**" shall mean the claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law.

| | |
|---|---|
| | Upon entry of the Final Order, the Interim DIP Advances shall then be included in the DIP Obligations and secured by the DIP Liens. |
| Name of each entity that may assert a potential interest in the DIP Collateral and/or Cash Collateral | The following entities may assert an interest in the DIP Collateral and/or Cash Collateral (the "**Prepetition Lienholders**"):<br><br>Mechanic's Liens:<br><br>    Destefano & Associates<br>    James A. Mcbrady, Inc.<br>    GDS Services, Inc. d/b/a Stone Surface<br>    Fiddlehead Designs Cabinetry, Inc.<br>    Seabee Electric, Inc.<br>    Hancock Lumber Company, Inc.<br>    JLD Services, LLC d/b/a Enertec<br>    Liston Paint LLC<br>    Chase Excavating, Inc.<br>    American Aerial Services, Inc.<br>    FBS Plumbing & Heating Co.<br>    Optimum Building Systems, LLC<br>    Timberland Drywall, Inc.<br>    Paul G. White Tile Co. Inc.<br>    Pond Cove Millwork<br><br>Mortgages:<br><br>    Construction Loan Services II, LLC<br>    Titan Funding, LLC<br>    Broad Cove Ridge, LLC |
| Purpose for use of Cash Collateral and Proceeds of the DIP Facility | The Debtor has an immediate need for use of the Cash Collateral in the amount and in the manner set forth in the Budget. Use of Cash Collateral on both an interim and final basis is necessary to avoid immediate and irreparable harm to the Debtor and its estate because, without the use of Cash Collateral, the Debtor will not have the funds necessary to maintain, preserve, and operate its business and assets, to provide financial information, and to pay other expenses necessary to maximize the value of the Debtor's estate in chapter 11, including payment of utilities, amounts necessary to complete construction of the property, and administrative expenses. |

| | |
|---|---|
| Modification of Automatic Stay | The Interim Order does not contain any modification of the automatic stay (except as to providing notice of an Event of Default, defined below) without a further hearing and order of this Court, provided that the Debtor would consent to relief from stay as to the DIP Lender upon the terms and conditions in the Interim Order. |
| Material terms, including duration of the use of Cash Collateral and the proceeds of the DIP Facility | The Debtor shall be authorized to use the Advances (which shall constitute Cash Collateral) in accordance with the initial Budget attached to the Interim Order as **Exhibit A** and subsequent Budgets to be filed at later dates according to orders of this Court. |
| Carve-Out | The DIP Lender shall disburse proceeds of the DIP (the "**Professional Fee Disbursements**") directly to the professionals of Borrower retained pursuant to an order of the Bankruptcy Court (collectively, the "**Professionals**") in accordance with the amounts and timing set forth in the Budget (i.e., the rows labeled in the Budget for such Professional), provided that such Professional Fee Disbursements, in aggregate, for Bernstein Shur shall not be less than **$250,000.00**.<br><br>Upon the DIP Lender's funding of the Professional Fee Disbursements to the applicable Professional, the Professional Fee Disbursements shall remain subject to the DIP Liens, but the DIP Liens, DIP Obligations, DIP Superpriority Claim, and all other liens and claims in the chapter 11 case shall be subordinated to the Professional Fee Disbursements and the respective claims of the Professionals (the "**Carve Out**").  The Carve Out shall be used exclusively to fund allowed fees and expenses of the Professionals in the Chapter 11 Case (the "**Allowed Professional Fee Claims**"), and the Carve Out shall not be available to fund any other claims or interests in the chapter 11 case, provided that if the Allowed Professional Fee Claims are less than the Professional Fee Disbursements to a Professional, such unused funds shall be returned to Debtor, but upon return to Debtor, shall remain subject to the DIP Liens.<br><br>For the avoidance of doubt, nothing herein shall permit the Professionals to apply the Professional Fee Disbursements to fees and expenses absent further order of this Court. |

