## **EXHIBIT C**

24797904.v1

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (including all exhibits and schedules hereto, the "**Agreement**"), dated as of April _11_, 2025, is by and between: (i) The Mark Real Estate Holdings, LLC and its applicable designees ("**Purchaser**"), (ii) Cumberland Foreside Partners LLC ("**Seller**"), (iii) Titan Funding, LLC ("**Lender**"), and (iv) Mark McClure ("**Member**" and, together with Purchaser, Seller, and Lender, the "**Parties**").

## RECITALS

WHEREAS, Seller owns certain assets, and holds various rights, related to a residential development complex in Cumberland, Maine, commonly known as "The Mark" (as further define below, "**Real Property**"); and

WHEREAS, Member is the sole Member of the Seller; and

WHEREAS, Lender lent money to Seller (the "**Loan**"), said Loan being secured by a mortgage on the Real Property (the "**Lender Mortgage**") and the personal guaranty of the Member (the "**Personal Guaranty**"); and

WHEREAS, creditors of the Seller are initiating legal proceedings to foreclose on the Real Property; and

WHEREAS, Lender believes there is a risk that it will not be repaid the amount due under the Loan either by the Seller or by virtue of the security provided by the Lender Mortgage; and

WHEREAS, Lender has created the Purchaser as an affiliated company in order to preserve the assets of the Seller and protect Lender's interests; and

WHEREAS, the Lender has proposed the transaction described below and has concluded that it directly benefits the Lender in that it protects the Lender's interests; and

WHEREAS, both the Member and the Seller desire to reduce their liability to the Lender and/or other creditors; and

WHEREAS, Purchaser desires to purchase substantially all of the assets of Seller, and to assume certain liabilities of Seller as set forth herein, and Seller desires to sell such assets to Purchaser and to assign such liabilities to Purchaser, and to have Purchaser assume the same as described herein, all on the terms and conditions set forth in this Agreement; and

NOW THEREFORE, in consideration of the mutual benefits to be derived from this Agreement and of the representations, warranties, conditions, agreements, and promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the Parties, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

1.1    Definitions.  As used in this Agreement, the following terms shall have the following meanings:

"**DIP Loans**" shall mean a loan to Purchaser while it is in bankruptcy that is approved by the applicable bankruptcy court and that is used to complete construction at the Real Property (including

"**DIP Loans**" shall mean a loan to Purchaser while it is in bankruptcy that is approved by the applicable bankruptcy court and that is used to complete construction at the Real Property (including payment of prepetition claims during the bankruptcy, if necessary), and sell the Real Property along with the necessary, reasonable, and customary expenses of Purchaser incurred in connection with the Real Property, including any and all costs and expenses of the bankruptcy proceedings.

"**Governmental Entity**" shall mean and include any agency, board, bureau, executive, court, commission, department, tribunal, instrumentality or administration of the United States or any State, and any local or other governmental body in a State, or non-United States governmental or regulatory authority, agency, commission, court, body or other governmental entity.

"**Law**" means any federal, state, provincial, local, municipal, foreign or other law, statute, legislation, constitution, principle of common law, resolution, ordinance (including with respect to zoning or other land use matters), code, treaty, convention, rule, regulation, requirement, edict, directive, pronouncement, determination, proclamation or decree of any Governmental Entity.

"**Liability**" means any liability, indebtedness, guaranty, claim, loss, damage, deficiency, assessment, responsibility or obligation of whatever kind or nature (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether due or to become due, whether determined or determinable, whether choate or inchoate, whether secured or unsecured, whether matured or not yet matured).

"**Lien**" shall mean any charge against or an interest in property (including real property, tangible property, and intangible property) to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a mortgage, a judicial lien obtained by legal or equitable process or proceedings, a common law lien or a statutory lien.

"**Person**" shall mean an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization or any other entity, including any Governmental Entity or any group or syndicate of any of the foregoing.

