**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re | Chapter 11 |
| The Mark Real Estate Holdings, LLC,[1] | Case No. 25-20100 |
| Debtor. | |

**APPLICATION OF THE DEBTOR TO COMPROMISE CONTROVERSIES BY AND BETWEEN THE DEBTOR, BUILDERS CAPITAL FINANCE LLC, AND TITAN FUNDING, LLC PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND REQUEST FOR EXPEDITED DETERMINATION AND SHORTED OBJECTION PERIOD**

**The Debtor respectfully requests that this Court schedule an expedited hearing on this Application on June 24, 2025, at 9:00 AM, with objections to be raised at the hearing.**

The Mark Real Estate Holdings, LLC, the above captioned debtor and debtor in possession (the "Debtor"), moves this Court for entry of an order on this application (the "Application"), substantially in the form filed herewith (the "Proposed Order"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9019-1, approving the compromise described herein between the Debtor, Builders Capital Finance LLC ("Builders Capital"), and Titan Funding, LLC ("Titan" and, together with the Debtor and Builders Capital, the "Parties"). In support of this Application, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction to consider the Application under 28 U.S.C. §§ 157(a) and 1334(b), and D. Me. L.R. Civ. 83.6.

---

[1]     The Mark Real Estate Holdings, LLC's principal place of business is 100 US Route 1, Cumberland, Maine 04021, and the last four digits of its taxpayer identification number are 8757.

1

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has Constitutional authority to enter a final order on the Application.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The relief sought in this Application is predicated upon section 105(a) of Title 11 of the United States Code ("Bankruptcy Code"), Bankruptcy Rule 9019, and Local Rules 9019-1 and 9013-4.

## BACKGROUND

5. On April 22, 2025 (the "Petition Date"), the Debtor commenced this chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

6. The Debtor continues to operate its business as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

7. The Debtor owns the condominium development project called "The Mark," comprised of approximately 45 residential units and located at 100 US Rt. 1 in Cumberland, Maine (the "Project").

8. The Project was initially owned by Cumberland Foreside Partners, LLC ("Cumberland"). Construction on the Project was funded by the primary construction lender, Builders Capital, which holds a first priority mortgage against the Project. Contemporaneously, Cumberland entered into a junior priority secured loan with Titan, secured by a second lien on the property. The intercreditor relationship between Builders Capital and Titan is governed by a

certain Subordination and Intercreditor Agreement dated August 30, 2023 (the "Intercreditor Agreement").

9. In or around late 2024, various contractors ceased work on the Project due to nonpayment by Cumberland. As a result, the contractors levied numerous mechanic's liens against the Project (the "Mechanic's Liens" and each lienholder, individually, a "Mechanic's Lienholder").

10. On April 3, 2025, Cumberland entered into an Asset Purchase Agreement with the Debtor to transfer the Project from Cumberland to the Debtor.

11. The Debtor acquired the Project and related assets subject to all liens and claims secured by such liens.

12. Builders Capital has since paid the claims of the Mechanic's Lienholders in full and caused the Mechanic's Liens to be discharged. As a result, the primary creditors remaining in this case are Builders Capital and Titan.

13. At the outset of this case, the Debtor obtained immediate postpetition funding from Titan on an interim basis and in a limited amount to pay for certain operating expenses. The Debtor has not obtained additional funding from Titan (or any other party) on a final basis.

14. As the Court is aware, the Parties have had deep disagreements regarding the path forward for this chapter 11 case. On May 23, 2025, Builders Capital filed (i) its *Supplemental Objection To Motion Of Debtor For Entry Of A Final Order (I) Authorizing Debtor To Obtain Postpetition Financing Pursuant To § 364 Of The Bankruptcy Code; (II) Authorizing The Use Of Cash Collateral; And (III) Granting Liens And Super-Priority Claims* [Dkt. No. 82] (the "DIP Financing Objection"); and (ii) its *Objection To Application Of The Debtor For Order Pursuant To §§ 327 And 328 Of The Bankruptcy Code Authorizing Employment Of Bernstein, Shur, Sawyer*

*& Nelson, P.A. As Counsel To The Debtor, Effective As Of The Petition Date* [Dkt. No. 83] (the "Retention Objection"). Further, on May 27, 2025, Builders Capital filed its *Motion to Appoint Trustee Pursuant To Section 1104 Of The Bankruptcy Code* [Dkt. No. 85] (the "Trustee Motion").

