**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE MARK REAL ESTATE HOLDINGS, LLC, | Case No. 25-20100 |
| Debtor.[1] | |

**MOTION FOR ENTRY OF: (I) ORDER (A) APPROVING BID PROCEDURES, (B) SCHEDULING AUCTION AND SALE HEARING, (C) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (D) GRANTING RELATED RELIEF; AND (II) ORDER (A) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR AND (B) GRANTING RELATED RELIEF**

The Mark Real Estate Holdings, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), hereby moves this Court (this "**Motion**"), pursuant to §§ 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"); Rules 2002, 6004, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Rules 2002-1 and 9013-1 of the Local Rules of the Bankruptcy Court for the District of Maine (the "**Local Rules**"), for the entry of the following:

(i) an order, substantially in the form filed herewith (the "**Bid Procedures Order**"), (a) approving procedures in connection with the proposed sale of substantially all of the assets of the Debtor (the "**Bid Procedures**"), (b) scheduling the auction and hearing to consider approval of the sale, (c) approving the form and manner of notice thereof, and (d) granting related relief; and

(ii) an order, substantially in the form filed herewith (the "**Sale Order**"), (x) approving the sale of the Property (as defined below) free and clear of liens, claims, encumbrances, and other interests (except permitted liens or assumed liabilities, if any), and (y) granting related relief.

---

[1] The Mark Real Estate Holdings, LLC's principal place of business is 100 US Route 1, Cumberland, Maine 04021, and the last four digits of its taxpayer identification number are 8757.

The Debtor files this Motion with the consent of Builders Capital and Titan, and in accordance with the Settlement Term Sheet (each as defined below). In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1. The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b). By the District Court's standing order of reference, this matter is referred to this Court pursuant to 28 U.S.C. § 157.

2. This is a core proceeding under 28 U.S.C. § 157(b).

3. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**A.     Chapter 11 Case**

4. On April 22, 2025 (the "**Petition Date**"), the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

5. The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

**B.     The Debtor's History, and the Proposed Sale and Marketing Process**

6. The Debtor owns the real estate development project called "The Mark," comprised of approximately 45 residential units and located at 100 US Route 1 in Cumberland, Maine (the "**Property**"). In addition to residential units, the Property includes garage parking, storage units, washrooms, bicycle storage, and a gym. The Property was initially owned by Cumberland Foreside Partners, LLC ("**CFP**"). Construction on the Property was to be funded by the primary

construction lender, Construction Loan Services II, LLC ("**Builders Capital**"), which holds a first priority mortgage against the Property. On or around late 2024, various contractors ceased working on the Property for nonpayment. As a result, approximately $2 million to $2.5 million of mechanic's lien claims were asserted against the Property (the "**Mechanic's Liens**" and the "**Mechanic's Lienholders**").

7. Due to the stalling of construction of the Property, the growing Mechanic's Liens, CFP's lack of access to necessary capital, and rapidly growing costs, CFP transferred the Property to the Debtor prior to the Petition Date. The Debtor acquired the Property subject to all valid liens and claims secured by such liens, with the intent to finish the Property, satisfy and discharge the Mechanic's Liens, and maximize the value of a turn-key property through an orderly and strategic sale process. The Debtor understands that Builders Capital has since paid the claims of the Mechanic's Lienholders in full and caused the Mechanic's Liens to be discharged. As a result, the primary prepetition creditors remaining in this case are Builders Capital and Titan Funding, LLC ("**Titan**"), the junior mortgage holder on the Property.

8. Following negotiations with Builders Capital and Titan regarding this case and other matters between the parties, the Debtor, Builders Capital, and Titan reach a settlement agreement as reflected in that certain term sheet dated on or about June 16, 2025 (the "**Settlement Term Sheet**"). Pursuant to the Settlement Term Sheet (which was approved by this Court through entry of an order on June 24, 2025 [Dkt. No. 126]), among other things, the Debtor agreed to retain Cordjia Capital Projects Group as construction advisor (the "**Construction Advisor**") to oversee and manage, among other powers and duties, completion and sale of the Property, and Builders Capital agreed to fund as a protective advance up to $200,000 for payment of professional fees

and up to $275,000 toward completion of the Property, all in conjunction with a chapter 11 sale process consistent with the relief sought herein and as set forth in the Settlement Term Sheet.

