**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>THE MARK REAL ESTATE HOLDINGS, LLC,<br>    Debtor.[1] | Chapter 11<br><br>Case No. 25-20100 |

**APPLICATION OF THE DEBTOR FOR ORDER PURSUANT TO §§ 327 AND 328 OF THE BANKRUPTCY CODE AUTHORIZING EMPLOYMENT OF KEENAN AUCTION COMPANY, INC., EFFECTIVE AS OF JULY 8, 2025**

  The Mark Real Estate Holdings, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through undersigned counsel, applies to this Court (the "**Application**") for entry of an order, pursuant to §§ 327 and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1, 2016-1, and 9013-3 of the Local Rules of the United States Bankruptcy Court for the District of Maine (the "**Local Rules**"), authorizing the employment of Keenan Auction Company, Inc. ("**Keenan**"), effective as of July 8, 2025, to market and conduct the public auction of the Debtor's real property and improvements located at 100 US Route 1 in Cumberland, Maine (the "**Property**"). Simultaneously with the filing of this Application, the Debtor is filing the *Declaration of Stefan P. Keenan in Support of Application of the Debtor for Order Pursuant to §§ 327 and 328 of the Bankruptcy Code Authorizing Employment of Keenan Auction Company, Inc., Effective as of July 8, 2025* (the "**Declaration**"), which is attached hereto as **Exhibit A** and incorporated herein by reference. In support of the Application, the Debtor states as follows:

---

[1] The Mark Real Estate Holdings, LLC's principal place of business is 100 US Route 1, Cumberland, Maine 04021, and the last four digits of its taxpayer identification number are 8757.

## JURISDICTION, VENUE AND STATUTORY BASIS

1. The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgment in this proceeding.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

4. The predicates for the relief sought herein are §§ 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014 and 2016, and Local Rules 2014-1, 2016-1, and 9013-3.

## BACKGROUND

5. On April 22, 2025 (the "**Petition Date**"), the Debtor commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

6. The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

7. The Debtor owns the real estate development project called "The Mark," comprised of approximately 45 residential units and located at 100 US Route 1 in Cumberland, Maine (the "**Property**"). In addition to residential units, the Property includes garage parking, storage units, washrooms, bicycle storage, and a gym. The Property was initially owned by Cumberland Foreside Partners, LLC ("**CFP**"). Construction on the Property was to be funded by the primary construction lender, Construction Loan Services II, LLC ("**Builders Capital**"), which holds a first priority

2

mortgage against the Property. On or around late 2024, various contractors ceased work on the Property for nonpayment. As a result, approximately $2 million to $2.5 million of mechanic's lien claims were asserted against the Property (the "**Mechanic's Liens**" and the "**Mechanic's Lienholders**").

8. CFP transferred the Property to the Debtor prior to the Petition Date. The Debtor acquired the Property subject to all valid liens and claims secured by such liens, with the intent to finish the Property, satisfy and discharge the Mechanic's Liens, and maximize the value of a turn-key property through an orderly and strategic sale process. The Debtor understands that Builders Capital has since paid the claims of the Mechanic's Lienholders in full and caused the Mechanic's Liens to be discharged. As a result, the primary prepetition creditors remaining in this case are Builders Capital and Titan Funding, LLC ("**Titan**"), the junior mortgage holder on the Property.

9. Following negotiations with Builders Capital and Titan regarding this case and other matters between the parties, the Debtor, Builders Capital, and Titan reach a settlement agreement as reflected in that certain term sheet dated on or about June 16, 2025 (the "**Settlement Term Sheet**"). Pursuant to the Settlement Term Sheet (which was approved by this Court through entry of an order on June 24, 2025 [Dkt. No. 126]), among other things, the Debtor agreed to retain Cordjia Capital Projects Group as construction advisor to oversee and manage, among other powers and duties, completion and sale of the Property.

10. As part of the Settlement Term Sheet, the Debtor is seeking approval, through a separately filed bid procedures motion, of a competitive sale process for the Property to culminate in an auction on or about September 17, 2025. Accordingly, retention of Keenan is necessary to conduct that sale process in accordance with the Settlement Term Sheet and other applicable Court orders.

**RELIEF REQUESTED**

11. The Debtor seeks to employ Keenan for the purpose of evaluating, marketing, preparing for sale, and auctioning the Property pursuant to the terms and conditions set forth in the Auction Marketing Proposal, a copy of which is attached to the Declaration as **Exhibit 3**.

12. Pursuant to Local Rule 2014-1(b)(2), because this Application seeks to retain a professional for a chapter 11 debtor and was filed less than thirty (30) days after Keenan first rendered services to the Debtor in this case, the order authorizing Keenan's retention may be automatically effective as of July 8, 2025, without the necessity of obtaining retroactive approval.

