**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: | Chapter 11 |
| The Mark Real Estate Holdings, LLC, | Case No. 25-20100-PGC |
| Debtor.[1] | |

### DEBTOR'S OBJECTION TO THE UNITED STATES TRUSTEE'S MOTION TO VACATE ORDER APPROVING SETTLEMENT AGREEMENT AND TERM SHEET

The Mark Real Estate Holdings, LLC (the "Debtor"), by and through undersigned counsel,
hereby objects (the "Objection") to the United States Trustee's ("U.S. Trustee") *Motion to Vacate
Order Approving Settlement Agreement and Term Sheet* [Dkt. No. 137] (the "Motion to Vacate").
In support of this Objection, the Debtor respectfully states as follows:

#### PRELIMINARY STATEMENT

1.      The Motion to Vacate is nothing more than a belated attempt to relitigate the same
arguments that this Court already rejected by granting the Compromise Order (defined below).
Indeed, the reality since entry of the Compromise Order has only confirmed what was obvious:
the Construction Advisor (defined below) does not own or control any property of the estate, nor
has it acted or purported to act in any way as a substitute for a chapter 11 trustee.  Rather, the
Construction Advisor has continued to seek approval from the Debtor, through its manager, as the
ultimate decisionmaker and holder of all estate property, and it is the Debtor—not the Construction
Advisor—that has been authorized to make final decisions, execute documents required for the
construction work, and otherwise acted at all times like a proper debtor-in-possession.  As the

---

[1]      The Mark Real Estate Holdings, LLC's principal place of business is 100 US Route 1, Cumberland, Maine
04021, and the last four digits of its taxpayer identification number are 8757.

1

Document    Page 2 of 18

saying goes, "If it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck." So too here: if the Construction Advisor looks like a Construction Advisor, acts like a Construction Advisor, and sounds like a Construction Advisor, then it is a Construction Advisor—not a chapter 11 trustee or any permutation thereof.

2.     The U.S. Trustee's misguided position is particularly frustrating when the three parties with economic interests in this case—the Debtor, Builders Capital, and Titan (each as defined below)—have worked hard to overcome significant disagreements and negotiate a consensual path forward that provides for a timely construction process, a thorough marketing and sale process, and a fully funded chapter 11 case in terms of administrative expenses.[2] In this context, and given this Court's application of the correct legal standard and broad discretion in approving settlements, the Compromise Order was correct when entered, was in the best interests of creditors and the estate, and remains correct today. The Motion to Vacate should be denied.

## BACKGROUND

3.     In August 2023, Construction Loan Services II, LLC ("CLS") granted Cumberland Foreside Partners, LLC ("Cumberland") a loan in the amount of $17,884,362.12 to build a condominium project (the "Property") in exchange for a first-priority security interest in the Property (the "Loan Agreement").

4.     Contemporaneously, Cumberland entered into a junior priority secured loan with Titan Funding LLC ("Titan"), secured by a second lien on the Property, in the original aggregate maximum principal amount of $5,700,000.00.

5.     On August 30, 2023, Titan and CLS executed a Subordination and Intercreditor Agreement (the "Titan SIA") memorializing Titan's junior priority to CLS's loan.

---

[2] This is on top of the $2.5 million already paid to mechanic's lien creditors, itself a significant "win" for numerous creditors brought about by this case and the efforts of the parties.

6.      On December 11, 2023, CLS assigned its interests in the Loan Agreement to Builders Capital Finance, LLC ("Builders Capital").

7.      On March 19, 2025, the Debtor was formed as a Maine LLC.

8.      On April 3, 2025, the Debtor entered into an Asset Purchase Agreement (the "APA") with Cumberland, to transfer the Property from Cumberland to the Debtor.

9.      On April 22, 2025 (the "Petition Date"), the Debtor commenced this chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.  The Debtor continues to operate its business as debtor and debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the Office of the United States Trustee.

10.     As the Court is aware, from the case's inception the Debtor, Titan, and Builder Capital disagreed on, among many other things, how best to move forward with the Debtor's chapter 11 case.

11.     Despite the various disagreements, the Debtor, Builders Capital, and Titan (collectively, the "Parties") engaged in lengthy, good faith, and ultimately productive negotiations towards a consensual path forward.  As a result of these negotiations, the Parties reached an agreement for a global resolution of issues in the chapter 11 case.

