**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE MARK REAL ESTATE HOLDINGS, LLC,<br><br>Debtor.[1] | Case No. 25-20100 |

**ORDER (A) APPROVING BID PROCEDURES, (B) SCHEDULING AUCTION
AND SALE HEARING, (C) APPROVING FORM AND MANNER
OF NOTICE THEREOF, AND (D) GRANTING
RELATED RELIEF**

Upon the above-referenced motion [Docket No.146] (the "**Motion**") filed by the Debtor;[2] and this Court having reviewed the Motion and having heard the arguments at the hearing on August 12, 2025; and with the consent of Builders Capital and Titan; and this Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT FINDS THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

D.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Mark Real Estate Holdings, LLC's principal place of business is 100 US Route 1, Cumberland, Maine 04021, and the last four digits of its taxpayer identification number are 8757.

[2] Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable.

E.      Good and sufficient notice of the request to approve the Bid Procedures and the hearing was sufficient under the circumstances, and such notice complied with the applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided as to the relief herein.

F.      Neither the filing of the Motion, entry of this Order, the solicitation of bids, or the conducting of the Auction in accordance with the Bid Procedures, nor any other actions taken by the Debtor in accordance therewith, shall constitute a sale of the Property, which sale will only take place, if at all, following the Sale Hearing.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as to the Bid Procedures relief set forth herein.

2.      The Bid Procedures, attached hereto as **Exhibit 1**, are approved and are incorporated into this Order.  The Bid Procedures shall govern the terms on which the Debtor will proceed with the Auction and Sale.

3.      The Debtor (through Keenan as auctioneer) shall conduct an auction (the "**Auction**") to determine the highest and/or best bid, and second highest and/or best bid, for the Property.  The Auction shall be held on **September 17, 2025, at 11:00 AM at 100 US Route 1, Cumberland, Maine**.  The Auction may only be rescheduled by further Order of this Court upon a motion filed by the Debtor, and subject to the consent of Builders Capital and Titan.

4.      The Debtor is authorized, subject to the terms of this Order and the Bid Procedures, to take actions reasonably necessary to conduct and implement the Auction.

5.      No person or entity shall be entitled to any expense reimbursement, break-up fee, topping or termination fee, or other similar fee or payment.

6.       Within two (2) business days after the entry of this Bid Procedures Order, the Debtor shall serve the Bid Procedures Order by first-class mail upon: (a) the Office of the United States Trustee for the District of Maine; (b) the holders of the 20 largest, non-insider unsecured claims against the Debtor; (c) the Consultation Parties; (d) any other parties with known secured claims against the Debtor or their counsel, if known; (e) all parties that have executed a non-disclosure agreement (if any); (f) the Internal Revenue Service; (g) all state and local taxing authorities with an interest in the Property; (h) the Attorney General for the State of Maine; (i) all other known governmental agencies with an interest in the Sale and transactions proposed thereunder; (j) all other parties known or reasonably believed to have asserted an interest in the Property; (k) the Debtor's insurance carriers; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

7.       The Sale Hearing shall be conducted on **September 23, 2025, at 9:00 AM**.  The Debtor will seek entry of an order of the Court at the Sale Hearing approving and authorizing the Sale of the Property to the Successful Bidder.  Subject to the consent of Builders Capital and Titan, the Sale Hearing may be adjourned from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

8.       Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "**Sale Objection**") must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with this Court, and (iv) be served so it is actually received no later than **September 19, 2025** (the "**Sale Objection Deadline**").  A party's failure to timely file a Sale Objection in accordance with this Order may forever bar the assertion, at the Sale Hearing or otherwise, of any objection to the relief requested in the Motion, or to the consummation of the Sale

and the performance of the related transactions, and shall be deemed to be a "consent" for purposes of § 363(f) of the Bankruptcy Code.

9.     Subject to the conducting of the Auction and entry of the Sale Order, the proposed form of purchase and sale agreement attached hereto as **Exhibit 2** is hereby approved.

10.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary.

