UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

THE MARK REAL ESTATE HOLDINGS, LLC,

Debtor.

Chapter 11
Case No. 25-20100

# ORDER DENYING THE UNITED STATES TRUSTEE'S MOTION TO VACATE ORDER APPROVING SETTLEMENT AGREEMENT AND TERM SHEET

William K. Harrington, the United States Trustee for Region 1 (the "UST"), requests that the Court vacate its June 24, 2025 order (Docket Entry ("D.E.") 126) (the "Order") approving the application filed by The Mark Real Estate Holdings, LLC (the "Debtor"), seeking approval of a compromise as described in the application and the term sheet attached thereto (collectively, the "Compromise").  (D.E. 112).  The UST argues the Court manifestly erred by "replacing the Debtor with a construction advisor having sole authority to exercise the Debtor's case exit strategy and, therefore, its fiduciary duties, subject to a single creditor's review and approval."  As indicated at the hearing on the motion to vacate on August 12, 2025, the Court finds that the UST did not meet its burden under Fed. R. Civ. P. 59(e), as made applicable by Fed. R. Bankr. P. 9023(a) and, in any event, the Court properly exercised its discretion in approving the Compromise.

    A.    **The UST does not establish manifest error of fact or law.**

As the UST correctly notes, to succeed under Fed. R. Civ. P. 59(e), a movant must show either: (1) that the court committed a manifest error of fact or law; or (2) that newly discovered evidence undermines the relief afforded in the order or judgment at issue.  In re Fin. Oversight and Mgmt. Bd. for Puerto Rico, 998 F.3d 35, 41-42 (1st Cir. 2021) (quoting Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2).  At the hearing, the UST stated that he seeks relief only under the first prong of Rule 59(e).  A manifest error of law is "'[a]n error that is plain and indisputable, and that

amounts to a complete disregard of the controlling law.'" In re Giger, 504 B.R. 286, 2014 (Bankr. D. Me. 2014) (quoting Venegas – Hernandez v. Sonoloux Records, 370 F.3d 183, 195 (1st Cir. 2004)). "A Rule 59(e) motion to alter or amend a judgment may be used to substantively challenge a court's entry of judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" In re Fagel, 2012 WL 542703, *742 (9th Cir. Feb. 21, 2012) (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n. 5 (2008)). *See also*, U.S. v. Metropolitan St. Louis Sewer Dist., 440 F.3d 930, 935 (8th Cir. 2006) ("This court has consistently held that Rule 59(e) motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to the entry of judgment."). In other words, to prevail under Fed. R. Civ. P. 59(e) a movant must point to "controlling decisions or data that the court overlooked". In re Feldman, 606 B.R. 189, 196 (Bankr. E.D.N.Y. 2019) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

At the June 24, 2025 hearing on the Application, counsel for the UST objected to the Compromise on the grounds that its terms: (1) evidenced the Debtor's intent to abrogate its fiduciary obligation by relinquishing control of the case to Builders Capital Financing, LLC ("BCF") and Titan Funding, LLC ("Titan"); (2) resulted in an apparent release of potential chapter 5 claims; (3) lacked clarity in terms as to which entity would oversee the construction advisor; (4) funded professional fees—including those of Debtor's counsel—through protective advances made by BCF; (5) and violated the Bankruptcy Code by conferring upon the construction advisor certain powers belonging solely to a debtor-in-possession or a trustee (i.e., authority to sell assets under 11 U.S.C. § 363, obtain credit under 11 U.S.C. § 364, or pursue causes of action under chapter 5 of the Bankruptcy Code). The Court considered these arguments at the time of the hearing and ultimately decided they were without merit.

In his motion to vacate, the UST argues again that the Debtor improperly abrogated its duties as a fiduciary to the construction advisor under the terms of the Compromise. This is the same

2

argument advanced by counsel for the UST at the June 24, 2025 hearing.  The motion does add new hues to the same argument by stating that the construction advisor is not a bonded fiduciary qualified to serve as a chapter 11 trustee, that the UST is exclusively authorized to appoint a chapter 11 trustee, and that the construction advisor is a receiver.  These arguments, however, presuppose that the Court erred in approving the Compromise because the terms of that agreement amount to replacing the debtor-in-possession with a court-appointed trustee or receiver.  This is the same argument the Court previously considered and rejected.

