# Backup Bidder
## Purchase & Sale Agreement
### Auction 25-100

This Agreement is entered into this 17 day of September, 2025, by and between The Mark Real Estate Holdings, LLC in its capacity as debtor and debtor in possession, hereinafter called (the "SELLER"), and the following hereinafter referred to as (the "BUYER"):

Name: _Titan Funding LLC and/or assigns_

Address: _84 Marginal Way, Ste 600_
_Portland, ME 04101_

Telephone No.: _207-281-3099_

Email Address: _kfisher@dwmlaw.com_

### Witnesseth

WHEREAS, SELLER is desirous of selling, by bankruptcy auction, all its right, title and interest in and to the property, being land and buildings located at 100 US Route 1 in Cumberland, Cumberland County, Maine. The real estate is more particularly bounded and described in Exhibit A, a copy of which is attached hereto and incorporated herein (the "Real Estate" or the "Property").

WHEREAS, BUYER is desirous of purchasing the Property at said sale for the sum of

($_15,330,000._) _Fifteen Million_ ~~The~~ _Three Hundred Thirty Thousand + no cents_ Dollars.

NOW THEREFORE, the SELLER, in consideration of the nonrefundable deposit of Five Hundred, ~~Thousand Dollars ($500,000.00)~~, receipt of which is hereby acknowledged, plus $_____ _0_ _____ made payable and delivered to Keenan Auction Company, Inc., 2063 Congress Street, Portland, Maine 04102, on or before September 24, 2025, at 4PM, does hereby agree to sell and convey the Property to BUYER for the aggregate sum of $_15,330,000._ and BUYER agrees to purchase the same for the said price upon the following terms & conditions:

Purchase & Sale Agreement
Auction 25-100
Page 2

1. The SELLER agrees, at the time of closing and upon receipt of the balance due of the purchase price, to execute and deliver to the BUYER a Quitclaim Deed Without Covenant to the Real Estate.

2. BUYER acknowledges that BUYER has had an opportunity to inspect the Property and that the Property is being conveyed hereby, its entirety, "AS IS, WHERE IS, AND WITH ALL FAULTS", unrepaired and without any express or implied warranties of any kind or nature.

3. BUYER agrees, at closing, to pay SELLER the balance of the purchase price in cash or certified U.S. funds.

4. Financial Capacity: The BUYER represents to the SELLER that it has the financial capacity and financial resources to effect closing within the time specified by and on the terms and conditions provided by this Agreement. The BUYER'S obligation to purchase the property is not conditioned, in whole or in part, upon the BUYER'S ability to obtain financing for the purchase effected hereby.

5. Closing shall be held at the offices of the SELLER or at such other location as the BUYER and SELLER may agree upon in writing. Closing shall take place on a date, mutually convenient to the parties, but not in any case later than **twenty eight (28) days** following the date of default by the highest bidder at the public sale. It is mutually agreed that time is of the essence to this Agreement and said closing.

6. Remedies of SELLER: If BUYER fails to pay the purchase price in full within the time set forth herein and/or fails to comply with any of the provisions of the Agreement, SELLER and Auctioneer, in addition to all other remedies allowed by law or equity, may retain the full deposit as damages. In addition, the Property may be resold in any manner determined by the SELLER, in its sole judgment and discretion, and to any party. Any deficiency, together with all expenses and costs of resale (including attorney's fees) will be paid by the defaulting BUYER. If the BUYER defaults under this Agreement, in addition to other remedies, the Seller shall have the right to assign the BUYER'S rights under this Agreement to a third party.

7. Failure of SELLER to Perform: If the SELLER is unable to convey title as provided in Section 1 of this Agreement, or is unable to perform hereunder for any reason whatsoever beyond SELLER'S control, the sole obligation of the SELLER shall be to refund the BUYER'S earnest money deposit without interest; and upon making such refund, this Agreement shall terminate and the BUYER shall have no further claims against the SELLER.

8. Possession: BUYER shall only be entitled to possession at closing. The Property may be occupied by third parties at the time of the Sale and closing, and the Property is sold subject to any claims such third parties may have to continue possession.

**Backup Purchase & Sale Agreement**
**Auction 25-100**
**Page 3**

9. Taxes and Other Assessments: Except as provided elsewhere herein, all real property and personal property taxes, including taxes for the current year, any unpaid taxes for any prior year, and any other fees including water and sewer charges due to municipal or quasi-municipal corporations, will be the responsibility of the BUYER.