| | |
|---|---|
| Events of Default (termination and remedies) | The following shall be events of default (each, an "**Event of Default**") as to the DIP Facility unless waived by the DIP Lender in writing in its sole discretion: (i) failure by the Debtor to pay principal, interest, or any other amounts upon maturity of the DIP Facility; (ii) the chapter 11 case is dismissed or converted to a chapter 7 case; or (iii) the Debtor uses the proceeds of the DIP Facility in violation of the Budget (subject to timing and other permitted variances).<br><br>If any Event of Default shall have occurred and be continuing, the DIP Lender may, by written notice to the Debtor and the United States Trustee, take any or all of the following actions: (1) declare the DIP Facility to be suspended or terminated, whereupon the DIP Facility shall be suspended or terminated and the DIP Lender shall have no obligation to make further Advances; (2) declare the DIP Obligations to be immediately due and payable, without presentment, demand, protest, or (except as provided above) other notice of any kind, all of which are hereby expressly waived by the Debtor; or (3) terminate the Debtor's ability to use the proceeds of the DIP Facility, provided that the Debtor shall be permitted to pay Allowed Professional Fees Claims included in the Budget in accordance with the Carve Out described above. |
| Amount of debt encumbering the DIP Collateral as of Petition Date | Approximately $28.5 million |
| Reservation of Rights | Except as provided in the Interim Order or Final Order, neither the Debtor, nor the DIP Lender, waive any of their rights under the Bankruptcy Code, any applicable law, or the relevant transaction documents. |
| Waivers | Subject to entry of the Final Order, the Debtor shall waive rights of surcharge of the DIP Collateral as to the DIP Lender under § 506(c) of the Bankruptcy Code and waive the right to assert the doctrine of marshaling relating to the DIP Collateral as to the DIP Lender. |

## GENERAL BACKGROUND

6.      Contemporaneously with the filing hereof (the "**Petition Date**"), the Debtor

commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the

Bankruptcy Code with this Court.

7.    The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

8.    The Debtor owns the condominium development project called "The Mark," comprised of approximately 45 residential units and located at 100 US Rt. 1 in Cumberland, Maine (the "**Project**").  In addition to the residential units, the Project includes garage parking, storage units, washrooms, bicycle storage, and a gym.

9.    The Project was initially owned by Cumberland Foreside Partners, LLC ("CFP"). Upon information and belief, construction on the Project was delayed, overbudget, and improperly funded by the primary construction lender, Construction Loan Services II, LLC ("**Builders Capital**").  Therefore, in or around late 2024, various contractors ceased work on the Project for nonpayment.  As a result of the non-payment of construction costs, approximately $2,142,800.00 remains outstanding and has given rise to numerous mechanic's liens on the Project (the "**Mechanic's Liens**" and each lienholder, individually, a "**Mechanic's Lienholder**").

10.   Due to the failure to complete the Project, the growing Mechanic's Liens, and the rapidly growing costs, prior to the Petition Date, CFP transferred the Project to the Debtor.  The Debtor acquired the Project and its assets subject to all valid liens and claims secured by such liens (the amount of which far exceeded the value of the Project at such time), with the intent to finish the Project, satisfy and discharge the Mechanic's Liens, and maximize the value of the turn-key property through an orderly and strategic sale process.

## SUMMARY OF INTERESTS IN CASH
## COLLATERAL AND OTHER LIENS AND CLAIMS

11.     Other than the DIP Lender, who has an interest in the Debtor's Cash Collateral by virtue of the Advances made to the Debtor and the DIP Liens, the Debtor did not have any other Cash Collateral as of the Petition Date.  Attached hereto as **Exhibit 2** is a summary of the liens and claims attached to the DIP Collateral, based on existing information reasonably available to the Debtor.