"**Real Property**" shall mean Seller's real property, fixtures, and improvements generally located at 100 U.S. Route 1, Cumberland, Maine, and as described in more detail on Exhibit A to the deed conveying the Real Property to Purchaser at the Closing.

"**Representative**" of a Person means such Person's subsidiaries and the officers, directors, managers, employees, advisors, representatives (including its legal counsel and its accountants) and agents of such Person or its Subsidiaries.

"**Valid Lien**" shall mean, as determined at the time of the Closing, a Lien against any Asset (defined below) that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings.

**ARTICLE II**
**PURCHASE AND SALE OF ASSETS**

2.1     Acquired Assets. Excluding the Excluded Assets (defined below), Seller shall sell, assign, transfer, and deliver to Purchaser, and Purchaser shall purchase and assume from Seller, upon the terms and subject to the conditions set forth in this Agreement, all of Seller's right, title, and interest in and to each and every tangible and intangible asset of Seller (collectively, the "**Assets**"). For sake of clarity, and without limiting the foregoing sentence, the Assets shall include the following:

(a)     the Real Property;

(b)     all goodwill and other intangible personal property of Seller;

(c)     all accounts, cash, and cash equivalents of Seller, including all accounts receivable or other rights to payment of Seller, bank deposits and deposit accounts, certificates of deposit and marketable securities of Seller;

(d)     all contracts and leases of Seller to the extent assignable under applicable Law, other than the Excluded Agreements (defined below);

(e)     all equipment, furniture, machinery, tools, vehicles, warranties, and other tangible personal property of Seller;

(f)     all raw material, components, work-in-process, finished products, inventory, spare parts, and other accessories related thereto, wherever located;

(g)     all intellectual property owned or licensed by Seller to the extent transferrable under applicable Law;

(h)   .  all deposits and prepaid accounts made by Seller or held by Seller for the benefit of others;

(i)     all licenses and permits related to the Assets to the extent transferrable under applicable law;

(j)     all causes of action of Seller, including commercial tort claims; and

(k)     To the extent transferable under applicable Law, originals or, where not available, copies, of all books and records, including books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, distribution lists, supplier lists, vendor lists, sales material and records, marketing and promotional materials, computerized data, cost information, pricing data, property surveys, appraisals, market surveys, mailing lists, and other similar items (collectively, the "**Books and Records**"), *provided* that Purchaser shall provide to Seller copies of, and reasonable access to, the Books and Records after the Closing, including as may be reasonably required by Seller for tax, accounting, and other purposes necessary for Seller to comply with applicable Law.

2.2     Excluded Assets. Notwithstanding anything else to the contrary in this Agreement, Purchaser shall not acquire from Seller, nor shall Purchaser assume any Liability relating to, the following (collectively, the "**Excluded Assets**"):

(a)     Seller's rights under this Agreement;

(b)     all insurance policies of Seller;

(c)     any listing agreement, development agreement, or similar type of agreement to which Seller is a party, including those agreements listed on **Schedule 2.2(c)** (the "**Excluded Agreements**");

(d)     any license, permit, contract, or lease to the extent not transferrable to Purchaser at the Closing under applicable Law; and

(e)     any minute books, ledgers, corporate seals and member certificates of Seller, and other similar books and records that Seller is required by Law to retain and all tax returns, financial statements and corporate or other entity filings; *provided* that, following the Closing, and to the extent permitted by applicable Law, Seller shall make such documents, to the extent relating to the Assets, available to Purchaser upon Purchaser's reasonable request.

2.3     Assumption and Assignment of Liabilities.

(a)     Purchaser shall *not* assume any Liabilities of Seller *except for* those Liabilities of Seller that are secured by a Valid Lien against the Assets as of the Closing (collectively, the "**Assumed Liabilities**"). For sake of clarity, and without limiting the foregoing sentence, the Assumed Liabilities shall include those Liabilities set forth on **Schedule 2.3(a)**.