15. Conversely, in response, on May 29, 2025, Titan filed its *Preliminary Objection To Builders Capital Finance LLC's Motion To Appoint A Chapter 11 Trustee Pursuant To Section 1104 Of The Bankruptcy Code* [Dkt. No. 90] (the "Titan Objection"). And on May 30, 2025, the Debtor filed a *Motion for an Order Dismissing the Debtor's Chapter 11 Case* [Dkt. No. 94] (the "Motion to Dismiss"), and asserted that the Court should dismiss this chapter 11 case for cause pursuant to section 1112(b)(1) of the Bankruptcy Code.

16. Despite the Parties' various disagreements, in recent weeks—and both before and since the filing of the Trustee Motion—the Parties have engaged in good faith, lengthy, and productive negotiations towards a global resolution of issues between the Parties and a consensual path forward in this chapter 11 case. As a result of those arms' length negotiations, the Parties have agreed to a settlement on the terms set forth on the Settlement Term Sheet (the "Term Sheet") attached hereto as **Exhibit A**.

## RELIEF REQUESTED

17. The Debtor seeks entry of an order under Bankruptcy Rule 9019 and Local Rule 9019-1 approving the compromise described in the Term Sheet. Pursuant to the Term Sheet the Parties have agreed, as more fully described in the Term Sheet, to the following broad terms:

    a. The Debtor will retain Cordjia Capital Projects Group to serve as a construction advisor (the "Construction Advisor") to the Debtor. The Construction Advisor will be responsible for overseeing the construction, completion, and sale of the Project in a manner acceptable to Builders Capital;

    b. Builders Capital will provide funding to the Debtor for completion of the Project and administration of this chapter 11 case, and such funding will be given on the terms previously agreed to between Builders Capital and

4

    Cumberland and assumed by the Debtor;

c. Completion and sale of the Project will be subject to certain milestones, with sale of the Project to occur in September or October of 2025; and

d. Failure of the Debtor to comply with the milestones required by Builders Capital, or of the Debtor or Titan to otherwise default under the Term Sheet, will entitle Builders Capital, upon notice to the Court, to obtain relief from the automatic stay and exercise remedies against the Project.

## ARGUMENT

18. Bankruptcy Rule 9019 provides that "[o]n motion by the [Debtor in Possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. In reviewing any proposed settlement under Bankruptcy Rule 9019, courts will approve the settlement if it is "fair and equitable" and in the best interests of the debtor's bankruptcy estate. *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Courts consider the following factors in making a determination to approve a settlement: "(i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise." *In re Servisense.com, Inc.*, 382 F.3d 68, 72 (1st Cir. 2004) (quoting *Jeremiah v. Richardson*, 148 F.3d 17, 23 (1st Cir.1998)). "The Court's consideration of these factors should demonstrate whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate." *Id*. In reviewing these factors, "[t]he judge, however, is not to substitute [his] judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." *In re Moorhead Corp.*, 208 B.R. 87, 89 (B.A.P. 1st Cir. 1997), aff'd, 201 F.3d 428 (1st Cir. 1998).

19. Ultimately, "[t]he responsibility of the bankruptcy judge . . . is . . . to . . . see whether

5

the settlement falls below the lowest point on the range of reasonableness." *In re Healthco Int'l, Inc.*, 136 F.3d 45, 51 (1st Cir. 1998). A settlement is within the range of reasonableness when "the settlement constitute[s] a 'definitive, concrete and immediate benefit[]' that the Trustee reasonably conclude[s] outweigh[s] the uncertainty and delay of litigation." *Yacovi v. Rubin & Rudman, L.L.P.*, 411 F.App'x 342, 346, 2011 WL 924244, at *3 (1st Cir. Mar. 18, 2011) (quoting *Healthco*, 136 F.3d at 50).