9. As part of the Settlement Term Sheet, moreover, the Debtor agreed to certain "milestones" for the construction, completion, and sale of the Property (the "**Milestones**"). The Milestones include the following:

- (a) **Deadline for marketing of Property to commence**: Within 30 days of entry of Court order approving the Settlement Term Sheet.

- (b) **Deadline for filing application for certificate of occupancy of the Property**: Within 5 business days after completion of construction of the Property.

- (c) **Deadline for sale of Property**: The later of September 15, 2025, or 30 days after issuance of a certificate of occupancy for the Property, but no later than October 31, 2025.[2]

10. Pursuant to the Settlement Term Sheet, and to facilitate the sale and ensure a diligent, thorough marketing strategy and sale process, the Debtor has consulted with, and will seek authority to retain in this case, Keenan Auction Company ("**Keenan**"). The Debtor anticipates that Keenan (which is already familiar with the Property) will begin the marketing process for the Property immediately and continue that marketing in accordance with the Bid Procedures until the auction is held in accordance with the Bid Procedures.

C. **Summary of the Proposed Transaction and Bid Procedures**

11. The Debtor—with significant input and guidance from Keenan given Keenan's vast experience in selling similar assets—developed the Bid Procedures to be simple, transparent, and competitive in order to attain the highest or otherwise best price for the Property under the circumstances, in each case consistent with the Settlement Term Sheet. The Construction Advisor,

---

[2] Notwithstanding the Settlement Term Sheet sale deadline, Builders Capital has consented to the sale schedule and auction date as proposed herein.

Titan, and Builders Capital (collectively, the "**Consultation Parties**") will be consulted by the Debtor during the sale process, and each of the Consultation Parties shall have the rights set forth in the Settlement Term Sheet (in addition to those set forth in the Bid Procedures).[3]

12.     Given the marketing process, the Debtor believes that it is critical and warranted that the sale process be consummated on the timeline set forth in the Bid Procedures and this Motion to allow the Debtor to satisfy the Milestones and maximize the finite amount of cash available to it over the next few months. The sale timeline was specifically designed to balance the goals of completing construction of the Property, continuing a marketing process, preserving and maximizing the value of the Property, and avoiding the value deteriorating cost of a protracted chapter 11 process or an even more destructive chapter 7 liquidation.[4]

## RELIEF REQUESTED

13.     By this Motion, **first**, the Debtor seeks entry of the Bid Procedures Order:

(a)     approving the Bid Procedures attached to the Bid Procedures Order as **Exhibit 1** in connection with the sale (the "**Sale**") of the Property;

(b)     approving and scheduling an auction (the "**Auction**") and sale hearing (the "**Sale Hearing**") with respect to the Sale; and

(c)     granting related relief.

14.     **Second**, following execution of the Bid Procedures, the Debtor intends to seek entry of the Sale Order at the Sale Hearing, providing the following relief:

(a)     authorizing and approving the sale of the Property to the bidder at the Auction that the Debtor, in consultation with the Consultation Parties, determines to have submitted the highest and/or best bid for the Property (the "**Successful Bidder**") (or, if the Successful Bidder fails to consummate the Sale, to the bidder with the next-highest or second-best bid at the Auction for the Property (the "**Backup Bidder**")), free and clear of liens,

---

[3] For avoidance of doubt, nothing herein is intended to modify or limit the rights set forth in the Settlement Term Sheet.

[4] At this time, the Debtor has not selected a stalking horse bidder. The Debtor reserves the right to identify and seek approval of a stalking horse bidder from this Court.

claims, encumbrances, and other interests (other than any assumed liabilities and permitted liens or encumbrances); and

(b) granting certain related relief.