**BASIS FOR RELIEF**

A. **Legal Standard.**

13. Section 327(a) of the Bankruptcy Code provides that a debtor in possession is authorized to employ one or more advisors that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as that term is defined in Bankruptcy Code section 101(14), to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. See 11 U.S.C. §§ 101(14), 327(a).

14. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a) of the Bankruptcy Code permits the compensation of professionals on more flexible terms that reflect the nature of their services and market conditions. Once a court has approved the terms and conditions for employment of a professional pursuant to § 328, "the Court may allow compensation on different terms or conditions only if the court's initial approval 'prove[s] to have been improvident

4

in light of developments not capable of being anticipated at the time' of approval." In re Federal Mogul-Global, Inc., 348 F.3d 390, 397 (3d Cir. 2003) (quoting 11 U.S.C. § 328(a)).

    **B.**    **Background and Services to be Provided by Keenan.**

15.    The Debtor retained Keenan on or about July 8, 2025, to assist with the marketing and auctioning of the Property. The Debtor selected Keenan because of Keenan's extensive experience, through Stefan P. Keenan, in conducting real estate and equipment auctions throughout the northeast United States, and on its reputation as an industry leader in this area. Accordingly, the Debtor submits that Keenan is well qualified to provide the necessary auction services in this case.

16.    In accordance with Local Rule 2014-1(c), the professional services that will render to the Debtor may include, without limitation, some or all of the following:

    (a)    Obtaining tax, zoning, and assessment information;

    (b)    Inspecting and photographing the Property;

    (c)    Preparing and placing marketing advertising with newspapers;

    (d)    Preparing and printing property information packages;

    (e)    Posting brochures and the property information package to Keenan's website;

    (f)    Posting the auction listing on real estate listing websites;

    (g)    Sending over email auction notifications;

    (h)    Installing and removing signage; and

    (i)    Arranging for auction day logistics, conducting the auction, and executing purchase and sale agreements.

    **C.**    **Keenan is Disinterested and Does Not Have Any Adverse Interests.**

17.    Except to the extent non-adverse connections are disclosed in the Declaration, Keenan does not have any connection with, or any interest adverse to, the Debtor, its creditors, any other party in interest, their respective attorneys and accountants (to the extent known), the United States Trustee, or persons known to Keenen as employees of the Office of the United States Trustee. Accordingly,

the Debtor believes that Keenen does not hold or represent any interest adverse to the bankruptcy estate and is a "disinterested person" as that phrase is defined in Bankruptcy Code § 101(14), as modified by § 1107(b).

**D.   Arrangement for Compensation and Reimbursement of Expenses.**

18. Keenan does not hold a claim against the Debtor.

19. A brief biography of Stef Keenan is included at **Exhibit 2** to the Declaration.

20. The Debtor proposes to pay Keenan the following compensation based on the success of the sale, all as set forth in the Auction Marketing Proposal:

> (a)   **Auctioneer's Fee, Sale to Third Party:** Keenan will be due a 3% commission based on the final contract sale price, plus expenses (discussed below). Keenan reserves the right to above fees if the Property is sold prior to auction or to a registered bidder within 30 days after the auction.
>
> (b)   **Auctioneer's Fee, Sale to Lender:** In the event that Builders Capital or Titan Funding acquires the Property, the auctioneer's fee would be 1% of the sale price plus the approved advertising and expenses.
>
> (c)   **Buyer's Broker Participation Program:** Brokers registering a winning bidder that closes the transaction will receive a 1% commission on the bid price.
>
> (d)   **Contingency Fees:** $350 per on site postponement.
>
> (e)   **Expenses and Advertising Budget:** Estimated $7,963.00 (to be determined at time of closing based on actual costs incurred by Keenen, see Auction Marketing Proposal for detailed summary of anticipated expenses).

21. The Debtor submits that this fee structure is within market for similar services and is reasonable given Keenan's experience and the scope of services to be provided.

22. In accordance with Local Rule 2014-1(c), the Debtor states that Keenan's compensation will depend on the outcome of the sale process, so an estimate cannot be provided at this time.

**E.   No Duplication with Other Professionals.**

23. Keenan's services will not overlap with or duplicate the services of any other retained professional in this case, as no other professional is responsible for marketing and auctioning the

6

Property. Keenan, moreover, will take all appropriate steps to avoid unnecessary and wasteful duplication of efforts by any other professionals retained in the chapter 11 case.

## NOTICE

24. Notice of this Application shall be served in the manner set forth in the certificate of service.

## CONCLUSION

25. Based on the foregoing, the Debtor requests that this Court enter an order authorizing the employment of Keenan on the terms set forth herein, in the Auction Marketing Proposal, and in the proposed form of order filed herewith.

Dated:   July 22, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

/s/ *Adam R. Prescott*
Adam R. Prescott
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
aprescott@bernsteinshur.com

*Counsel to the Debtor and Debtor in Possession*