12.     On June 18, 2024, the Debtor filed its *Application to Compromise Controversies By and Between the Debtor, Builders Capital, and Titan Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Request for Expedited Determination and Shorted Objection Period* [Dkt. No. 112] (the "Application"), which set forth the terms of the Parties' agreement and requested that the Court approve the agreements.

13.     The terms of the Parties' agreement were reflected in a detailed term sheet attached

3

to the Application (the "Term Sheet"), which generally provided as follows:

a.  The Debtor would retain Cordjia Capital Projects Group to serve as a construction advisor (the "Construction Advisor") to the Debtor. The Construction Advisor would be responsible for overseeing the construction, completion, and sale of the Property;

b.  Builders Capital would provide funding to the Debtor for completion of the Property and administration of this chapter 11 case, and such funding would be given on the terms previously agreed to between Builders Capital and Cumberland and assumed by the Debtor;

c.  Completion and sale of the Property would be subject to certain milestones, with sale of the Project to occur in September or October of 2025; and

d.  Failure of the Debtor to comply with the milestones required by Builders Capital, or of the Debtor or Titan to otherwise default under the Term Sheet, would entitle Builders Capital, upon sufficient notice to the Court, to obtain relief from the automatic stay and exercise remedies against the Property.

14.  The Court set a hearing on the Application for June 24, 2025, and heard arguments from all interested parties. The Court overruled the U.S. Trustee's objection and entered the *Order Granting the Application* (the "Compromise Order") [Dkt. No. 126] on June 24, 2025.

15.  Following entry of the Compromise Order, the Parties began immediately implementing the Term Sheet, in pursuit of completing the Property as soon as possible and selling the Property in a value-maximizing transaction for the benefit of all remaining creditors, as contemplated under the Term Sheet.

16.  The steps the Parties have taken in good faith reliance on the Compromise Order include, without limitation, the following:

a.  The Debtor engaged the Construction Advisor and began working with the Construction Advisor, DeStefano & Associates, Inc. ("DeStefano"), and the Parties to continue construction of the Property. An executed copy of Construction Advisor's engagement letter **signed by the Debtor** is attached hereto as **Exhibit A**.

b.  The Debtor entered into a new construction contract with DeStefano for the completion of construction of the Property. An executed copy of this contract **signed by the Debtor** is attached hereto as **Exhibit B**.

4

     c.      **The Debtor** engaged Keenan Auction Company, Inc. ("<u>Keenan</u>") to market and conduct a public auction for the Property.  **The Debtor** submitted its *Application of the Debtor for Order Pursuant to §§ 327 and 328 of the Bankruptcy Code Authorizing Employment of Keenan Auction Company, Inc., Effective as of July 8, 2025* [Dkt. No. 147] to the Court on July 22, 2025.  A copy of that marketing proposal—**submitted in the name of the Debtor and to be hired by the Debtor**—is attached as **<u>Exhibit C</u>**.

     d.      Pursuant to (and in reliance on) the Term Sheet and Compromise Order, the Debtor has requested, and Builders Capital has made, advances necessary for construction on the Property to continue.  A summary of advances made by Builders Capital for expenses incurred in the month of June was attached to the Debtor's most recent monthly operating report [Dkt. No. 144].

     e.      Construction at the Property has progressed at a swift pace, and the Construction Advisor has provided consistent reporting to the Debtor, Builders Capital, and Titan.  This has included detailed weekly summary reports and on-site field observation reports.

     f.      On July 22, 2025, **the Debtor filed** its *Motion for Entry of: (I) Order (A) Approving Bid Procedures, (B) Scheduling Auction and Sale Hearing, (C) Approving Form and Manner of Notice Thereof, and (D) Granting Related Relief; and (II) Order (A) Approving Sale of Substantially All Assets Free and Clear and (B) Granting Related Relief* (the "<u>Bid Procedures Motion</u>") [Dkt. No. 146].  Consistent with the Term Sheet, the Bid Procedures Motion requests approval of a sale timeline culminating in an auction for the Property on September 17, 2025, a sale hearing on September 23, 2025, and a closing to occur within 28 days of the auction.

     g.      On July 21, 2025, **the Debtor** filed its June 2025 operating report.

17.     On July 8, 2025, the U.S. Trustee filed a *Motion to Vacate Order Approving Settlement Agreement and Term Sheet* [Dkt. No. 137].  On the same day, and for similar reasons expressed in the Motion to Vacate, the U.S. Trustee filed a *Motion to Dismiss Debtor's Chapter 11 Case* [Dkt. No. 138].