11.     The terms of the Settlement Term Sheet are incorporated herein by reference as if fully restated herein.

12.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: August 13, 2025                              /s/ Peter G. Cary
                                                    Peter G. Cary
                                                    United States Bankruptcy Judge
                                                    District of Maine

**<u>Exhibit 1 to Bid Procedures Order</u>**

**Bid Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>THE MARK REAL ESTATE HOLDINGS, LLC,<br>     Debtor.[1] | Chapter 11<br><br>Case No. 25-20100 |

**BID PROCEDURES**

   The Mark Real Estate Holdings, LLC (the "**Debtor**") has proposed to sell its real property and related assets generally located at 100 US Route 1, Cumberland, Maine 04021 (the "**Property**").   The Bankruptcy Court has entered an order (the "**Bid Procedures Order**") approving, among other things, bid procedures for the conduct of that sale of the Property (the "**Bid Procedures**").   Pursuant to the Bid Procedures, the Debtor, in consultation with the Consultation Parties (defined below), will determine the highest or otherwise best price for the sale of the Property, subject to Bankruptcy Court approval.

**Diligence Materials**

   Keenan Auction Company ("**Keenan**") will conduct a marketing process and will provide interested buyers with an information package.   To receive due diligence information, including non-public information, any party interested in submitting a bid shall contact Keenan, Attn: Stef Keenan (email: stef@keenanauction.com).   The Debtor reserves the right to require that interested parties execute a commercially reasonable confidentiality agreement.   Each potential bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtor or Keenan.   The Consultation Parties shall be automatically entitled to receive all such diligence information.

**Auction Process**

   **Auction Time and Place**.   The Debtor (through Keenan as auctioneer) shall conduct an auction (the "**Auction**").   The Auction shall be held on **September 17, 2025, at 11:00 AM at 100 US Route 1, Cumberland, Maine**.

   **Deposit**.   For any interested party to participate as a bidder at the Auction, such party **must** deliver to Keenan **prior** to the commencement of the Auction a fully refundable deposit, via check or wire transfer payable to Keenan Auction Company, in the sum of **$500,000.00** (the "**Deposit**") (other than Builders Capital and Titan Funding, which are not required to submit a Deposit).   For

---

[1] The Mark Real Estate Holdings, LLC's principal place of business is 100 US Route 1, Cumberland, Maine 04021, and the last four digits of its taxpayer identification number are 8757.

any bidder not selected as the Successful Bidder or Backup Bidder (defined below), Keenan shall return the Deposit to such bidder within five (5) business days of conclusion of the Auction.

**Bidder Representations**.  By delivering the Deposit and participating in the Auction, each participating bidder represents and warrants that: (a) it has committed or available financing or other available assets to satisfy the purchase price and other obligations under its bid; (b) it has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its bid and the consummation of the transactions contemplated in such bid; (c) it has not engaged in any collusion with respect to the bidding, its bid is a good-faith bona fide offer, and it intends to consummate the proposed transactions if selected as the Successful Bidder or the Backup Bidder; and (d) it submits to the exclusive jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Debtor's qualification of bids, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the closing of the Sale.  The Debtor and the Consultation Party shall have the right, in their discretion, to request reasonable financial information from any potential bidder at any time in order to verify such bidder's ability to timely close the transaction, and all bidders shall promptly comply with any such requests.

**Auction Procedures**.  The Auction shall be conducted in a timely and transparent fashion, and the Debtor and Keenan shall direct, preside over, and record the Auction, upon consultation with the Consultation Parties.

**Increased Deposit for Successful Bidder and Backup Bidder**.  The Successful Bidder and Backup Bidder shall be required to increase the amount of the Deposit to 5.00% of the cash portion of the purchase price, as determined at the Auction, not later than five (5) business days after the conclusion of the Auction.

**PSA and Timeframe for Closing**.  The Successful Bidder and Backup Bidder shall be required to execute a commercially standard form of purchase and sale agreement (the "**PSA**") with the Debtor immediately at the conclusion of the Auction, which shall be substantially in the form of PSA attached to the Bid Procedures Order as Exhibit 2.  The PSA shall include, among other standard terms, the requirement to increase the Deposit to 5.00%, that the Deposit is non-refundable (except as to the Backup Bidder in the event the Successful Bidder timely closes), and that the closing of the sale transaction shall occur within 28 days of the conclusion of the Auction (subject to Bankruptcy Court approval).

## Credit Bid

To the fullest extent permissible under Bankruptcy Code section 363(k), Builders Capital and Titan Funding may credit bid at the Auction, each in its sole discretion.  The credit bid rights of all parties are reserved to the extent provided by section 363(k).  All permissible credit bids shall be treated at the Auction as the equivalent of a cash bid of the same amount.