      The UST offers no new case law or facts which lead this Court to conclude it erred in its prior decision.  As support for its claim that the Compromise violates the Bankruptcy Code, the UST cites to the same terms the Court examined in entering the Order.  None of the case law cited by the UST specifically relates to the retention of a professional on terms resembling those set forth in the Compromise or cites a clear principle of law in conflict with the Order.  In fact, many of the authorities relied upon by the UST stand for the common proposition that a debtor-in-possession owes a fiduciary duty to the estate, or discuss when a trustee should be appointed and who is responsible for appointing that trustee.  See, e.g., In re Plaza de Diego Shopping Ctr., Inc., 911 F.2d 820 (1st Cir. 1990), (Marvel Ent. Grp., Inc. v. Gibbons (In re Marvel Ent. Grp. Inc.), 140 F.3d 463, 472 (3d Cir. 1998), In re Sharon Steel Corp., 871 F.2d 1217 (3d Cir. 1989), In re Casco Bay Lines, Inc., 17 B.R. 946, 951-52 (B.A.P. 1st 1982), In re Bellevue Place Assocs., 171 B.R. 515, 623 (N.D. Ill. 1994), Tradex v. Morse, 339 B.R. 823, 829 (D. Mass. 2006), Casco Northern Bank v. DN Assocs. (In re DN Assocs.), 144 B.R. 195, 198-199 (Bankr. D. Me. 1992), Off. Comm. Of Asbestos Pers. Inj. Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.), 285 B.R. 148, 158 (Bankr. D. Del. 2002). None of those cases are relevant to the question of whether, by approving the Order, the Court impermissibly appointed a de facto trustee or receiver.

      The only remotely relevant cases cited by the UST, Jeremiah v. Richardson, 148 F.3d 17, 23 (1st Cir. 1998) and Jeffery v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995), set forth the well-

3

established standard in this jurisdiction for approval of compromises; a standard which is neither unknown to this Court nor inconsistent with its determination that the Compromise was fair and equitable. The Court applied the correct standard when it approved the Compromise. The mere fact the UST disagrees with how the Court applied that standard is insufficient to warrant relief from the Order under Fed. R. Civ. P. 59(e). See Giger, 504 B.R. at 290 ("[i]n the absence of a decision from the First Circuit, or compelling reasons, choosing one path over the other is not manifest error.").

**B. Approval of the Compromise is appropriate under Fed. R. Bankr. P. 9019.**

Although the UST does not offer a compelling reason for the Court to revisit its approval of the Compromise, the Court will set forth its rationale more fully here for the benefit of the parties. In considering an application to compromise, "th[e] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" In re Healthco Intern., Inc., 136 F.3d 45, 51 (1st Cir. 1998) (citations omitted). Under the First Circuit's long settled standard, courts are to consider four factors in determining whether a settlement is fair and equitable: "(i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise." Jeremiah v. Richardson, 148 F.3d at 17 (quoting Jeffrey v. Desmond, 70 F.3d at 185). See also, In re Servisense.com, Inc., 382 F.3d 68, 72 (2004).

By the time the Debtor filed the Application, just three creditors remained in the case and only two—BCF and Titan—had entered appearances. The Debtor, Titan and BCF raised numerous factual issues through several filings: (1) the Debtor's motion seeking postpetition financing; (2) the Debtor's application to retain counsel; and (3) a motion filed by BCF seeking appointment of a trustee. The Debtor and Titan alleged during an April 29, 2025 hearing that, prepetition, BCF did not

4

diligently seek to achieve the highest value for the Property, choosing instead to allow default interest to continue accruing. BCF, in turn, alleged that the Debtor, in collusion with Titan, acquired the Property prepetition through potentially fraudulent means and then filed the bankruptcy case in bad faith. D.E. 23 and 82. BCF also alleged that the Debtor's proposed counsel was not disinterested, due to its relationship with Titan and its role in the allegedly fraudulent prepetition transfer of the Property. D.E. 83. BCF further argued that mismanagement by the Debtor resulted in, *inter alia*, a lapse in insurance, a lack of adequate fire suppression equipment, and a disruption in utility services. D.E. 85. The Debtor countered at the April 29, 2025 hearing that any prepetition mismanagement was attributable to the Property's prior owners and that the Property was transferred for the purpose of bringing it under new, more capable management.

At a May 29, 2025 hearing, it became apparent that the Debtors, Titan and BCF were stuck in a stalemate. Having been unable to procure necessary postpetition financing on terms the Debtor and Titan found acceptable, the Debtor contemplated dismissal of its case. BCF, on the other hand, did not relish the idea of returning to state court to restart or begin anew prepetition state court litigation. If the case were to proceed, the parties would incur significant additional cost litigating BCF's objection to the Debtor's retention application and BCF's motion seeking appointment of a trustee. At that point, the parties reached the creative solution documented in the Compromise which avoided dismissal, provided a clear path toward completion and sale of the Property, eliminated the need for costly litigation, and allowed the only two active creditors in the case to remain in their chosen forum rather than incur the additional cost and delay of resuming, or commencing, state court litigation. Accordingly, the Court determined the Compromise was both reasonable and equitable and satisfied the Desmond factors.

C.  **The Construction Advisory is not a de facto trustee or receiver.**

The UST also contends that the Compromise violates the Bankruptcy Code because it replaces "the Debtor with a construction advisor having sole authority to exercise the Debtor's case

5

exit strategy, and therefore, its fiduciary duties, subject to a single creditor's review and approval." He further argues that, in doing so, the Court exceeded the bounds of its authority by essentially appointing a trustee or a receiver. The argument is both factually and legally incorrect.