10. Heating Fuel: Heating fuel will be prorated as of the date of closing based upon the most recent cash price being charged by the fuel company that made the last delivery. The closing day will be counted as a Seller day.

11. Transfer Taxes: Because the deed will be delivered pursuant to the United States Bankruptcy Code, it is expected that the real estate transaction under this agreement will be exempt from transfer taxes (36 MRS 4641-C(14)). However, if such taxes are owed, all real estate transfer taxes shall be the responsibility of the BUYER at closing.

12. The attached Terms and Conditions of Sale are incorporated herein by reference.

13. Risk of Loss: The risk of loss with respect to the property shall be with the SELLER until Closing occurs.

14. Public Auction Bid Price Disclosure: The SELLER and BUYER authorize the Auctioneer, its agents and employees, to disclose the public auction bid prices and any information required pursuant to Federal Rule of Bankruptcy Procedure 6004 to any party prior to the actual closing date, and in the event of a non-confirmed, canceled, or defaulted sale. The sale is subject to entry of an order issued by the United States Bankruptcy Court for the District of Maine approving the sale.

15. Release: In consideration of the benefits granted to the BUYER pursuant to this Agreement, the BUYER, on the one hand, hereby releases the SELLER, the Auctioneer, and their respective officers, directors, principals, attorneys, successors, and assigns, on the other hand, from any and all claims, actions, causes of actions, omissions, damages, and suits at law or in equity, however arising, whether known or unknown, and whether now existing or hereafter arising, relating to this Agreement or the subject hereof, including the marketing and conduct of the auction.

16. Entire Agreement: This Agreement represents the entire understanding and agreement of the parties hereto, and the SELLER and the BUYER acknowledge that neither is relying upon any statement or representation, written or oral, of any party of person which has not been embodied in this Agreement.

Backup Purchase & Sale Agreement
Auction 25-100
Page 4

IN WITNESS WHEREOF the parties have hereunto set their hands on the date first mentioned.

SELLER:

_____
By: Edward Piazza
Its: Manager


_____
WITNESS

BUYER:

_Kellie Fisher_ (signature)
By: Kellie Fisher, counsel, Titan Funding LLC
Its: Attorney

_(signature)_
WITNESS

## EXHIBIT A

A certain parcel of land situated on the westerly side of U.S. Route 1 in the Town of Cumberland, County of Cumberland, State of Maine being bounded and described as follows:

Beginning on the westerly sideline of U.S. Route 1 at land now or formerly of Ledgeview Properties, LLC as described in a deed recorded in Book 17591 Page 242 in the Cumberland County Registry of Deeds;

THENCE N 45° 48' 00" W, by and along land of Ledgeview Properties, LLC, a distance of 209.98 feet to capped rebar;

THENCE S 54° 59' 52" W, by and along land of Broad Cove Ridge LLC, a distance of 95.03 feet to land of Ledgeview Properties, LLC to drill hole;

THENCE N 54° 42' 05" W, by and along land of Ledgeview Properties, LLC, a distance of 200.62 feet to capped rebar;

THENCE N 25° 46' 37" E, by and along the southeasterly sideline of interstate 95, a distance of 356.62 feet to capped rebar;

THENCE continuing N 25° 46' 37" E, by and along the southeasterly sideline of Interstate 95, a distance of 17.95 feet to land now or formerly of Glenn S. Porter and Sandra L. Porter as described in a deed recorded in Book 10526 Page 233 in the Cumberland County Registry of Deeds;

THENCE S 55° 51' 33" E, by and along land of Glenn S. Porter and Sandra L. Porter, a distance of 364.92 feet to a capped rebar set in the westerly sideline of U.S. Route 1;

THENCE S 12° 04' 36" W, by and along the westerly sideline of U.S. Route One, a distance of 348.00 feet to the Point of Beginning.

The parcel contains approximately 3.16 acres.

Bearings are Magnetic 1991.

The foregoing premises are conveyed subject to the following:

1. A certain one hundred foot wide beautification easement adjoining the easterly sideline of interstate I-95 as taken by the State of Maine in a Notice of Layout and Taking dated May 28, 1969 and recorded in the Cumberland County Registry of Deeds in Book 3087, Page 593 and further depicted on a Standard Boundary Survey made for the Estate of Janet Lowe Palmer dated December 12, 1986 and recorded in said Registry

of Deeds in Plan Book 161 Page 23.