## THE DEBTOR'S NEED FOR THE USE OF CASH COLLATERAL
## AND POST-PETITION BORROWING

12.     As reflected in the Budget, the Debtor has an immediate and critical need for the DIP Facility proceeds and use of those proceeds as Cash Collateral in the earliest days of the chapter 11 case and beyond.  Access to the DIP Facility will allow the Debtor to fund necessary and imminent expenses required for the Debtor to protect and maintain and finish the Project, including to obtain a certificate of occupancy and discharge the Mechanic's Liens, as well as for the Debtor to fund other necessary expenses in chapter 11 that the Debtor believes will preserve and maximize the value of the estate (such as utilities, insurance, and security).  The Debtor submits that through the DIP Facility and the use of the proceeds therefrom to complete the Project as set forth in the Budget, the value of the Project will increase substantially compared to its value as an incomplete facility as of the Petition Date.

## RELIEF REQUESTED

13.     The Debtor requests entry of the Interim Order and, after sufficient notice and hearing, the Final Order, granting the relief sought herein.

## BASIS FOR RELIEF

I.     **This Court Should Authorize the Debtor to Obtain Postpetition Financing and Grant the DIP Liens and other Rights and Privileges to the DIP Lender.**

14.     Bankruptcy courts have authority to permit debtors-in-possession to obtain postpetition financing pursuant to § 364 of the Bankruptcy Code.

15.     Section 364(c) provides that "[i]f the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—… (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c)(3).

16.     Section 364(d) provides that after notice and hearing, a bankruptcy court

may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).   In evaluating proposed postpetition financing under § 364 of the Bankruptcy Code, courts perform a qualitative analysis and often consider various factors, including whether:

(a)     unencumbered credit or alternative financing without superpriority status is available to the debtor;

(b)     the credit transactions are necessary to preserve assets of the estate;

(c)     the terms of the credit agreement are fair, reasonable, and adequate;

(d)     the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtors' estate and their creditors; and

(e)     the proposed financing agreement adequately protects prepetition secured creditors.

See, e.g., In re Los Angeles Dodgers LLC, 457 B.R. 308, 312 (Bankr. D. Del. 2011); In re Aqua

10

Assoc., 123 B.R. 192 (Bankr. E.D. Pa. 1991).

17.     For the reasons discussed herein (as may be supported by evidence at a hearing on this Motion, as necessary), the Debtor submits that it satisfies the standards required to access postpetition financing under §§ 364(c) and 364(d) of the Bankruptcy Code.

18.     First, in demonstrating that credit is not available without the protections afforded by § 364(c) or 364(d) of the Bankruptcy Code, a debtor need only make a good faith effort. See, e.g., In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986) (holding "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"). Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989). Given its current financial condition, financing arrangements, and debt and capital structure (including the Mechanic's Liens and prepetition liens held by Builders Capital[4] and the DIP Lender, which far exceeded the value of the Project as an unfinished property on the Petition Date), the Debtor does not believe it could identify actionable alternative sources of financing other than that offered by the DIP Lender on terms more favorable than those under the DIP Facility, and the Debtor was not able to obtain unsecured credit allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code.

19.     Second, as a debtor-in-possession, the Debtor has a fiduciary duty to protect and maximize the value of its estate. See In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004). The DIP Facility, if approved, will provide the necessary working capital to fund the

---

[4] Upon information and belief, Builders' Capital's debt accrued interest at a rate of 18% prior to the Petition Date.

Debtor's day-to-day expenses and completion of the Project, which will provide a path for the Debtor to execute its restructuring strategy. Without access to the DIP Facility, the Debtor has no other cash, which would result in immediate and irreparable harm to the estate and destroy its going-concern value as a completed, marketable housing development. The Debtor also would face challenges in administering the chapter 11 case without the liquidity provided by the DIP Facility.

20.    Third, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the proposed lender. See In re L.A. Dodgers, 457 B.R. at 312 (approval of debtor-in-possession financing requires terms that are "fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender"); In re Farmland Indus., Inc., 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) (although many of the terms favored the lenders, "taken in context, and considering the relative circumstances of the parties," the court found them to be reasonable); Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.), 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization). Here, given the urgent need of the Debtor to obtain financing for the benefit of all parties in interest, the Debtor submits that the terms of the DIP Facility (including interest rate) are fair, appropriate, reasonable, and in the best interests of the Debtor, its estate, and its creditors. The DIP Facility will allow the Debtor to: (a) pay the Mechanics' Lienholders (including subject to any discounted payoffs as may be negotiated); (b) finish the Project; and (c) propose a reorganization strategy that benefits all parties by maximizing the value of the Project.