(b)     Any Liability that is not an Assumed Liability shall be an "**Excluded Liability,**" which shall include, without limitation, those Excluded Liabilities set forth on **Schedule 2.3(b)**.

2.4     Consideration. The Lender and the Purchaser acknowledge that the fulfillment of the transaction described herein provides value to each of them equal to or greater than the consideration given to the Seller and Member. In consideration of the transfer of the Assets to Purchaser by the Seller and the consent of the Member to that transfer, and upon the terms and subject to the conditions set forth herein, the aggregate consideration for the transfer of the Assets hereunder shall be the following:

(a)     The assumption by Purchaser of the Assumed Liabilities from Seller.

(b)     The payment to the Member (or his assignee) of 50% of the proceeds of the sale of the Real Property (or any portion thereof), net of customary closing costs and after payment in full of: (i) all Assumed Liabilities; (ii) any DIP Loans; (iii) any other loans made to complete and maintain the Real Property (in the event such loans do not constitute DIP Loans); and (iv) any other Claims (as such term is defined by the Bankruptcy Code) that are required to be paid in advance of payments to any equity holders (collectively, the "**Priority Payments**"). All of the Priority Payments are required to be paid in full before any payment shall be paid to Member under this Agreement. For the avoidance of doubt, Member shall not be entitled to receive any proceeds unless and until Lender's Loan and DIP Loans are paid in full.

(c)     The Releases (as defined below).

2.5     Closing. The closing of the transactions hereunder (the "**Closing**") shall occur on April __, 2025. The Closing shall take place remotely via the exchange of documents and signatures, and shall be effective as of 11:59 p.m. Portland, Maine, time on the date of Closing (the "**Closing Date**").

## ARTICLE III
## RELEASES

3.1     Release by Purchaser and Lender. Purchaser and Lender, their members, employees, agents, successors, and assigns (all together, the "**Purchaser Parties**"), fully, completely, unconditionally, absolutely and irrevocably release, acquit, forever discharge, and covenant not to sue the Member of and from those claims, demands, complaints, liabilities, causes of action, controversies, damages, charges, injuries, losses and deaths, whether at law or in equity, of any kind or nature whatsoever, whether asserted or unasserted, whether known or unknown, whether disclosed or undisclosed, and whether suspected or unsuspected, which the Purchaser Parties now have, ever had, or hereafter claim to have had against the Member, from the beginning of time to the Effective Date, including all claims relating to the Personal

Guaranty, but excepting all claims relating to the Parties' performance of their obligations pursuant to this Agreement.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller as follows:

4.1     Organization and Authority.  Purchaser is duly organized and validly existing under the Laws of the jurisdiction of its organization and has the power and authority and all necessary approvals of any applicable Governmental Entities to enter into the transactions contemplated by this Agreement.  This Agreement has been duly authorized, executed and delivered by Purchaser and is the valid and binding obligation of Purchaser.

4.2     No Outside Reliance.  Notwithstanding anything contained in this Article IV or any other provision of this Agreement to the contrary, Purchaser acknowledges and agrees that the it has not relied on any representations and warranties made by Seller to Purchaser in connection with the transactions contemplated by this Agreement.

## ARTICLE V
## COVENANTS; SURVIVAL; UNWIND

5.1     Taxes.  In the event that any sales, use, transfer and all other non-income taxes, or any fees incurred in connection with the purchase and sale of the Assets are assessed at Closing or at any time thereafter on the transfer of any Assets, then in each instance such taxes or charges incurred as a result of the transactions contemplated hereby shall be paid by Purchaser, and all applicable filings, reports and returns shall be filed, as provided by applicable Law.  Purchaser and Seller shall engage in commercially reasonable efforts to provide each other with any appropriate resale exemption certifications and other documentation related to taxes involving the Assets.