20. Here, the terms of the Term Sheet between the Debtor, Titan, and Builders Capital are fair, equitable, and in the best interests of the Debtor's estate and the creditors. In lieu of appointment of a chapter 11 trustee or dismissal of this case, the Parties have agreed that it is in the best interest of creditors and the estate, and will result in a value-maximizing sale of the Project, for the Debtor to retain an experienced, qualified, and independent professional to oversee the completion and sale of the Project. The Construction Advisor will be delegated with all authority necessary to oversee completion of the Project, will consult with and obtain the consent of Builders Capital on necessary steps consistent with the Term Sheet, and will operate independently from Titan in connection with the chapter 11 case. The Parties agree that putting in place a neutral professional with the qualifications and construction expertise to manage completion of the Project will allow the Parties to break the impasse that has stymied early weeks of this chapter 11 case and will preserve and enhance value for the benefit of all Parties. Such relief also ensures Builders Capital that its concerns giving rise to the Trustee Motion have been alleviated and that Builders Capital will have an independent professional, through the Construction Advisor, on which it can rely for information, reporting, and other services during the remainder of the case.

21. As the Debtor's first lien secured creditor and the primary construction lender on the Project, Builders Capital also has agreed to provide funding necessary for completion of the

Project during this chapter 11 case. Pursuant to the Term Sheet, Builders Capital will fund a budget of up to $200,000.00 (the "Professional Budget") in the form of a protective advance to pay (1) counsel to the Debtor; (2) the Construction Advisor; and (3) counsel, if any, retained by the Construction Advisor. The Professional Budget will also include expenses of Keenan Auction Company in connection with the sale of the Project. Additionally, the Agreement provides that Builders Capital will provide up to $275,000.00 (the "Construction Budget") to fund the projected remaining costs to complete the work outstanding on the Project and obtain a certificate of occupancy. After receiving the certificate of occupancy, the Project will be sold as specified in the Agreement and in reliance on the sale powers of section 363 of the Bankruptcy Code.

22.     The Parties have further agreed to a number of terms aimed towards allowing this chapter 11 case to move forward in a manner that enhances and maximizes value for the Parties, rather than mires the chapter 11 case in expensive and distracting disputes and litigation. This includes, among other things, agreement that the terms of the Intercreditor Agreement continue to bind the Parties and govern the creditor relationship between Builders Capital and Titan. Builders Capital and Titan further agree not to engage in litigation against each other until the Project is sold, which will permit Parties to focus on completion and sale of the Project for the bulk of this chapter 11 case.

23.     Based on these factors, the Debtor submits that the terms of the Term Sheet, as further set forth as attached hereto as **Exhibit A**, are fair, equitable, and in the best interests of the Debtor, the estate, and all creditors, and should be approved by the Court pursuant to Bankruptcy Rule 9019. The Term Sheet provides for additional funding for the Project as well as experienced and independent management of the Project assets. Moreover, retention of the Construction Advisor provides additional, reliable oversight of the Project's management and ultimate sale.

Importantly, the Term Sheet decreases the chances of contentious litigation before this Court while completion of the Project remains ongoing, and encourages the Parties to focus on their shared interests in maximizing the value of the Project on an agreed timeline.

24. Finally, the Term Sheet will resolve numerous pending matters before this Court, including resulting in, once this Application is approved, withdrawal of the Trustee Motion, the Retention Objection, and the Motion to Dismiss.

## REQUEST FOR EXPEDITED HEARING

25. As discussed at the status conference on June 11, 2025, implementation of the terms of the term sheet without delay is essential to ensuring this case moves forward on an appropriate timeline. Therefore, the Debtor respectfully requests that the Court schedule an expedited hearing on this Application on June 24, 2025, with objections to be raised at the hearing. Given that Builders Capital has paid the Mechanic's Lienholders in full, the Debtor believes that Builders Capital and Titan are the primary, and likely only, remaining creditors with interests in the outcome of this chapter 11 case. An expedited hearing on this Application will allow the Parties to begin working on the implementation of the Term Sheet and construction of the Project, and no party in interest will be prejudiced if this Application is heard on an expedited basis. Therefore, the Debtor requests this Application to be heard on an expedited basis with shortened notice in accordance with the local Rule 9013-4(a)(c)(4).

## CONCLUSION

Based on the foregoing, the Debtor requests the Court approve the Debtor's Application for Approval of Settlement pursuant to Bankruptcy Rule 9019(a).

Dated: June 18, 2025  Respectfully submitted,

**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

/s/ Adam R. Prescott
Adam R. Prescott
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
aprescott@bernsteinshur.com

*Proposed counsel to the Debtor and Debtor in Possession*