## THE BID PROCEDURES

### A. The Bid Procedures

15. The Bid Procedures were developed to permit an efficient (but sufficient) marketing and sale process, to promote participation and active bidding, and to ensure that the highest and/or best offer is received for the Property. The Bid Procedures describe, among other things, the requirements for prospective purchasers to participate in the Auction, the availability and conduct of due diligence, and the process for selecting the Successful Bidder. The Bid Procedures also recognize the obligations to maximize the value of the assets and, as such, do not impair the ability to consider all qualified bid proposals. The Debtor developed the Bid Procedures in consultation with Keenan, which provided valuable insight regarding procedures designed to maximize participation in the Auction and the value of the Property in the current market.

### B. The Auction and Sale

16. Under the Bid Procedures, the Debtor (through Keenan as auctioneer) shall conduct the Auction to determine, in consultation with the Consultation Parties, the highest and second-highest bids. The Successful Bidder and Backup Bidder will be required to execute a standard purchase and sale agreement with the Debtor at the conclusion of the Auction (substantially in the form attached to the Bid Procedures Order as **Exhibit 2**), which will provide for, among other commercially standard terms, a 28-day closing deadline (subject to entry of the Sale Order) and an increased non-refundable deposit after the conclusion of the Auction.

  C. **Form and Matter of Notice**

  17. On or within two (2) business days after entry of the Bid Procedures Order, the Debtor shall cause a copy of the Bid Procedures Order and the Bid Procedures to be served on: (a) the Office of the United States Trustee for the District of Maine; (b) the holders of the 20 largest, non-insider unsecured claims against the Debtor; (c) counsel to the Consultation Parties; (d) any other parties with known secured claims against the Debtor or their counsel, if known; (e) all parties that have executed a non-disclosure agreement (if any) with Keenan; (f) the Internal Revenue Service; (g) all state and local taxing authorities with an interest in the Property; (h) the Attorney General for the State of Maine; (i) all other known governmental agencies with an interest in the Sale and transactions proposed thereunder; (j) all other parties known or reasonably believed to have asserted an interest in the Property; (k) the Debtor's insurance carriers; and (l) any other party that has requested notice pursuant to Bankruptcy Rule 2002.

## BASIS FOR RELIEF

  A. **The Relief Sought in the Bid Procedures Order is in the Best Interests of the Estate and Should be Approved**

   *i.* *The Proposed Notice of the Bid Procedures and the Sale Process is Appropriate and Sufficient*

  18. The Debtor seeks authority to sell the Property through an Auction process. The Debtor, through Keenan, will conduct an extensive marketing process. The Bid Procedures are designed to elicit bids at the Auction from one or more parties and to encourage robust bidding for the Property, thus maximizing the value of the Debtor's estate for the benefit of creditors and other stakeholders.

  19. Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify creditors of the proposed sale of the Property, including a disclosure of the time and place of any auction, the terms and conditions of a sale, and the deadline for filing any objections. The Debtor submits

that the Bid Procedures Order is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale. The Debtor further submits that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.

### ii. *The Bid Procedures Are Appropriate and Will Maximize Value*

20. Bid procedures may be approved when they provide a benefit to a debtor's estate by maximizing the value of the debtor's assets. See In re Edwards, 228 B.R. 552, 361 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."). Courts have made clear that a debtor's business judgment is entitled to deference with respect to the procedures to be used in selling an estate's assets. See In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'") (internal citations omitted)); see also In re Integrated Resources, Inc., 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (bid procedures negotiated by a trustee are to be reviewed in accordance with the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"). Courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, appropriate in the context of bankruptcy transactions. See, e.g., In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 537 (3d Cir. 1999); Integrated Resources, 147 B.R. at 659 (bid procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets").

21. The Debtor believes that the Bid Procedures will establish the parameters under which the value of the Property may be tested at the Auction. The Bid Procedures will increase the likelihood that the Debtor will receive the greatest possible consideration because they will

ensure a competitive and fair bidding process. Specifically, the proposed Bid Procedures contemplate an open auction process with minimal barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a bid at the Auction. At the same time, the proposed Bid Procedures provide the Debtor with a robust opportunity to consider competing bids and select the highest and/or best offer for the completion of the Sale.