## OBJECTION

18.     The U.S. Trustee fails to demonstrate that this Court committed "a manifest error of fact or law" by granting the Application and entering the Compromise Order.  In the Motion to Vacate, the U.S. Trustee makes various shades of the same basic argument: that by entering the

Compromise Order and approving the Term Sheet, the Court erroneously and in violation of the Bankruptcy Code appointed a chapter 11 trustee.  The U.S. Trustee's contention is simply untrue. This Court did not appoint a chapter 11 trustee, nor did the Application request that it do so. Further, as contemplated by the Parties and reflected by their actions since the Compromise Order was entered, the Debtor retains its fundamental rights and responsibilities as debtor in possession. Accordingly, the U.S. Trustee's Motion to Vacate should be denied.

## **BASIS FOR OBJECTION**

### I.    **Motion to Vacate Standard**

19.    "The Bankruptcy Rules do not specifically provide for a motion to vacate an order." *Ibrahim*, No. BAP MB 18-020, 2019 WL 4127600, at *8 (B.A.P. 1st Cir. Aug. 28, 2019). "However, [d]epending on the time that the motion is served, a motion to . . . vacate may be treated either as a motion to alter or amend the judgment under Rule 59(e), made applicable by Bankruptcy Rule 9023, or as a motion for relief from judgment under Rule 60(b), made applicable by Bankruptcy Rule 9024."  *Ramirez Rosado v. Banco Popular de P.R. (In re Ramirez Rosado)*, 561 B.R. 598, 607 (B.A.P. 1st Cir. 2017).  To prevail under Rule 59(e), "the movant must either clearly establish a manifest error of law or fact or must present newly discovered evidence that could not have been discovered during the case."  *In re Byrne*, No. BAP EB 23-029, 2024 WL 3176339, at *4 (B.A.P. 1st Cir. June 6, 2024) (internal quotation marks omitted).

20.    "A manifest error of law is 'an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *In re Giger*, 504 B.R. 286, 290 (Bankr. D. Me. 2014) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). "Reconsideration should not be granted 'unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to

alter the conclusion reached by the court.'" *In re Feldman*, 606 B.R. 189, 196 (Bankr. E.D.N.Y. 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

21.     Rule 59(e) motions are "generally denied because of the narrow purpose for which they are intended." *Rosado*, 561 B.R. at 608. "They are 'not the venue to undo procedural snafus or permit a party to advance arguments it should have developed prior to judgment, nor [are they] a mechanism to regurgitate old arguments previously considered and rejected.'" *In re Buscone*, 61 F.4th 10, 35 (1st Cir. 2023) (quoting *Biltcliffe v. CitiMortgage*, Inc., 772 F.3d 925, 930 (1st Cir. 2014)).

## II.     **The Court Has Already Considered and Overruled the Arguments Made by the U.S. Trustee (And to the Extent Such Arguments Were Not Previously Made, They Were Waived)**

22.     It is well settled that "[a] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an occasion for making new arguments that could have been previously advanced." *In re Richmond*, 516 B.R. 229, 234 (Bankr. E.D.N.Y. 2014) (quoting *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)). In *RBSF, LLC v. Franklin* (*In re Franklin*), 445 B.R. 34 (Bankr. D. Mass. 2011), the court observed that "[i]n bankruptcy cases, courts . . . routinely hold that motions for reconsideration are not 'a means by which parties can rehash previously made arguments' and that to succeed on motions to reconsider, the movant must 'show newly discovered evidence or a manifest error of fact or law.'" *Id*. at 45 (quoting *In re Wedgestone Fin.*, 142 B.R. 7, 8 (Bankr. D. Mass. 1992)).

23.     The Motion to Vacate is just that: an attempt by the U.S. Trustee to rehash previously made arguments and to advance arguments it could have made prior to entry of the Compromise Order. The U.S. Trustee says so itself, alleging that at the hearing on the Application it "objected to the Application . . . arguing that the Debtor had 'abrogated its fiduciary obligation

7

by relinquishing control of this case to a secured creditor." Motion to Vacate, ¶ 44.  Further, the

U.S. Trustee claims that it argued that the Parties "were 'asking the Court to violate provisions of

the Bankruptcy Code by granting authority to a non-estate fiduciary to do the things in the

Bankruptcy Code that are typically reserved – or only reserved for debtors in possession and

Trustees.'" *Id*., ¶ 46.  These are precisely the arguments that the U.S. Trustee seeks to advance

again through the Motion to Vacate, although the U.S. Trustee now dresses it up by

mischaracterizing the Compromise Order as an order appointing the Construction Advisor as a

chapter 11 trustee.  The U.S. Trustee was wrong then.  It is wrong today.