## Backup Bidder

The second highest or second-best bid at the Auction, as determined by the Debtor, after consultation with the Consultation Parties, shall be required to serve as backup bidder (the

"**Backup Bidder**").  The Backup Bidder shall be required to keep its bid (the "**Backup Bid**") open and irrevocable until two (2) business days after the closing of the sale of the Property, but in no event later than 60 days after the Auction.  Following entry of the Sale Order, if the Successful Bidder fails to consummate the approved transaction, the Debtor may designate the Backup Bidder as the new Successful Bidder, and the Debtor will be authorized to consummate the transaction with the Backup Bidder without further Court order.  In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtor's estate, and the Debtor reserves the right to seek additional damages from the defaulting Successful Bidder to the fullest extent permitted by applicable law.

The deposit, if any, of the Backup Bidder shall be held by the Debtor until two (2) business days after the closing of the Sale with the Successful Bidder, but in no event later than 60 days after the Auction.  In the event the Debtor fails to consummate a transaction with the Backup Bidder based on a breach by the Backup Bidder, the Backup Bidder's deposit shall be forfeited to the Debtor's estate, and the Debtor reserves the right to seek additional damages from the defaulting Backup Bidder to the fullest extent permitted by applicable law.

### Closing the Auction

The Auction shall continue until there is only one bid that the Debtor, after consultation with the Consultation Parties, determines in its reasonable business judgment is the highest and best bid at the Auction (the "**Successful Bid**" and the bidder submitting such Successful Bid, the "**Successful Bidder**"), and the next highest and best bid shall be declared the Backup Bidder.

The Debtor, after consultation with the Consultation Parties, shall file with the Bankruptcy Court a notice of the Successful Bid and Successful Bidder, as well notice of the Backup Bid and Backup Bidder, no later than one (1) business days after conclusion of the Auction.  The Debtor shall not consider any bids submitted after the conclusion of the Auction, unless otherwise ordered by the Bankruptcy Court.

### Sale Hearing

The Bankruptcy Court has scheduled a sale hearing (the "**Sale Hearing**") to be conducted on **September 23, 2025, at 9:00 AM**.  At the Sale Hearing, the Bankruptcy Court shall consider whether to approve the sale of the Property to the Successful Bidder and, if necessary, the Backup Bidder.

### Limitation on Consultation Party Rights

Notwithstanding anything to the contrary in the Bid Procedures Order and the Bid Procedures, if any Consultation Party (or its affiliate or representative) submits a bid and/or otherwise participates at the Auction as a potential buyer, the Debtor shall not be required to consult with such Consultation Party during the Auction and in the selection of the Successful Bidder and Backup Bidder.

**Exhibit 2**

**Form PSA**

# Purchase & Sale Agreement
### Auction ____

This Agreement is entered into this ____ day of _____, 2025, by and between The Mark Real Estate Holdings, LLC in its capacity as debtor and debtor in possession, hereinafter called (the **"SELLER"**), and the following hereinafter referred to as (the **"BUYER"**):

Name:                   _____

Address:                _____

                        _____

Telephone No.:          _____

Email Address:          _____

### Witnesseth

WHEREAS, SELLER is desirous of selling, by bankruptcy auction, all its right, title and interest in and to the property, being land and buildings located at 100 US Route 1 in Cumberland, Cumberland County, Maine.  The real estate is more particularly bounded and described in **Exhibit A**, a copy of which is attached hereto and incorporated herein (the "**Real Estate**" or the "**Property**").

WHEREAS, BUYER is desirous of purchasing the Property at said sale for the sum of

($_____)_____

_____ Dollars.

NOW THEREFORE, the SELLER, in consideration of the nonrefundable deposit of _____ ($_____.00), receipt of which is hereby acknowledged, plus $_____ made payable and delivered to Keenan Auction Company, Inc., 2063 Congress Street, Portland, Maine 04102, on or before _____, 2025, at 4PM, does hereby agree to sell and convey the Property to BUYER for the aggregate sum of $_____ and BUYER agrees to purchase the same for the said price upon the following terms & conditions:

Purchase & Sale Agreement
Auction ____
Page 2

1.      The SELLER agrees, at the time of closing and upon receipt of the balance due of the purchase price, to execute and deliver to the BUYER a Quitclaim Deed Without Covenant to the Real Estate.