While the Compromise delegates the power to manage the completion and sale of the Property to the construction advisor and grants BCF sole approval rights, these two facts do not, in and of themselves, give either the construction advisor or BCF control over the sale or the Debtor's case exit strategy. For one thing, it was the Debtor, rather than the construction advisor, in the exercise of its rights, powers, and duties as a debtor-in-possession who negotiated the terms of the Compromise, including the milestones set forth in Paragraph 9 of the Term Sheet. The Debtor determined a suitable and reasonable exit strategy through negotiation with Titan and BCF and then sought the Court's approval over that strategy. The construction advisor played no role in negotiating or developing the terms of the Compromise.

Second, both the construction advisor and the general contractor are employed by the Debtor. The Debtor is the only party capable of terminating the construction advisor's employment, even if such termination is subject to BCF's consent. The Debtor continues to be the only party authorized to seek Court approval for (i) retention of Keenan Auction Company and (ii) the bid and sale procedures.

Further, the construction advisor has not been given any of the duties assigned to a trustee in 11 U.S.C. § 1106(a), as made applicable to debtors-in-possession by 11 U.S.C. § 1107. The construction advisor has no duty to receive property, or account for all property received, or authority to examine proofs of claim. The construction advisor has no power or standing to object to claims. The construction advisor has neither the ability, nor the obligation, to furnish information concerning the estate's administration to a party-in-interest. The construction advisor has no authority or responsibility to file a final accounting or seek a final decree. The construction advisor has no authority to file a plan of reorganization and is not obligated to explain why no such plan will be

filed. The construction advisor is not authorized or obligated to file tax returns. The construction advisor has no ability to pay claims against the estate and no right to pursue avoidance actions. Therefore, while the Compromise may delegate to the construction advisor limited authority to manage the completion of construction and oversee the sale process, that authority is neither unfettered, nor broad enough to perform the duties assigned to a trustee by 11 U.S.C. § 1106.

The UST also generally alleges that the construction advisor is the equivalent of a receiver. The UST offers no argument or law in support of this vague assertion, and the Order did not explicitly or implicitly delegate to the construction advisor the scope of rights, duties, and powers associated with that of a receiver under applicable state law.

### D.  All other arguments are waived.

The UST's motion to vacate also alleges shortcomings regarding the employment of Debtor's counsel and reiterates BCF's earlier allegations regarding the appointment of a trustee. It is not immediately clear as to how those allegations relate to the actual issue before the Court: whether the Compromise violates the Bankruptcy Code. The motion seeks to vacate the Order approving the Compromise. The Compromise negated the need for the Court to rule on the factual allegations raised by BCF in its objection to Debtor's counsel's retention and its motion seeking appointment of a trustee. To the extent that the UST argues that the Court erred in granting the retention application and allowing BCF to withdraw its trustee motion, those arguments have been waived.

The UST did not join in either BCF's objection to the Debtor's retention application or its motion seeking appointment of a trustee. In fact, the UST initially took the opposite position. At the May 29, 2025 hearing, the UST's prior counsel, who has since retired, expressed no concerns over either the retention of the Debtor's counsel or the Debtor's ability to manage the Property. In response to the Court's direct inquiry as to the UST's position with respect to both the retention application and the motion to appoint a trustee, the UST's counsel stated that, after presiding over a lengthy meeting of creditors, he was not concerned regarding the adequacy of management or the

7

disinterestedness of counsel. He acknowledged the "controversy" with respect to how the Debtor acquired the Property but said he "fully vetted" the potential conflict with respect to the retention application and found no basis for objecting to Debtor's proposed counsel. He likewise had no concerns regarding bad faith after determining that the Property was transferred to the Debtor for the purpose of removing it from the hands of individuals who mismanaged it prepetition. He indicated that he felt the Debtor filed in good faith for the purpose of completing construction and selling the Property for maximum value. That counsel resigned shortly after the May 29, 2025 hearing and prior to the June 11, 2025 hearing on the Application, but both he, and the trial attorneys who have appeared since, represent the UST. The UST cannot now raise concerns his office expressly rejected at an earlier date.

To the extent that the UST now asserts that the Debtor's counsel is disqualified because that firm's compensation will be paid, under the terms of the Compromise, through protective advances made by BCF, that argument fails. First, the argument appears to have first been raised in the UST's response to the Debtor's objection to this motion. Even if the UST somehow preserved the argument previously, however, it ignores the fact that, though the funds may be coming from BCF, the payment constitutes an extension of credit to the Debtor. It is not uncommon for postpetition financing arrangements to include a carve-out for professional fees and the UST identifies no specific reason here why such an arrangement creates an inherent conflict. The Debtor's counsel is still required to seek Court approval of fees and expenses before it can obtain payment from the funds reserved for professionals, and both the Debtor and BCF seek completion of construction and sale of the Property for maximum value. Without pointing to a specific conflict, the UST's argument is insufficient to establish that the Compromise should result in disqualification of Debtor's counsel.

For the foregoing reasons, the UST's motion to vacate is hereby DENIED in its entirety.

Dated: August 13, 2025                          /s/ Peter G. Cary
                                                Judge Peter G. Cary
                                                United States Bankruptcy Court