2. A certain easement for the location and maintenance of a leach bed drainage plume as described in Warranty Deed from Frederick B. Jensen and Darlene E. Jensen to Ledgeview Properties, LLC dated May 1, 2002 and recorded in the Cumberland County Registry of Deeds in Book 17591, Page 242.

Meaning and intending to convey, and hereby conveying, all and the same premises conveyed in a Quitclaim Deed from Broad Cove Ridge, LLC to Cumberland Foreside Partners LLC dated October 26, 2021 and recorded in Book 38823, Page 115 of the Cumberland Country Registry of Deeds.

# Terms and Conditions of Sale
# Real Estate Auction
# Sale By Order of United States Bankruptcy Court for the District of Maine

1.  <u>Date/Place of Sale</u>: The Property shall be sold, subject to these terms and conditions, on September 17, 2025, commencing at 11:00 a.m. at 100 US Route 1 in Cumberland, Maine.

2.  <u>Terms of Sale</u>:

    a.  The sale is subject to all of those terms set forth in the advertisements of the sale, including, but not limited to, the terms set forth below. Additional terms may be announced orally at the time of the sale.

    b.  The Property shall be sold subject to and with the benefit of all development rights, easements, appurtenances, restrictive covenants, rights of way of record, and any easements, restrictions and rights of way which are of record or which are visible upon the face of the earth or as set forth in the Purchase and Sale Agreement, a copy of which is available from the auctioneer.

    c.  The real estate and improvements (the "**Property**") will be sold "**AS IS, WHERE IS, AND WITH ALL FAULTS.**" The Mark Real Estate Holdings, LLC in its capacity as debtor and debtor in possession (the "**Seller**") assumes that bidders have inspected the Property prior to the sale. The Property is offered for sale "**AS IS, WHERE IS, AND WITH ALL FAULTS**" **unrepaired and without any express or implied warranties of any kind or nature.** Square footage dimensions are approximate and should be independently verified prior to bidding. The Seller, its agents and subagents, assume no liability for errors or omissions in these Terms and Conditions of Sale or in any of the property listings or advertising materials, or in any representations made by any party. Although information has been obtained from sources deemed reliable, the auctioneer makes no guarantees as to the accuracy of the information herein contained or in any other property listing or advertising materials. Any information provided regarding the Property is for informational purposes only, and cannot be relied upon for any purpose. No representations or warranties are made regarding any matter including, without limitation, the accuracy or completeness of any information or materials provided or any comments made by the auctioneer or by the Seller or by any other party, regarding the environmental, structural or mechanical condition of the Property.

    d.  A deposit to bid of **$500,000.00** must be left with the auctioneer prior to the sale. The deposit must be in the form of Certified U.S. Funds, made payable to the auctioneer and increased to **5.00%** of the final purchase price within 5 business days of the auction. The deposit to bid is nonrefundable as to the high bidder. Unsuccessful bidders' deposits will be returned immediately after the auction, unless designated as the backup bidder.

e. Buyer's Premium: There will be a **five percent (5.0%) buyer's premium** added to the high bid price to equate the final purchase price.

f. Taxes and Other Assessments: Except as provided elsewhere herein, all real estate and personal property taxes, including taxes for the current year and any unpaid real estate taxes for any prior year, and any other fees including water and sewer charges due to municipal or quasi-municipal corporations will be the responsibility of the Buyer. The Buyer will be responsible for any sales tax as set forth in the Purchase and Sale Agreement.

g. Heating Fuel: Heating fuel will be prorated as of the date of closing based upon the most recent cash price being charged by the fuel company that made the last delivery. The closing day will be counted as a Seller day.

h. The balance of the purchase price will be due at the Closing of the sale of the Property, which shall occur on or before **twenty eight (28) days** from the date of the public sale. At the Closing, the Buyer shall pay the balance of the purchase price, in certified U.S. funds.

i. The deed to the Property will be Quitclaim Deed Without Covenant. The high bidder shall at his/her cost pay all real estate transfer taxes (including the Seller's share, if any), whether assessed to purchaser or Seller.

j. The sale is subject to all of the terms set forth in the Purchase and Sale Agreement, the form of which is included in the Property Information Package, as well as subject to entry of an order issued by the United States Bankruptcy Court for the District of Maine approving the sale.