21.    Moreover, terms of the DIP Facility are competitive. The interest rate for the DIP

Facility is 12% *per annum*, which is significantly less than the Builders' Capital interest rate.

Moreover, there are no entrance or exit fees under the DIP Facility. Finally, the DIP Facility

proceeds shall be used to fund completion of the Project, which will benefit all parties. The Debtor,

therefore, believes that this requirement is satisfied.

      22.     Fourth, a debtor's decision to enter into a postpetition lending facility under § 364

of the Bankruptcy Code is governed by the business judgment standard. See In re Trans World

Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del 1994) (noting that the interim loan, receivable

facility, and asset based facility were approved because they "reflect[ed] sound and prudent

business judgment [were] reasonable under the circumstances and in the best interests of TWA

and its creditors"); Ames Dep't Stores, Inc., 115 B.R. at 40 ("cases consistently reflect that the

court's discretion under section 364 is to be utilized on grounds that permit reasonable business

judgment to be exercised so long as the financing agreement does not contain terms that leverage

the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to

benefit parties in interest"). Courts grant a debtor-in-possession deference in acting in accordance

with its business judgment in obtaining postpetition secured credit, so long as the agreement to

obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy

Code. See, e.g., In re L.A. Dodgers, 457 B.R. at 313 ("[C]ourts will almost always defer to the

business judgment of a debtor in the selection of the lender."). Here, the Debtor submits that entry

into the DIP Facility is consistent with the exercise of the Debtor's reasonable business judgment,

including the Debtor's analysis regarding its liquidity needs during the case and available sources

of cash, as well as the value-maximization that will result from completing the Project.

      23.     Next, §364(d) of the Bankruptcy Code provides that a debtor may obtain credit

secured by a senior or equal lien on property of the estate already subject to a lien, after notice and

a hearing, where the debtor is "unable to obtain such credit otherwise" and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1). The Debtor, therefore, may incur "priming" liens under the DIP Facility if either: (a) the prepetition lender has consented; or (b) the prepetition lender's interests in collateral are adequately protected. Sections 361(1) and 361(2) do not apply, because the Debtor is not proposing cash payments or replacement liens as adequate protection. Rather, § 361(3) applies, which provides adequate protection may be provided by the "indubitable equivalent" of the secured creditors interest in the property securing their claims. "Indubitable equivalence requires such relief as will result in the realization of value [by the secured creditor]." In re Vander Vegt, 499 B.R. 631, 637 (Bankr. N.D. Iowa 2013) (internal quotation marks and citation omitted), aff'd sub nom. First Sec. Bank & Tr. Co. v. Vegt, 511 B.R. 567 (N.D. Iowa 2014). To be the "indubitable equivalent" of a secured creditor's interest in property, the proposed adequate protection must both compensate the secured creditor for the present value of that interest, and insure the safety of that interest. In re Pac. Lifestyle Homes, Inc., No. 08-45328, 2009 WL 688908, at *9 (Bankr. W.D. Wash. Mar. 16, 2009) (relying on In re Murel Holding Corp., 75 F.2d 941, 942 (2d Cir.1935), and In re Am. Mariner Indus., Inc., 734 F.2d 426, 431 (9th Cir.1984)), effectively overruled on other grounds by United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365 (1988)).

24.     Here, the Prepetition Lienholders (other than the DIP Lender) have not consented to the priming DIP Liens. However, as to the holders of the Mechanic's Liens, the primary use of the proceeds of the DIP Facility will be to: (a) pay the Mechanic's Liens for prepetition amounts due; and (b) pay postpetition vendors who are providing services to the Debtor to complete the Project. Therefore, the Mechanic's Lienholders will benefit from, and not be harmed by, the DIP

Facility, and any borrowing prior to such payoffs under the Interim Order will be on junior secured basis to the senior Mechanic's Liens.