5.2     Further Assurances.  Each of the Parties agrees to use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things as may be necessary to consummate and make effective as promptly as practicable the transactions contemplated hereby and thereby.  After the Closing, each Party shall promptly transfer or deliver to the applicable party any cash, checks (which shall be properly endorsed), or other property that such Party may receive that is the property of another Party under the terms hereof.  In the event that any litigation is commenced or any Lien is asserted against Seller after the Closing Date, Seller shall promptly notify Purchaser and provide copies of such pleadings to Purchaser.

5.3     Survival.  Except with respect to any matter of which Seller had actual knowledge or Purchaser had actual knowledge, but which it failed to disclose to the other, the representations and warranties made by (a) Seller under this Agreement and by (b) Purchaser under this Agreement shall expire and be of no further force and effect upon the day that is the 180th day after the Closing Date, *provided* that Section 5.2 of this Agreement shall survive the Closing in perpetuity.

5.4     Purchaser's Unwind Option.  For the period of ninety (90) days after the Closing Date, Purchaser, in its sole and absolute discretion, may cancel and unwind the transactions under this Agreement, including, without limitation, unwinding the assumption of the Assumed Liabilities and acquisition of the Assets, for any reason (the "**Unwind Option**").  To exercise the Unwind Option, Purchaser shall provide written notice to Seller of Purchaser's intent, and immediately upon delivery of such notice, all Assets and Assumed Liabilities shall automatically be revested in Seller, and Seller and Purchaser shall return to the

status quo as each existed immediately prior to the Closing. In the event the Unwind Option is exercised, the releases provided for by Article III hereof shall remain effective.

## ARTICLE VI
## CLOSING DELIVERIES

6.1     Deliveries by Seller. At the Closing, Seller shall deliver or cause the delivery of the following to Purchaser:

(a)     a deed for the Real Property in form and substance attached hereto as *Exhibit A*;

(b)     a bill of sale and assignment in form and substance attached hereto as *Exhibit B*;

(c)     any applicable local, state, or federal transfer tax forms;

(d)     the Books and Records (or copies thereof, as applicable, and all passwords, credentials, usernames, login details, and other information necessary for Seller to access any Book or Record); and

(e)     all other documents, closing statements, affidavits, instruments, and writings reasonably required to be delivered by Seller pursuant to this Agreement or otherwise reasonably requested by Purchaser to deliver the Assets, each in form and substance satisfactory to Purchaser.

6.2     Deliveries by Purchaser. At the Closing, Purchaser shall deliver or cause the delivery of the following to Seller:

(a)     an assignment and assumption agreement pursuant to which Purchaser shall assume the Assumed Liabilities, in form and substance attached hereto as *Exhibit C*;

(b)     all other documents, closing statements, affidavits, instruments and writings reasonably required to be delivered by Purchaser or its designee pursuant to this Agreement, each in the form specified by this Agreement, or if the form is not specified by this Agreement, in form and substance satisfactory to Purchaser.

## ARTICLE VII
## MISCELLANEOUS

7.1     Entire Agreement. This Agreement, the schedules and the exhibits hereto, contain the entire agreement among the Parties with respect to the transactions contemplated by this Agreement and supersede all prior agreements or understandings among the Parties.

7.2     Successors and Assigns. This Agreement is made solely and specifically by and for the benefit of the Parties hereto, and their respective successors and assigns. Purchaser shall be entitled to assign its rights hereunder to an affiliate or another entity related to Purchaser.

7.3     Waiver. Any term, provision or condition of this Agreement may be waived, or the time for its performance may be extended, at any time by the Party which is entitled to the benefit thereof. To be effective, each such waiver shall be in writing, shall specifically refer to this Agreement and the term, provision or condition being waived, and shall be executed by an authorized officer of the Party granting such waiver. The failure of any Party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor to affect in any way the validity of this Agreement

or any part hereof or the right of any Party thereafter to enforce each and every such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

7.4     Amendment. This Agreement may be modified or amended only in a writing duly executed by or on behalf of all Parties hereto.