    **B.**     **Approval of the Proposed Sale is Appropriate and in the Best Interests of the Estate**

    *i.*     *The Sale of the Property Should be Authorized Pursuant to Section 363 of the Bankruptcy Code*

22. The authority to sell assets conferred upon a debtor-in-possession by § 363(b) of the Bankruptcy Code includes the sale of substantially all the assets of an estate. See In re Coastal Cable T.V., Inc., 24 B.R. 609, 611 (B.A.P. 1st Cir. 1982) (vacated on other grounds) ("A sale of all or most of a debtor's assets may occur prior to confirmation of a plan."); Otto Preminaer Films. Ltd. v. Qintex Entm't., Inc. (In re Qintex Entm't Inc.), 950 F.2d 1492, 1495 (9th Cir. 1991) ("Section 363 of the Code allows a debtor to sell assets of the estate . . . including a sale of substantially all the assets of the estate."). The power to approve a sale under § 363(b) is "within the sound discretion of the trial court." Coastal Cable T.V., 24 B.R. at 611. "[A] chapter 11 debtor may sell all or substantially all its assets pursuant to section 363(b) prior to confirmation of a chapter 11 plan, when the court finds a good business reason for doing so." In re General Motors Corp., 407 B.R. 463, 491 (Bankr. S.D.N.Y. 2009); see also In re AMR Corp., 490 B.R. 158, 164 (Bankr. S.D.N.Y. 2013).

23. The Debtor satisfies the requirement that it have a "sound business purpose" for the sale of the Property. First, the Debtor believes that the Sale will maximize the Property's value by allowing a party to bid on assets that would have substantially less value on a stand-alone or

liquidation basis, including if liquidated outside of court. Second, the Sale of the Property will be subjected to competing bids at the Auction, enhancing the Debtor's ability to receive the highest or otherwise best value for the Property. The value of the Property will be tested through the Auction conducted pursuant to the Bid Procedures. Ultimately, the Successful Bid, after being subject to a "market check" in the form of the Auction and accepted by the Debtor in the exercise of its reasonable business judgment, will constitute the highest and best offer for the Property, and, at this time, the Debtor believes will provide a greater recovery for the estate than any known or practically available or feasible alternative, including dismissal or liquidation in chapter 7. See, e.g., In re Trans World Airlines, Inc., No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure . . . the auction procedure has developed over the years as an effective means for producing an arm's-length fair value transaction"). Finally, the Bid Procedures were negotiated with Builders Capital and Titan to avoid a contested chapter 11 case, the result of which would be prolonged and costly.

### ii. *Adequate and Reasonable Notice of Sale Will Be Provided*

24. The Bid Procedures Order will: (i) be served in a manner that provides at least 21-days' notice of the date, time, and location of the Sale Hearing following entry of the Bid Procedures Order, and (ii) otherwise include all information relevant to parties interested in or affected by the Sale. Significantly, the form and manner of such notice will have been approved by this Court pursuant to the Bid Procedures Order, after notice and a hearing, before it is served on parties in interest.

### iii. *The Sale and Purchase Price Will Reflect a Fair-Value Transaction*

25. Where there is a court-approved sale auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market. See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S.

434, 457 (1999). The Debtor (through Keenan) will market the Property and solicit offers at the Auction consistent with the Bid Procedures, including, without limitation, by providing potential bidders with access to the data room and requested information. In this way, the number of bidders that are eligible to participate in the competitive Auction process will be maximized.

> iv.  *The Sale of the Property Should Be Free and Clear of Claims and Interests Pursuant to Section 363(f) of the Bankruptcy Code*

26. The Debtor submits that it is appropriate to sell the Property free and clear of all liens, claims, encumbrances, and other interests pursuant to §363(f) of the Bankruptcy Code, with any such claims and interests not released at closing attaching to the net sale proceeds of the Property, as and to the extent applicable.

27. The Debtor requests authorization to sell the Property free and clear of liens, claims, encumbrances, and other interests subject to the provisions contained herein and the Sale Order.