24.     Because the U.S. Trustee's arguments are merely a rehash of arguments that the

U.S. Trustee made or could have made previously, and which this Court already overruled, the

Motion to Vacate should be quickly denied.  *See Frito-Lay of Puerto Rico, Inc. c. Canas*, 92 F.R.D.

384, 390 (D.P.R. 1981) ("To the extent that the Motion for reconsideration merely reasserts legal

arguments previously made . . .there is no reason to vacate the Court's earlier Opinion and

Order."); *Fairbanks v. O'Hagan*, 378 F. Supp. 3d 72, 77 (D. Mass. 2019) ("A court has

considerable discretion in granting or denying a Rule 59(e) motion but such relief is extraordinary

and should be used sparingly.").

25.     Perhaps even more perplexing than the U.S. Trustee's efforts to recycle arguments

already overruled by this Court is the U.S. Trustee's dramatic about-face within this chapter 11

case.  At the May 29 hearing on Builders Capital's motion for the appointment of a chapter 11

trustee (which was subsequently withdrawn), this Court specifically inquired with the U.S. Trustee

regarding its position on the need for a chapter 11 trustee in this case.  In response, the U.S. Trustee

stated that it was **not** supportive of Builders Capital's efforts to seek the appointment of a trustee,

particularly on an emergency basis, and that the U.S. Trustee was generally receptive to a path

8

forward mirroring the settlement later proposed by the Parties in the Application and approved by this Court. Indeed, the outcome of the May 29 hearing and, in part, the U.S. Trustee's statements regarding the need (or lack thereof) for a chapter 11 trustee in this case, was a significant factor in bringing the Parties to the negotiating table and crafting an agreeable framework for completion and sale of the Property within this case. The U.S. Trustee's reversal in position from May 29 to the June 24 hearing is puzzling, and, more importantly, if the Motion to Vacate is granted, will result in a tremendous waste of time and resources by the parties in this case, including significant costs incurred and expenditures made in reliance on the Compromise Order since its entry over one month ago.

26.     For all of the foregoing reasons, the Debtor requests that this Court deny the Motion to Vacate.

## III.     The U.S. Trustee Fails to Demonstrate a Manifest Error of Fact or Law

27.     In addition, this Court should deny the Motion to Vacate because the U.S. Trustee has failed to demonstrate that this Court committed a manifest error of fact or law. That is, the U.S. Trustee does not point to any controlling law that this Court disregarded in approving the Application and entering the Compromise Order. *In re Giger*, 504 B.R at 290 (Bankr. D. Me. 2014). Therefore, the Motion to Vacate must be denied.

28.     The crux of the U.S. Trustee's argument is that in approving the Application, the Court "replaced the estate fiduciary" and ceded control of the Debtor's affairs and fiduciary responsibilities to the Construction Advisor. This is wrong and entirely misconstrues the settlement approved by the Court. Under the Term Sheet, the Debtor retains its statutory responsibilities and control as debtor in possession—as reflected by Parties' real-world efforts taken since the Court entered the Compromise Order and the numerous subsequent pleadings filed

9

on the docket.  The Court did not commit a manifest error of fact or law, and its approval of the Application was proper.

### A.    The Court Did Not "Replace" the Debtor with the Construction Advisor

29.    Pursuant to section 1107(a) of the Bankruptcy Code, a chapter 11 "debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties, ... of a trustee serving in a case under this chapter."  *See In re Old Cold LLC*, 879 F.3d 376, 383 (1st Cir. 2018).  These rights, as enumerated in sections 1106(a) and 704(a) of the Bankruptcy Code, include a litany of powers and responsibilities.  *See* 11 U.S.C. §§ 1106(a) and 704(a) (setting forth the specific duties of a chapter 11 debtor in possession); *see also In re Water's Edge Ltd. P'ship*, 251 B.R. 1, 7 (Bankr. D. Mass. 2000) ("a debtor in possession performs the same functions a trustee, exercising avoidance powers, selling property, objecting to claims, and so forth, all for the benefit of the bankruptcy estate and unsecured creditors. The Code expressly authorizes a debtor in possession to perform this fiduciary role.").