2.      BUYER acknowledges that BUYER has had an opportunity to inspect the Property and that the Property is being conveyed hereby, its entirety, "AS IS, WHERE IS, AND WITH ALL FAULTS", unrepaired and without any express or implied warranties of any kind or nature.

3.      BUYER agrees, at closing, to pay SELLER the balance of the purchase price in cash or certified U.S. funds.

4.      Financial Capacity: The BUYER represents to the SELLER that it has the financial capacity and financial resources to effect closing within the time specified by and on the terms and conditions provided by this Agreement.  The BUYER'S obligation to purchase the property is **not** conditioned, in whole or in part, upon the BUYER'S ability to obtain financing for the purchase effected hereby.

5.      Closing shall be held at the offices of the SELLER or at such other location as the BUYER and SELLER may agree upon in writing.  Closing shall take place on a date, mutually convenient to the parties, but not in any case later than **twenty eight (28) days** from the date of this Agreement. It is mutually agreed that time is of the essence to this Agreement and said closing.

6.      Remedies of SELLER: If BUYER fails to pay the purchase price in full within the time set forth herein and/or fails to comply with any of the provisions of the Agreement, SELLER and Auctioneer, in addition to all other remedies allowed by law or equity, may retain the full deposit as damages.  In addition, the Property may be resold in any manner determined by the SELLER, in its sole judgment and discretion, and to any party. Any deficiency, together with all expenses and costs of resale (including attorney's fees) will be paid by the defaulting BUYER.   If the BUYER defaults under this Agreement, in addition to other remedies, the Seller shall have the right to assign the BUYER'S rights under this Agreement to a third party.

7.      Failure of SELLER to Perform: If the SELLER is unable to convey title as provided in Section 1 of this Agreement, or is unable to perform hereunder for any reason whatsoever beyond SELLER'S control, the sole obligation of the SELLER shall be to refund the BUYER'S earnest money deposit without interest; and upon making such refund, this Agreement shall terminate and the BUYER shall have no further claims against the SELLER.

8.      Possession: BUYER shall only be entitled to possession at closing.  The Property may be occupied by third parties at the time of the Sale and closing, and the Property is sold subject to any

Purchase & Sale Agreement
Auction _____
Page 3

claims such third parties may have to continue possession.

9.      Taxes and Other Assessments: Except as provided elsewhere herein, all real property and personal property taxes, including taxes for the current year, any unpaid taxes for any prior year, and any other fees including water and sewer charges due to municipal or quasi-municipal corporations, will be the responsibility of the BUYER.

10.     Heating Fuel: Heating fuel will be prorated as of the date of closing based upon the most recent cash price being charged by the fuel company that made the last delivery. The closing day will be counted as a Seller day.

11.     Transfer Taxes: Because the deed will be delivered pursuant to the United States Bankruptcy Code, it is expected that the real estate transaction under this agreement will be exempt from transfer taxes (36 MRS 4641-C(14)).  However, if such taxes are owed, all real estate transfer taxes shall be the responsibility of the BUYER at closing.

12.     The attached Terms and Conditions of Sale are incorporated herein by reference.

13.     Risk of Loss: The risk of loss with respect to the property shall be with the SELLER until Closing occurs.

14.     Public Auction Bid Price Disclosure: The SELLER and BUYER authorize the Auctioneer, its agents and employees, to disclose the public auction bid prices and any information required pursuant to Federal Rule of Bankruptcy Procedure 6004 to any party prior to the actual closing date, and in the event of a non-confirmed, canceled, or defaulted sale.  The sale is subject to entry of an order issued by the United States Bankruptcy Court for the District of Maine approving the sale.

15.     Release: In consideration of the benefits granted to the BUYER pursuant to this Agreement, the BUYER, on the one hand, hereby releases the SELLER, the Auctioneer, and their respective officers, directors, principals, attorneys, successors, and assigns, on the other hand, from any and all claims, actions, causes of actions, omissions, damages, and suits at law or in equity, however arising, whether known or unknown, and whether now existing or hereafter arising, relating to this Agreement or the subject hereof, including the marketing and conduct of the auction.

16.     Entire Agreement: This Agreement represents the entire understanding and agreement of the parties hereto, and the SELLER and the BUYER acknowledge that neither is relying upon any statement or representation, written or oral, of any party of person which has not been embodied in this Agreement.

Purchase & Sale Agreement
Auction _____
Page 4

IN WITNESS WHEREOF the parties have hereunto set their hands on the date first mentioned.