k. If Buyer fails to pay the purchase price in full within the time set forth herein and/or fails to comply with any of the provisions of the Agreement, Seller and Auctioneer, in addition to all other remedies allowed by law or equity, may retain the full deposit as damages. In addition, the Property may be resold in any manner determined by the Seller, in its sole judgment and discretion, and to any party. Any deficiency, together with all expenses and costs of resale (including attorney's fees) will be paid by the defaulting Buyer. If the Buyer defaults under this Agreement, in addition to other remedies, the Seller shall have the right to assign the Buyer's rights under this Agreement to a third party.

l. The Seller and the auctioneer reserve the right, and subject to applicable provisions of Maine Law, to: (i) refuse to accept any irregular bids or bids that do not comply with the terms of sale; (ii) hold periodic recesses in the sale process; (iii) amend the terms of sale orally or in writing, as they deem to be in the best interest of the Seller.

m. A record of bidding will be maintained by the Seller and/or the auctioneer for their own use.

      n.      The auction is with reserve and the sale is subject to confirmation of the Seller.

3.      <u>Auction Procedure</u>: Open and verbal. Unless otherwise stated, announcements made on the day of the sale will be subject to all printed material. The method, order of sale, and bidding increments shall be at the sole discretion of the auctioneer. The auctioneer will acknowledge the high bidder at the conclusion of the sale. The high bidder will be required to enter into a purchase and sale agreement with the Seller at the conclusion of the auction.

4.      <u>Disclaimer</u>: All bidders are invited to inspect the Property and the public records pertaining thereto prior to making a bid. No warranties, guarantees or representations of any kind are made, and all warranties are disclaimed with respect to any improvements located on the Property, including improvements located underground, the location and/or boundaries of the Property or improvements thereon, title to the Property, environmental compliance, or compliance with any applicable zoning, land use or hazardous waste regulations, laws or ordinances. The Buyer shall assume responsibility and expense for any title search, title examination or title insurance. THE SELLER/AUCTIONEER EXPRESSLY AND SPECIFICALLY MAKES NO, AND SHALL MAKE NO, REPRESENTATIONS OR WARRANTIES REGARDING HAZARDOUS OR TOXIC WASTE, SUBSTANCES, MATTERS OR MATERIALS, AS THOSE TERMS MAY BE DEFINED FROM TIME TO TIME BY APPLICABLE STATE, LOCAL AND FEDERAL LAWS, STORED OR OTHERWISE LOCATED ON THE PROPERTY.

5.      <u>Risk of Loss</u>:   The risk of loss with respect to the Property shall be with the SELLER until the Closing shall occur.

6.      <u>Possession</u>: Buyer shall only be entitled to possession at closing as set forth in the Purchase and Sale Agreement.

7.      <u>Applicable Law</u>:  You have signed a written binding contract agreeing to the Terms and Conditions of Sale, and understand that any bid you make falls under the Maine Auction Law, Title 11, Section 2-328 of the Uniform Commercial Code, and the Statute of Frauds. Maine auctions are under the jurisdiction of the State of Maine Department of Professional and Financial Regulations, Board of Licensure of Auctioneers, 35 State House Station, Augusta, Maine, 04330.

8.      <u>Bidder's Card</u>: By signing for a bid number, the bidder has signed a written and binding contract agreeing to all of the terms and conditions set forth herein. If you do not agree with any of the terms or conditions set forth above, please return your bid number to the auctioneer immediately.

9.      <u>Absentee Bids</u>: Absentee or Proxy Bids are subject to all Terms and Conditions of Sale as listed herein or announced at the public sale. Any party submitting a proxy bid must be available, or have a representative available, to execute a Purchase and Sale Agreement at the time of the Sale, and such representative must provide documentation satisfactory to Auctioneer and/or Seller that the representative is duly and appropriately authorized to act on behalf of the parties submitting the proxy bid.

10. <u>Conflict With Purchase and Sale Agreement</u>: In the event of a conflict between these Terms and Conditions of Sale and the terms of the Purchase and Sale Agreement executed by the Seller and the successful bidder, the Purchase and Sale Agreement shall control.

11. <u>Public Auction Bid Price Disclosure</u>: The Seller and Buyer authorize the Auctioneer, its agents and employees, to disclose the public auction bid prices and any information required pursuant to Federal Rule of Bankruptcy Procedure 6004 to any party prior to the actual closing date, and in the event of a non-confirmed, canceled, or defaulted sale.

12. <u>Lead-based Paint and/or Lead-based Paint Hazards</u>: Purchaser hereby acknowledges that he/she has waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards and has received a copy of the U.S. Environmental Protection Agency's pamphlet entitled "Protect Your Family From Lead In Your Home."