25.     As to Builders Capital, it suffers no diminution in value of its interests in the DIP Collateral as of the Petition Date from the DIP Facility proceedings paying off the Mechanic's Liens, as that is a dollar-for-dollar substitute of parties only.   As to the remaining borrowing constituting DIP Obligations on a priming basis (which amount is only a fraction of the total proposed DIP Obligations as reflected in the Budget), such borrowing will allow the Debtor to complete the Project and prepare a plan of reorganization to get parties paid through a going-concern sale.   Based on the Debtor's analysis (as will be supported by evidence at the appropriate time, if needed), the completed value of the Project (only unlocked through the DIP Facility) reflects a substantial increase of value after the Petition Date that will exceed the amount of the new, priming DIP Obligations, such that Builders Capital is adequately protected by such increase in value of its interests after the Petition Date.[5]   See, e.g., In re Vander Vegt, 499 B.R. 631, 639 (Bankr. N.D. Iowa 2013), aff'd sub nom. First Sec. Bank & Tr. Co. v. Vegt, 511 B.R. 567 (N.D. Iowa 2014) (approving priming liens where adequate protection provided based on value increase to property); In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992) (approving priming lien where the debtor sought to renovate part of an office building to attract higher-paying tenants, and court concluded that the property's value would increase by at least the amount of the loan and this was an indubitable equivalent sufficient to be adequate protection).

26.     Finally, the Debtor submits that the DIP Lender should be deemed a good-faith lender under the Bankruptcy Code.   Specifically, § 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or

---

[5] Titan Funding, LLC, as the DIP Lender and junior mortgage holder, consents to the priming by the DIP Liens.

any priority or lien so granted, to an entity that extended such credit in good faith,
whether or not such entity knew of the pendency of the appeal, unless such
authorization and the incurring of such debt, or the granting of such priority or lien,
were stayed pending appeal.

11 U.S.C. § 364(e).  Section 364(e) protects a good-faith lender's right to collect on loans extended

to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to

obtain such loans or grant such liens is later reversed or modified on appeal.  The Debtor submits

that the terms and conditions of the DIP Facility are reasonable under the circumstances, and the

proceeds of the DIP Facility will be used only for purposes that are permissible under the

Bankruptcy Code, as more particularly set forth in the Budget.  Accordingly, the Debtor requests

that this Court find that the DIP Lender is a "good faith" lender within the meaning of § 364(e) of

the Bankruptcy Code and is entitled to all of the protections afforded by that section.

## II.     This Court Should Authorize the Debtor to Use Cash Collateral.

27.     To the extent the DIP Lender's consent to the use of the DIP Facility proceeds as

Cash Collateral is not sufficient to use such proceeds, the Debtor seeks authority to use the

proceeds of the DIP Facility upon the terms and conditions in the Interim Order and then Final

Order in accordance with the Budget (subject to permitted timing and other variances).

### EXPEDITED DETERMINATION OF INTERIM APPROVAL

28.     Bankruptcy Rules 4001(b)(2) and 4001(c)(2) provide that a final hearing on a

motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than

fourteen (14) days after the service of such motion.  Upon request, however, the court may conduct

a preliminary, expedited hearing on the motion and authorize the use of cash collateral and the

obtaining of credit on an interim basis "to the extent necessary to avoid immediate and irreparable

harm to the estate pending a final hearing."  Fed. R. Bankr. P. 4001(b)(2), (c)(2).  Pursuant to Local

Rule 9013-4, the Debtor seeks expedited determination for use of Cash Collateral on an interim

basis, as it has an immediate and critical need for the use of Cash Collateral in the earliest days of the chapter 11 case and beyond.