7.5     Choice of Law. This Agreement shall be construed, interpreted and the rights of the Parties determined in accordance with the Laws of the State of Maine without regard to conflicts of laws principles thereof.

7.6     No Partnership or Joint Venture. Nothing contained in this Agreement shall be deemed to create a partnership, joint venture, or any other relationship other than that of a seller and a purchaser between the Parties hereto.

7.7     No Third-Party Beneficiaries. Nothing herein expressed or implied is intended or shall be construed to confer upon or give to any Person, other than the Parties hereto and their respective permitted successors and assigns, any rights or remedies under or by reason of this Agreement.

7.8     Mutual Drafting. Each of the Parties has participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

7.9     Counterparts; Facsimile and Email Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Agreement or any counterpart may be executed and delivered by facsimile or email with scan attachment copies, each of which shall be deemed an original.

7.10    Time of Essence. Time is of the essence of this Agreement.

7.11    No Merger. It is the intent of Purchaser and Seller that nothing in this Agreement or in any instruments executed in connection herewith shall be construed to merge with any other interest in the Real Property held by Purchaser or any other party, and all such other interests shall remain separate and distinct.

7.12    **WAIVERS OF JURY TRIAL**. EACH OF THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE AGREEMENTS CONTEMPLATED HEREBY OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

[Signature page follows.]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly authorized, executed and delivered.

**PURCHASER: The Mark Real Estate Holdings, LLC and its assignees and designees**

By: _____
Name: <u>Edward Piazza</u>
Its:     <u>Manager</u>

**SELLER: Cumberland Foreside Partners LLC**

By: _____
Name: _____
Its: _____

**LENDER: Titan Funding, LLC**

By: _____
Name: _____
Its: _____

**MEMBER: Mark McClure**

_____
Individually

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly authorized, executed and delivered.

**PURCHASER: The Mark Real Estate Holdings, LLC and its assignees and designees**

By: _____

Name: Edward Piazza

Its: Manager

**SELLER: Cumberland Foreside Partners LLC**

By: _____

Name: Mark McClure

Its: Managing Partner

**LENDER: Titan Funding, LLC**

By: _____

Name: Edward Piazza

Its: Manager

**MEMBER: Mark McClure**

_____

Individually

**Schedule 2.2(c)**
Excluded Listing and Development Agreements

**Schedule 2.3(a)**
Summary of Assumed Liabilities

**Schedule 2.3(b)**
Excluded Liabilities

**Exhibit A**
Deed

# QUITCLAIM DEED
## WITHOUT COVENANT
## (RELEASE DEED)
### Maine Statutory Short Form

KNOW ALL PERSONS BY THESE PRESENTS THAT **CUMBERLAND FORESIDE PARTNERS LLC**, a Maine limited liability company with a principal place of business in Cumberland Foreside, County of Cumberland, State of Maine, for consideration paid, **RELEASES** to **THE MARK REAL ESTATE HOLDINGS, LLC,** a Maine limited liability company with a principal place of business in Cumberland, State of Maine, whose mailing address is 2701 NW Boca Raton Blvd #105, Boca Raton, FL 33431, the land and buildings located in Cumberland, County of Cumberland, State of Maine, being more particularly described on **Exhibit A** attached hereto and made a part hereof.

IN WITNESS WHEREOF, the said Cumberland Foreside Partners LLC has caused this instrument to be signed and sealed this _____ day of _____, 2025.

WITNESS:                                   **Cumberland Foreside Partners LLC**

_____ Alain Curto

_____
By: Mark McClure
Its:   Sole-Manager

STATE OF Florida
COUNTY OF Miami-Dade                          4/3 , __, 2025

Then personally appeared before me the above-named, **Mark McClure,** in his said capacity and acknowledged the foregoing instrument to be his free act and deed and the free act and deed of said limited liability company, before me.