28. Section 363(f) of the Bankruptcy Code provides that:

> The trustee may sell property under [§ 363(b)] free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). "Because the language of § 363(f) is in the disjunctive, courts can approve a sale if any one of the five conditions is satisfied." BAC Home Loans Servicing LP v. Grassi, 2011 WL 6096509, at *5 (B.A.P. 1st Cir. Nov. 21, 2011).

29. First, in relation to the consent requirements of § 363(f)(2), Builders Capital and Titan consent to the Sale in accordance with the Bid Procedures. Further, this Court should deem any potential lienholders or other interest holder of any type to consent to the free and clear sale under § 363(f)(2) to the extent such interest holder does not timely object to the sale transaction after notice thereof. See BAC Home Loans, 2011 WL 6096509, at *5 ("This Panel, as well other courts in this circuit and nationally, views silence as implied consent sufficient to satisfy the consent requirement for approving a sale under § 363(f)(2).") (citing cases); In re Colarusso, 295 B.R. 166, 175 (B.A.P. 1st Cir. 2003), aff'd, 382 F.3d 51 (1st Cir. 2004) (failure to object to the sale was consent under § 363(f)(2)).

30. Second, in relation to the requirements of § 363(f)(3), it is anticipated that the sale of the Property may generate sufficient proceeds to satisfy some or all of the properly perfected, non-avoidable liens against the Property.

31. Third, under § 363(f)(4), to the extent a bona fide dispute exists as to any liens or interests, the Debtor may sell free and clear of such liens and interests, with those liens or interests attaching to the sale proceeds for future determination and allocation (if any).

32. Fourth, under § 363(f)(5), this Court is empowered to authorize the sale free and clear of any claim or interest as long as that creditor receives the value of its collateral. See In re Boston Generating, LLC, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010); In re Beker Indus. Corp., 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986); In re Oneida Lake Dev., Inc., 114 B.R. 352, 356-57 (Bankr. N.D.N.Y. 1990). Interest holders, including secured creditors, could be compelled to accept a money satisfaction of their respective interests pursuant to § 363(f)(5) of the Bankruptcy Code. See, e.g., In re James, 203 B.R. 449, 453 (Bankr. W.D. Mo. 1997); In re Grand Slam U.S.A., Inc., 178 B.R. 460, 461-62 (E.D. Mich. 1995). Courts considering this issue have held that the

"cramdown" provision under the Bankruptcy Code constitutes a "legal or equitable proceeding" and permits a sale under § 363(f)(5).  See, e.g., Grand Slam, 178 B.R. at 464; In re Levitt & Sons, LLC, 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008); In re Gulf States Steel, Inc. of Ala., 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002); Scherer v. Fed. Nat. Mortg. Ass'n (In re Terrace Chalet Apartments, Ltd.), 159 B.R. 821, 829 (N.D. Ill. 1993).  Any liens against the Property released under § 363(f)(5), therefore, shall attach to the cash proceeds received from the sale of the Property in the same force, effect, and priority as such liens had prior to the closing of the Sale, subject to all rights and defenses of the Debtor or any party in interest.

### v. *The Property Should Be Sold Free and Clear of Successor Liability*

33.     The Debtor proposes that the Sale Order provide that the Successful Bidder shall not have any successor liability related to the Debtor or the Property to the maximum extent permitted by law.  Although § 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code.  Courts, however, have held that a buyer of a debtor's assets pursuant to a § 363 sale takes free from successor liability resulting from pre-existing claims.  See Amphenol Corp. v. Shandler (In re Insilco Techs., Inc.), 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a § 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory).  Under § 363(f) of the Bankruptcy Code, the Successful Bidder is entitled to know that the Property is not tainted by claims that could be asserted against the Successful Bidder after the proposed transaction is completed.  Absent that ruling, the value of the Property could be compromised.  Accordingly, the Sale Order should state that the Successful Bidder is not liable as a successor under any theory of successor liability, for interests that encumber or relate to the Property.