30.    Indeed, the U.S. Trustee provides a helpful summary of the responsibilities of a debtor in possession:

> Among other things, a debtor-in-possession must account for all property received, examine proofs of claim, furnish information to parties in interest, file reports with the United States Trustee and taxing authorities, prepare and file a final account and file a plan of reorganization or report on why a plan cannot be filed. *Id*.; 11 U.S.C. 1107. *See* 11 U.S.C. 350, 502, 1125 and 1129. The Code also provides a debtor-in-possession with powers to hire professionals to assist it in fulfilling its fiduciary duties to finance its operations through the use of cash collateral or post-petition loans, to sell assets and to commence avoidance actions. *See* 11 U.S.C. §§ 327, 330, 363, 364, 544, 547, 548 and 550.

Motion to Vacate, n. 4.  None of these duties or responsibilities have been delegated to the Construction Advisor or abrogated by the Debtor, nor does the U.S. Trustee even allege as much. Instead, the U.S. Trustee's argument is built on the false notion that this Court appointed the

Construction Advisor to act as a chapter 11 trustee.  The Court did not, and no one asked for that. As a result, the thrust of the U.S. Trustee's argument collapses.

31.    The Debtor retained the services of the Construction Advisor as an eminently qualified and ordinary course professional to manage the construction, completion, and ultimate sale of the Property.  This does not mean that the Debtor ceded total control of its operations and affairs or its statutory duties as a chapter 11 debtor in possession.   Indeed, nothing in the Application or Term Sheet absolves the Debtor of its fiduciary duties, nor the Debtor's control of its estate.  The Construction Advisor's engagement letter with the Debtor, attached hereto as **Exhibit A**, states that, "**On your instruction**, Cordjia will provide **support** to the [Debtor] in connection with Construction Services" (emphasis added).   The Construction Advisor's engagement letter, which was signed and approved by Edward Piazza as manager of the Debtor, supports the notion that the Debtor retains its control over the management and affairs of the chapter 11 estate.  (It is, of course, very common for chapter 11 debtors to retain professionals to help with various aspects of a case, whether counsel or an accountant or a financial advisor; indeed, it could be a failure of a debtor not to retain and rely on such professionals with specialized skills to assist the debtor in fulfilling its duties.)

32.    Further, the other actions that the Debtor has taken since June 24—consistent with the Term Sheet and in reliance on the Compromise Order—lend additional support to the notion that the Debtor remains in control as debtor in possession.  These actions, including retention by the Debtor of DeStefano and Keenan, continued construction of the Property under contracts signed by the Debtor, the proposal of bidding and sale procedures with a broker hired by the Debtor, and more—have been in close collaboration with Builders Capital, Titan, and the Construction Advisor (all as contemplated by the Term Sheet).  But ultimately, such decisions

have been taken by the Debtor within its authority and discretion as debtor in possession.  In fact, the U.S. Trustee has not alleged any action taken as a result of inappropriate control over the Debtor by the Construction Advisor or anyone else, but merely raises the specter of such control based on a misreading of the Application and the Compromise Order.  Such fearmongering is not enough to overcome the plain reality of this situation or to vacate the Compromise Order.

### B.    The Compromise Order was Proper Under Rule 9019

33.    The U.S. Trustee's argument that this Court violated Bankruptcy Rule 9019 by entering the Compromise Order must also fail.  The U.S. Trustee asserts that "Bankruptcy Rule 9019, on its own or in conjunction with section 105(a), cannot be used to override the express provision of section 1104(d)."  Motion to Vacate, ¶ 67.  That may be correct, insofar as it goes.  It also is meaningless here: for the same reasons stated above, the Compromise Order did not override or violate section 1104(d), or any other provision on the Bankruptcy Code.

34.    In reviewing any proposed settlement under Bankruptcy Rule 9019, courts will approve the settlement if it is "fair and equitable" and in the best interests of the debtor's bankruptcy estate.  *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  Ultimately, "[t]he responsibility of the bankruptcy judge . . . is . . . to . . . see whether the settlement falls below the lowest point on the range of reasonableness."  *In re Healthco Int'l, Inc.*, 136 F.3d 45, 51 (1st Cir. 1998).  A settlement is within the range of reasonableness when "the settlement constitute[s] a 'definitive, concrete and immediate benefit[]' that the Trustee reasonably conclude[s] outweigh[s] the uncertainty and delay of litigation."  *Yacovi v. Rubin & Rudman, L.L.P.*, 411 F.App'x 342, 346, 2011 WL 924244, at *3 (1st Cir. Mar. 18, 2011) (quoting *Healthco*, 136 F.3d at 50).