SELLER:                                          BUYER:


_____        _____
By: Edward Piazza                               By:
Its: Manager                                    Its:


_____        _____
WITNESS                                         WITNESS

Purchase & Sale Agreement
Auction _____
Page 5

## Exhibit A

## Terms and Conditions of Sale
## Real Estate Auction
## Sale By Order of United States Bankruptcy Court for the District of Maine

1.      Date/Place of Sale: The Property shall be sold, subject to these terms and conditions, on
_____, 2025, commencing at 11:00 a.m. at 100 US Route 1 in Cumberland, Maine.

2.      Terms of Sale:

a.      The sale is subject to all of those terms set forth in the advertisements of the sale,
including, but not limited to, the terms set forth below.  Additional terms may be announced orally at the
time of the sale.

b.      The Property shall be sold subject to and with the benefit of all development rights,
easements, appurtenances, restrictive covenants, rights of way of record, and any easements, restrictions
and rights of way which are of record or which are visible upon the face of the earth or as set forth in the
Purchase and Sale Agreement, a copy of which is available from the auctioneer.

c.      The real estate and improvements (the "**Property**") will be sold **"AS IS, WHERE IS,
AND WITH ALL FAULTS."**  The Mark Real Estate Holdings, LLC in its capacity as debtor and debtor
in possession (the "**Seller**") assumes that bidders have inspected the Property prior to the sale.  The
Property is offered for sale **"AS IS, WHERE IS, AND WITH ALL FAULTS" unrepaired and
without any express or implied warranties of any kind or nature.**  Square footage dimensions are
approximate and should be independently verified prior to bidding.  The Seller, its agents and subagents,
assume no liability for errors or omissions in these Terms and Conditions of Sale or in any of the property
listings or advertising materials, or in any representations made by any party. Although information has
been obtained from sources deemed reliable, the auctioneer makes no guarantees as to the accuracy of
the information herein contained or in any other property listing or advertising materials.  Any
information provided regarding the Property is for informational purposes only, and cannot be relied
upon for any purpose.  No representations or warranties are made regarding any matter including, without
limitation, the accuracy or completeness of any information or materials provided or any comments made
by the auctioneer or by the Seller or by any other party, regarding the environmental, structural or
mechanical condition of the Property.

d.      A deposit to bid of **$500,000.00** must be left with the auctioneer prior to the sale. The
deposit must be in the form of Certified U.S. Funds, made payable to the auctioneer and increased to
**5.00%** of the final purchase price within 5 business days of the auction. The deposit to bid is nonrefundable
as to the high bidder.  Unsuccessful bidders' deposits will be returned immediately after the auction, unless
designated as the backup bidder.

Purchase & Sale Agreement
Auction _____
Page 6

      e.      Buyer's Premium: There will be a **five percent (5.0%) buyer's premium** added to the high bid price to equate the final purchase price.

      f.      Taxes and Other Assessments: Except as provided elsewhere herein, all real estate and personal property taxes, including taxes for the current year and any unpaid real estate taxes for any prior year, and any other fees including water and sewer charges due to municipal or quasi-municipal corporations will be the responsibility of the Buyer. The Buyer will be responsible for any sales tax as set forth in the Purchase and Sale Agreement.

      g.      Heating Fuel: Heating fuel will be prorated as of the date of closing based upon the most recent cash price being charged by the fuel company that made the last delivery. The closing day will be counted as a Seller day.

      h.      The balance of the purchase price will be due at the Closing of the sale of the Property, which shall occur on or before **twenty eight (28) days** from the date of the public sale.  At the Closing, the Buyer shall pay the balance of the purchase price, in certified U.S. funds.

      i.      The deed to the Property will be Quitclaim Deed Without Covenant. The high bidder shall at his/her cost pay all real estate transfer taxes (including the Seller's share, if any), whether assessed to purchaser or Seller.

      j.      The sale is subject to all of the terms set forth in the Purchase and Sale Agreement, the form of which is included in the Property Information Package, as well as subject to entry of an order issued by the United States Bankruptcy Court for the District of Maine approving the sale.

      k.      If Buyer fails to pay the purchase price in full within the time set forth herein and/or fails to comply with any of the provisions of the Agreement, Seller and Auctioneer, in addition to all other remedies allowed by law or equity, may retain the full deposit as damages.  In addition, the Property may be resold in any manner determined by the Seller, in its sole judgment and discretion, and to any party. Any deficiency, together with all expenses and costs of resale (including attorney's fees) will be paid by the defaulting Buyer.  If the Buyer defaults under this Agreement, in addition to other remedies, the Seller shall have the right to assign the Buyer's rights under this Agreement to a third party.

      l.      The Seller and the auctioneer reserve the right, and subject to applicable provisions of Maine Law, to: (i) refuse to accept any irregular bids or bids that do not comply with the terms of sale; (ii) hold periodic recesses in the sale process; (iii) amend the terms of sale orally or in writing, as they deem to be in the best interest of the Seller.

      m.      A record of bidding will be maintained by the Seller and/or the auctioneer for their own use.