29.     As of the Petition Date, the Debtor does not have any cash.  However, Advances will constitute the DIP Lender's cash collateral.  Access to DIP Facility and use of Cash Collateral is necessary for the Debtor to fund expenses required for the Debtor to maintain operations, as well as for the Debtor to fund other necessary expenses in chapter 11, such as security, payments to vendors to complete the Project, payment of Mechanic's Liens, utility payments, and other operating costs.  Accordingly, the Debtor seeks an expedited hearing on this Motion so that it can maintain the Project, pay the Mechanic's Lienholders, and complete construction of the Project to maximize value.

30.     The Debtor is unable to continue its business operations without the ability to use Cash Collateral in accordance with the Budget and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest absent such relief.  Moreover, the Debtor's ability to borrow under the DIP Facility and finance its operations through the use of Cash Collateral is vital to the preservation and maintenance of the value of the Debtor's assets.  The Debtor, therefore, submits that expedited determination of the interim relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, its estate, and its creditors, including by disrupting the Debtor's ability to pay necessary expenses incurred in connection with administering the chapter 11 case.  **The Debtor requests an expedited hearing on the interim relief sought in this Motion on or before May 1, 2025**.

## **REQUEST FOR FINAL HEARING AND RELATED DEADLINES**

31.     Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), the Debtor requests that this Court set a date for a Final Hearing on the Motion that is as soon as practicable, but in no event

less than fourteen (14) days following the Petition Date, and fix related deadlines before the Final

Hearing, as set forth in the Interim Order.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

32.     Certain aspects of the relief requested in the Motion may, if granted, be subject to

Bankruptcy Rule 6003.  Pursuant to Bankruptcy Rule 6003, a court may grant such relief if it is

necessary to avoid immediate and irreparable harm.  The Debtor submits that the facts set forth

herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm

to the Debtor, and, thus, Bankruptcy Rule 6003 has been satisfied.  Additionally, to the extent that

any aspect of the relief sought herein constitutes a use of property under § 363(b) of the Bankruptcy

Code, the Debtor seeks a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  As described

above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the

Debtor to be able to continue to operate its business and preserve the value of its estate.

Accordingly, the Debtor submits that a waiver of the 14-day stay imposed by Bankruptcy Rule

6004(h) is appropriate.

## RESERVATION OF RIGHTS

33.     Except to the extent set forth in the Interim Order, nothing contained herein is or

should be construed as: (a) an admission as to the validity of any claim against the Debtor or the

existence of any lien against the Debtor's property; (b) a waiver of the Debtor's rights to dispute

any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission

that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any

executory contract or unexpired lease pursuant to § 365 of the Bankruptcy Code; or (f) a limitation

on the Debtor's rights under § 365 of the Bankruptcy Code to assume or reject any executory

contract with any party.  Nothing contained in the Interim Order will be deemed to increase,

18

reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid, except to the extent otherwise ordered.

## LIMITED NOTICE

34.     The Debtor requests limited notice and proposes serving notice of this Motion and of any expedited hearing thereon via e-mail, telephone, facsimile, or overnight mail, if necessary, on the following parties: (a) the United States Trustee; (b) the Debtor's secured creditors or, if applicable, to counsel representing them; (c) the top twenty (20) non-insider unsecured creditors of the Debtor or, if applicable, to counsel representing such holders; (d) applicable federal and state taxing authorities; and (e) any attorney of record or party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the circumstances of the Debtor's chapter 11 case and the nature of the relief sought herein, the Debtor submits that no further notice of this Motion or of an expedited hearing thereon is required.

35.     The Debtor has made and will make a good faith effort to advise all affected parties of the time and date of the hearing.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order and then the Final Order, granting the relief requested in the Motion and such other and further relief as this Court deems fair and appropriate.

Dated:   April 23, 2024

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER &
NELSON, P.A.**

*/s/ Adam Prescott*
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
100 Middle Street
PO Box 9729, Portland, Maine 04104
Telephone: (207) 774-1200

19

Facsimile: (207) 774-1127
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*Proposed Counsel to the Debtor and Debtor in Possession*