_____ Izak Kriz Chavez
Attorney at Law/Notary Public

**IZAK KRIZ CHAVEZ**
NOTARY PUBLIC · STATE OF FLORIDA
COMMISSION # HH 182505
My Commission Expires October 6, 2025

Izak Kriz Chavez
Printed Name
My commission expires: Oct 6 2025

**EXHIBIT A**

A certain parcel of land situated on the westerly side of U.S. Route 1 in the Town of Cumberland, County of Cumberland, State of Maine being bounded and described as follows:

Beginning on the westerly sideline of U.S. Route 1 at land now or formerly of Ledgeview Properties, LLC as described in a deed recorded in Book 17591 Page 242 in the Cumberland County Registry of Deeds;

THENCE N 45° 48' 00" W, by and along land of Ledgeview Properties, LLC, a distance of 209.98 feet to capped rebar;

THENCE S 54° 59' 52" W, by and along land of Broad Cove Ridge LLC, a distance of 95.03 feet to land of Ledgeview Properties, LLC to drill hole;

THENCE N 54° 42' 05" W, by and along land of Ledgeview Properties, LLC, a distance of 200.62 feet to capped rebar;

THENCE N 25° 46' 37" E, by and along the southeasterly sideline of interstate 95, a distance of 356.62 feet to capped rebar;

THENCE continuing N 25° 46' 37" E, by and along the southeasterly sideline of Interstate 95, a distance of 17.95 feet to land now or formerly of Glenn S. Porter and Sandra L. Porter as described in a deed recorded in Book 10526 Page 233 in the Cumberland County Registry of Deeds;

THENCE S 55° 51' 33" E, by and along land of Glenn S. Porter and Sandra L. Porter, a distance of 364.92 feet to a capped rebar set in the westerly sideline of U.S. Route 1;

THENCE S 12° 04' 36" W, by and along the westerly sideline of U.S. Route One, a distance of 348.00 feet to the Point of Beginning.

The parcel contains approximately 3.16 acres.

Bearings are Magnetic 1991.

The foregoing premises are conveyed subject to the following:

1. A certain one hundred foot wide beautification easement adjoining the easterly sideline of interstate I-95 as taken by the State of Maine in a Notice of Layout and Taking dated May 28, 1969 and recorded in the Cumberland County Registry of Deeds in Book 3087, Page 593 and further depicted on a Standard Boundary Survey made for the Estate of Janet Lowe Palmer dated December 12, 1986 and recorded in said Registry

of Deeds in Plan Book 161 Page 23.

2. A certain easement for the location and maintenance of a leach bed drainage plume as described in Warranty Deed from Frederick B. Jensen and Darlene E. Jensen to Ledgeview Properties, LLC dated May *1,* 2002 and recorded in the Cumberland County Registry of Deeds in Book 17591, Page 242.

Meaning and intending to convey, and hereby conveying, all and the same premises conveyed in a Quitclaim Deed from Broad Cove Ridge, LLC to Cumberland Foreside Partners LLC dated October 26, 2021 and recorded in Book 38823, Page 115 of the Cumberland Country Registry of Deeds.

**Exhibit B**
Bill of Sale and Assignment

## BILL OF SALE

THIS BILL OF SALE is made as of April __, 2025, by and among, Cumberland Foreside Partners LLC ("**Seller**") and The Mark Real Estate Holdings, LLC, or its designee ("**Purchaser**"). Capitalized terms used herein, but not otherwise specifically defined, shall have the respective meanings ascribed to such terms in that certain Asset Purchase Agreement, by and between Seller and Purchaser (among others), dated of near or even date of this Bill of Sale (the "**Purchase Agreement**").

WHEREAS, pursuant to the terms of the Purchase Agreement, Purchaser has agreed to purchase certain assets of Seller (the "**Purchased Assets**"); and

WHEREAS, pursuant to the Purchase Agreement, Purchaser and Seller have agreed to execute this Bill of Sale for the purpose of conveying any and all personal property assets of Seller to Purchaser as provided for by the terms of the Purchase Agreement (the "**Personal Property**").