Case 25-20100    Doc 146    Filed 07/22/25    Entered 07/22/25 10:53:04    Desc Main
                        Document      Page 14 of 17

> ***vi.   The Sale Has Been Proposed in Good Faith and Without Collusion, and the Successful Bidder Will Be a "Good-Faith Purchaser" Entitled to the Full Protection of Bankruptcy Code § 363(m); and the Sale of the Property Does Not Violate Bankruptcy Code § 363(n)***

34.   The Debtor requests that, at the Sale Hearing, the Court find that the Successful Bidder is entitled to the benefits and protections provided by § 363(m) of the Bankruptcy Code in connection with the Sale of the Property.  Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

35.   Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to § 363 from the risk it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser purchased or leased the assets in "good faith."  Although the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that, where there is a lack of such integrity, a good-faith finding may not be made.  See, e.g., Abbotts Dairies of Pa., 788 F.2d at 147 ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); In the Matter of Andy Frain Servs., Inc., 798 F.2d 1113 (7th Cir. 1986) (same); In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

36.   The Debtor anticipates that the Successful Bidder arising from the Auction would be a "good faith purchaser" within the meaning of § 363(m) of the Bankruptcy Code, and the

resulting purchase agreement would be a good-faith agreement on arm's-length terms entitled to the protections of § 363(m) of the Bankruptcy Code. As set forth in more detail above, the consideration to be received by the Debtor pursuant to the Sale will be subject to a market process by virtue of the Debtor's marketing efforts and the Auction, and will be substantial, fair, and reasonable. Further, where—as the Debtor anticipates will be the case here—there is no indication of any "fraud or collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct, there is no cause that would permit the Sale to be avoided pursuant to § 363(n). Finally, the Successful Bidder's offer will be evaluated and approved by the Debtor in consultation with its advisors.

37. Moreover, because there will be no fraud or improper dealing of any kind, the Sale does not constitute an avoidable transaction pursuant to § 363(n) of the Bankruptcy Code, and, as a result, the purchaser should receive the protections afforded good faith purchasers by § 363(m) of the Bankruptcy Code. Accordingly, the Debtor requests that the Court make a finding at the Sale Hearing that the agreement reached with the Successful Bidder was at arm's length and is entitled to the full protections of § 363(m) of the Bankruptcy Code. The Debtor will submit evidence at the Sale Hearing to support these conclusions, as appropriate.

      *vii.*    ***Preservation of All Credit Bid Rights***

38. Section 363(k) of the Bankruptcy Code provides, in relevant part, that unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k); see Cohen v. KB Mezzanine Fund II, LP (In re Submicron Sys. Corp.), 432 F.3d 448, 459-60 (3d Cir. 2006) ("It is well settled among district and bankruptcy courts that creditors can bid the full-face value of their secured claims under § 363(k)"). Thus, pursuant to § 363(k) of the Bankruptcy Code,

Builders Capital and Titan should be allowed to submit a credit bid to the extent set forth in § 363(k), and any credit bid shall be treated as the equivalent of cash for purposes of determining the highest and/or best offer at the Auction.

### C. Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate

39. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtor requests the Sale Order be effective immediately upon its entry by providing the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). To maximize the value received from the Property, and to ensure that the Successful Bidder is free to close the Sale as soon as possible after entry of the Sale Order, the Debtor hereby requests that this Court waive the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

### NOTICE

40. Notice of this Motion will be given as set forth in the applicable certificate(s) of service.

WHEREFORE, the Debtor respectfully requests this Court: (i) enter the Bid Procedures Order, (ii) enter the Sale Order following the Sale Hearing, and (iii) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: July 22, 2025 | Respectfully submitted,<br>**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**<br><br>*/s/ Adam R. Prescott*<br>Adam R. Prescott, Esq.<br>100 Middle Street<br>PO Box 9729<br>Portland, Maine 04104<br>Telephone: (207) 774-1200<br>Facsimile: (207) 774-1127<br>aprescott@bernsteinshur.com<br><br>*Counsel to the Debtor and Debtor in Possession* |