35.    There is no suggestion by the U.S. Trustee that this Court applied the wrong legal

standard in evaluating the settlement proposed in the Application, which defeats any claim of "manifest error of law." Indeed, the Application correctly relied on the factors from *In re Servisense.com, Inc*., 382 F.3d 68, 72 (1st Cir. 2004), and this Court then applied those factors in granting the Application. Thus, the U.S. Trustee's Motion to Vacate is not based on any legal error, as would be necessary to overturn the Compromise Order. The U.S. Trustee's disagreement with how this Court exercised its discretion in applying fact to law simply does not create a "manifest error" required for reversal.

36.     Further, as the Debtor asserted in the Application, the Parties argued at the June 24 Hearing, and this Court recognized in entering the Compromise Order, the settlement proposed by the Application was fair, equitable, and in the best interests of the Debtor's estate and creditors. The Term Sheet set forth a framework for the construction, completion, and sale of the Property and allowed the Parties to move past the differences that hindered this case in its early weeks. Completion and sale of the Property, pursuant to a process that is now well underway, will maximize value available to all creditors in this chapter 11 case and, therefore, is in the best interests of creditors and the estate.

37.     The U.S. Trustee provides no argument within the contours of Bankruptcy Rule 9019 as to why the Application should not have been approved and, instead, wrongly argues that this Court ran roughshod over the Bankruptcy Code. The U.S. Trustee is wrong. Approval of the Application was a proper exercise of this Court's authority and discretion, and the Motion to Vacate should be denied.

**RESPONSES REQUIRED PURSUANT TO D. ME. LBR 9013-1(c)(2)**

38.     Paragraph 1 states legal conclusions to which no answer is required. To the extent

an answer is required, the Debtor admits the allegations in Paragraph 1.[3]

39.     Paragraph 2 states legal conclusions to which no answer is required.  To the extent an answer is required, the Debtor admits the allegations in Paragraph 2.

40.     Paragraph 3 states legal conclusions to which no answer is required.  To the extent an answer is required, the Debtor admits the allegations in Paragraph 3.

41.     Paragraph 4 states legal conclusions to which no answer is required.  To the extent an answer is required, the Debtor denies the allegations in Paragraph 4.

42.     Paragraph 5 states legal conclusions to which no answer is required.  To the extent an answer is required, the Debtor denies the allegations in Paragraph 5.

43.     To the extent Paragraph 6 alleges CFP's intentions, the Debtor lacks knowledge or information sufficient to form a belief as to the truth and therefore denies the same.  With respect to the remaining allegations in Paragraph 6, the Debtor admits the allegations in Paragraph 6.

44.     The Debtor admits the allegations in Paragraph 7.

45.     To the extent Paragraph 8 alleges Titan and CLS's intentions, the Debtor lacks knowledge or information sufficient to form a belief as to the truth and therefore denies the same. With respect to the remaining allegations in Paragraph 8, the Debtor admits the allegations in Paragraph 8 to the extent consistent with the subordination agreement; otherwise, denied.

46.      The Debtor denies the allegations in Paragraph 9, other than to admit the loan was assigned to Builders Capital.

47.     The Debtor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore denies the same.

48.     The Debtor lacks knowledge or information sufficient to form a belief as to the

---

[3] The Debtor denies all allegations in the unnumbered introduction and any headers or footnotes.

truth of the allegations in Paragraph 11 and therefore denies the same.

49.     The Debtor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and therefore denies the same.

50.     The Debtor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 and therefore denies the same.

51.     The Debtor admits the allegations in Paragraph 14.

52.     The Debtor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and therefore denies the same.

53.     The Debtor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and therefore denies the same.

54.     The Debtor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and therefore denies the same.

55.     The Debtor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and therefore denies the same.

56.     The asset purchase agreement speaks for itself, and no response is required to Paragraph 19.  The Debtor denies the allegations in Paragraph 19 to the extent inconsistent with, and a mischaracterization of, the asset purchase agreement (including denying the inaccurate allegation that the Debtor agreed to share a percentage of "any sale proceeds").