Purchase & Sale Agreement
Auction _____
Page 7

n.        The auction is with reserve and the sale is subject to confirmation of the Seller.

3.        Auction Procedure:  Open and verbal.  Unless otherwise stated, announcements made on the day of the sale will be subject to all printed material.  The method, order of sale, and bidding increments shall be at the sole discretion of the auctioneer. The auctioneer will acknowledge the high bidder at the conclusion of the sale. The high bidder will be required to enter into a purchase and sale agreement with the Seller at the conclusion of the auction.

4.        Disclaimer:  All bidders are invited to inspect the Property and the public records pertaining thereto prior to making a bid.  No warranties, guarantees or representations of any kind are made, and all warranties are disclaimed with respect to any improvements located on the Property, including improvements located underground, the location and/or boundaries of the Property or improvements thereon, title to the Property, environmental compliance, or compliance with any applicable zoning, land use or hazardous waste regulations, laws or ordinances.  The Buyer shall assume responsibility and expense for any title search, title examination or title insurance.  THE SELLER/AUCTIONEER EXPRESSLY AND SPECIFICALLY MAKES NO, AND SHALL MAKE NO, REPRESENTATIONS OR WARRANTIES REGARDING HAZARDOUS OR TOXIC WASTE, SUBSTANCES, MATTERS OR MATERIALS, AS THOSE TERMS MAY BE DEFINED FROM TIME TO TIME BY APPLICABLE STATE, LOCAL AND FEDERAL LAWS, STORED OR OTHERWISE LOCATED ON THE PROPERTY.

5.        Risk of Loss:   The risk of loss with respect to the Property shall be with the SELLER until the Closing shall occur.

6.        Possession: Buyer shall only be entitled to possession at closing as set forth in the Purchase and Sale Agreement.

7.        Applicable Law:  You have signed a written binding contract agreeing to the Terms and Conditions of Sale, and understand that any bid you make falls under the Maine Auction Law, Title 11, Section 2-328 of the Uniform Commercial Code, and the Statute of Frauds.  Maine auctions are under the jurisdiction of the State of Maine Department of Professional and Financial Regulations, Board of Licensure of Auctioneers, 35 State House Station, Augusta, Maine, 04330.

8.        Bidder's Card:  By signing for a bid number, the bidder has signed a written and binding contract agreeing to all of the terms and conditions set forth herein.  If you do not agree with any of the terms or conditions set forth above, please return your bid number to the auctioneer immediately.

9.        Absentee Bids: Absentee or Proxy Bids are subject to all Terms and Conditions of Sale as listed herein or announced at the public sale. Any party submitting a proxy bid must be available, or have a representative available, to execute a Purchase and Sale Agreement at the time of the Sale, and such representative must provide documentation satisfactory to Auctioneer and/or Seller that the representative is duly and appropriately authorized to act on behalf of the parties submitting the proxy bid.

Purchase & Sale Agreement
Auction _____
Page 8


10.     Conflict With Purchase and Sale Agreement:  In the event of a conflict between these Terms and Conditions of Sale and the terms of the Purchase and Sale Agreement executed by the Seller and the successful bidder, the Purchase and Sale Agreement shall control.


11.     Public Auction Bid Price Disclosure: The Seller and Buyer authorize the Auctioneer, its agents and employees, to disclose the public auction bid prices and any information required pursuant to Federal Rule of Bankruptcy Procedure 6004 to any party prior to the actual closing date, and in the event of a non-confirmed, canceled, or defaulted sale.


12.     Lead-based Paint and/or Lead-based Paint Hazards:  Purchaser hereby acknowledges that he/she has waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards and has received a copy of the U.S. Environmental Protection Agency's pamphlet entitled "Protect Your Family From Lead In Your Home."