IN CONSIDERATION OF THESE PREMISES, and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, Purchaser and Seller hereby agree as follows:

1. **Assignment**. Seller does hereby sell, assign, convey, transfer and deliver to Purchaser, all of Seller's right, title and interest in, to and under the Personal Property. The Personal Property is assigned, conveyed, transferred and delivered to Purchaser pursuant and subject to the terms of the Purchase Agreement.

2. **Incorporation of Purchase Agreement**. This Bill of Sale incorporates by reference all of the terms of the Purchase Agreement. In the event of a conflict between the terms of the Purchase Agreement and the terms of this Bill of Sale, the terms of the Purchase Agreement govern and control.

3. **Counterparts**. This Bill of Sale may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Bill of Sale delivered by e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Bill of Sale.

*[Signature page follows.]*

IN WITNESS WHEREOF, this Bill of Sale has been duly executed and delivered by the duly authorized officers of Purchaser and Seller hereto as of the date first above written.

**SELLER:**

Cumberland Foreside Partners LLC

By: _____
Name:  Mark McClure
Title:  Managing Partner


**PURCHASER:**

The Mark Real Estate Holdings, LLC


By: _____
Name: Edward Piazza
Its:  Manager

IN WITNESS WHEREOF, this Bill of Sale has been duly executed and delivered by the duly authorized officers of Purchaser and Seller hereto as of the date first above written.

**SELLER:**

Cumberland Foreside Partners LLC

By: _____

Name: Mark McClure

Title: Managing Partner

**PURCHASER:**

The Mark Real Estate Holdings, LLC

By: _____

Name: Edward Piazza

Its: Manager

**Exhibit C**
Assignment and Assumption Agreement

## ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "**Agreement**") is made as of April __, 2025 (the "**Effective Date**"), by and among Cumberland Foreside Partners LLC ("**Assignor**") and The Mark Real Estate Holdings, LLC, or its designee ("**Assignee**" and, together with Assignor, the "**Parties**"). Capitalized terms used herein, but not specifically defined herein, shall have the respective meanings ascribed to such terms in that certain Asset Purchase Agreement, by and between Assignor and Assignee (among others), dated on or near the date hereof (the "**Purchase Agreement**").

## BACKGROUND

Pursuant to the Purchase Agreement, Assignor is assigning to Assignee and Assignee is assuming from Assignor certain contracts and liabilities of Assignor (as further defined in the Purchase Agreement, the "**Assumed Liabilities**").

## OPERATIVE TERMS

The Parties agree as follows:

1. This Agreement is provided in connection with the Purchase Agreement and is subject to all of its terms and conditions. This Agreement shall not be deemed to supersede or in any way modify any of the provisions of the Purchase Agreement. In the event of any conflict or inconsistency between the terms and conditions set forth herein and in the Purchase Agreement, the terms and conditions set forth in the Purchase Agreement shall control.

2. Pursuant to the terms and subject to the conditions of the Purchase Agreement and effective upon the Effective Date, Assignor hereby assigns, transfers and conveys and Assignee hereby assumes the Assumed Liabilities.

3. Each of the Parties shall execute and deliver, at the reasonable request of the other, such additional documents, instruments, conveyances and assurances and take such further actions as such other Party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

4. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective permitted successors and assigns. This Agreement may be executed in any number of counterparts (whether original, facsimile or electronic copy), each of which shall be deemed to be an original as against any Party whose signature appears thereon, and all of which together shall constitute one and the same instrument.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

Cumberland Foreside Partners LLC

By: _____

Name: Mark Mcclure

Title: Managing Partner

**ASSIGNEE:**

The Mark Real Estate Holdings, LLC

By: _____

Name: Edward Piazza

Its: Manager

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

Cumberland Foreside Partners LLC

By: _____
Name: Mark McClure
Title: Managing Partner

**ASSIGNEE:**

The Mark Real Estate Holdings, LLC

By: _____
Name: Edward Piazza
Its: Manager