57.     The Debtor admits the allegations in Paragraph 20 to the extent consistent with the asset purchase agreement.

58.     The Debtor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and therefore denies the same.

59.     The Debtor admits the allegations in Paragraph 22.

60.     The Debtor admits the allegations in Paragraph 23.

61.     The Debtor admits the allegations in Paragraph 24.

62.     The Debtor admits the allegations in Paragraph 25.

63.     The Debtor admits the allegations in Paragraph 26.  The Debtor further notes that all payments received by BSSN have been fully and timely disclosed in this case, and this Court has already granted the application to employ BSSN.

64.     The Debtor admits the allegations in Paragraph 27, except to clarify that the Debtor is managing construction at the site.

65.     The Debtor denies the allegations in Paragraph 28, which misrepresent the schedules.  The Debtor further states that this appears to be a typo by the U.S. Trustee in alleging that the property was valued at "$150,000."

66.     The Debtor admits the allegations in Paragraph 29.

67.     The Debtor admits the allegations in Paragraph 30 only insofar as they accurately list documents filed on the docket.  The Debtor denies all allegations therein and further denies that the objections were meritorious.   The Debtor further notes that such objections were withdrawn.  The Debtor denies the allegations in footnotes 1, 2, and 3.

68.     The Debtor denies the allegations in Paragraph 31.

69.     The Debtor admits the allegations in Paragraph 32 to the extent they accurately summarize the stipulation, except to further note that the Debtor reserved rights regarding such payments.

70.     Based on information and belief, the Debtor admits the allegations in Paragraph 33 as to prepetition claims assumed by the Debtor.

71.     The Debtor admits the allegations in Paragraph 34.

72.     The Debtor admits the allegations in Paragraph 35.

73.     The Debtor admits the allegations in Paragraph 36.

74.     The Debtor denies the allegations in Paragraph 37.   The U.S. Trustee is mischaracterizing the record and the Term Sheet, which speaks for itself.

75.     The Debtor admits the allegations in Paragraphs 38(a)–(c), (f), (i), and (j), and otherwise denies all other allegations in Paragraph 38.

76.     The Debtor denies the allegations in Paragraph 39.

77.     The Debtor denies the allegations in Paragraph 40 to the extent that they imply that the Debtor was not a party to or involved in the Term Sheet.  The Debtor was closely involved in all negotiations and preparation of the Term Sheet.  With respect to the remaining allegations in Paragraph 40, the Debtor admits the allegations in Paragraph 40 to the extent consistent with the Term Sheet.

78.     The Debtor denies the allegations in Paragraph 41(a) and (b) to the extent that the allegations imply that the Resolution required the Debtor or its manager to take certain actions.  A corporate resolution is a vehicle for a corporate entity to authorize certain actions.

79.     The Debtor admits the allegations in Paragraph 42.

80.     The Debtor admits the allegations in Paragraph 43 insofar as they accurately summarize the Term Sheet, but the Debtor notes that the U.S. Trustee is misrepresenting the scope of the Term Sheet, and the Debtor further notes that the Debtor has filed an application to employ Keenan (and never requested a waiver of any requirement to file that application).

81.     The Debtor denies the allegations in Paragraph 44, other than to acknowledge the U.S. Trustee made such unfounded allegations.

82.     The Debtor denies the allegations in Paragraph 45.

17

83.    The Debtor denies the allegations in Paragraph 46.

84.    The Debtor denies the allegations in Paragraph 47 that the Court entered the Compromise Order without addressing any of the factors required by Bankruptcy Rule 9019.  With respect to the remaining allegations in Paragraph 47, the Debtor admits the allegations in Paragraph 47 only to the extent the U.S. Trustee is correct that the Court approved the settlement and overruled the U.S. Trustee's objection.  The record otherwise speaks for itself.[4]

### **CONCLUSION**

Based on the foregoing, the Debtor requests that this Court enter an order denying the Motion to Vacate and granting such further and additional relief as this Court deems proper.

Dated: July 29, 2025                    Respectfully submitted,

                                        **BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

                                        */s/ Adam R. Prescott*
                                        Adam R. Prescott
                                        100 Middle Street
                                        PO Box 9729
                                        Portland, Maine 04104
                                        Telephone: (207) 774-1200
                                        Facsimile: (207) 774-1127
                                        aprescott@bernsteinshur.com

                                        *Counsel to the Debtor and Debtor in Possession*

---

[4] The Debtor does not believe a response is required to the remaining paragraphs.  To the extent a response is required, all other factual allegations, legal conclusions, and requests for relief are denied.