**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>The Mark Real Estate Holdings, LLC,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 25-20100 |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER**
**DISMISSING THE DEBTOR'S**
**CHAPTER 11 CASE**

     The Mark Real Estate Holdings, LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), in the above-captioned chapter 11 case (the "**Chapter 11 Case**") respectfully moves this Court (the "**Motion**") for entry of an order dismissing the Chapter 11 Case upon the terms set forth herein. The Debtor files this Motion in anticipation that its pending real estate sale (discussed further below) will close prior to the hearing date on this Motion. In the event that such closing does not occur as expected, the Debtor reserves the right to continue the hearing on the Motion or to withdraw the Motion. In support of this Motion, the Debtor states as follows:

**JURISDICTION AND VENUE**

     1.     The United States District Court for the District of Maine (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

     2.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has

---

[1] The last four digits of The Mark Real Estate Holdings, LLC's federal taxpayer identification number are 8757, and its principal place of business is 100 US Route 1, Cumberland ME 04021.

constitutional authority to enter final judgment in this proceeding.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. On April 22, 2025 (the "**Petition Date**"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

5. The Debtor continues to operate its business and manage its property as debtor and debtor-in-possession. To date, no operating trustee, examiner, or statutory committee has been appointed in the case by the United States Trustee.

6. The Debtor owns the real estate development project formerly called "The Mark," comprised of approximately 45 residential units and located at 100 US Route 1 in Cumberland, Maine (the "**Property**"). The Property was initially owned by Cumberland Foreside Partners, LLC ("**CFP**"). Construction on the Property was to be funded by the primary construction lender, Construction Loan Services II, LLC ("**Builders Capital**"), which holds a first priority mortgage against the Property. On or around late 2024, various contractors ceased working on the Property for nonpayment. As a result, approximately $2 million to $2.5 million of mechanic's lien claims were asserted against the Property (the "**Mechanic's Liens**" and the "**Mechanic's Lienholders**").

7. CFP transferred the Property to the Debtor prior to the Petition Date, which the Debtor asserts was due to the stalling of construction of the Property, the growing Mechanic's Liens, CFP's lack of access to necessary capital, and rapidly growing costs. The Debtor acquired the Property subject to all valid liens and claims secured by such liens, and asserts that its intent was to finish the Property, satisfy and discharge the Mechanic's Liens, and maximize the value of a turn-key property through an orderly and strategic sale process. The Debtor asserts that it has satisfied those objections in this case.

8. Builders Capital has since paid the claims of the Mechanic's Lienholders in full and caused the Mechanic's Liens to be discharged. As a result, the largest prepetition creditors remaining in this case are Builders Capital and Titan Funding, LLC ("**Titan**"), the junior mortgage holder on the Property.

9. Following negotiations with Builders Capital and Titan, the Debtor, Builders Capital, and Titan reach a settlement agreement as reflected in that certain term sheet dated on or about June 16, 2025 (the "**Settlement Term Sheet**"). Pursuant to the Settlement Term Sheet (which was approved by this Court through entry of an order on June 24, 2025 [Dkt. No. 126] (the "**Compromise Order**")), among other things, the Debtor agreed to retain Cordjia Capital Projects Group as construction advisor to oversee and manage completion and sale of the Property, and Builders Capital agreed to fund as a protective advance up to $200,000 for payment of certain professional fees and up to $275,000 toward completion of the Property, all in conjunction with a chapter 11 sale process consistent with the Settlement Term Sheet.

10. On August 13, 2025, this Court entered its order approving the bid procedures for the sale of the Property [Dkt. No. 174] (the "**Bid Procedures Order**"). In accordance with the Bid Procedures Order and Compromise Order, the Debtor, with Keenan Auction Company, Inc., conducted an auction on September 17, 2025. At the auction, Builders Capital was the successful bidder. On September 23, 2025, this Court conducted a sale hearing to approve the sale of the Property to Builders Capital. On September 23, 2025, this Court entered its order approving that sale [Dkt. No. 194] (the "**Sale Order**"). No objections were filed. The Debtor anticipates that in accordance with the Bid Procedures Order, the sale will close on or before October 15, 2025.

11. Upon closing of the sale to Builders Capital, the Debtor will no longer own any real property. Further, because the sale to Builders Capital is through a credit bid, no money will flow

3

into the Debtor's estate at closing as proceeds of the Property.  The Debtor submits that its only potential remaining asset to be administered post-closing is a recently identified cash performance guarantee held by the Town of Cumberland in the sum of $70,000 (the "**Performance Guarantee**").  This sum purportedly was deposited in the town's escrow account prior to the Petition Date as a performance guarantee for the development project and was intended to ensure the completion of all required improvements as determined by the town.  The Debtor is investigating the origins of the Performance Guarantee, but, in the event the Debtor has any rights in the Performance Guarantee (and all of the conditions for its return are met), the Performance Guarantee would constitute collateral of Builders Capital and be unavailable for other creditors or claims.

12. Pending dismissal, the Debtor will continue to pay administrative expenses (in accordance with the Compromise Order and other applicable orders), which will include post-petition professional fees (subject to Court allowance), water and sewer bills, and taxes.  The Debtor anticipates filing final fee applications for professionals (Bernstein Shur and Keenan Auction Company) to be heard contemporaneously with the hearing on this Motion.[2]

### RELIEF REQUESTED

4. The Debtor seeks entry of an order, substantially in the form filed herewith, dismissing the Chapter 11 Case.

### BASIS FOR RELIEF

5. Section 1112(b)(1) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case

---

[2] One additional open issue that must be resolved before dismissal is payment of allowed interim compensation to Bernstein Shur as counsel to the Debtor.  On August 12, 2025, this Court granted Bernstein Shur's first interim fee application [Dkt. No. 170].  As of this filing, the allowed interim compensation remains unpaid (other than application of the retainer).

4

under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1).

6. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the statutory language with respect to conversion and dismissal from permissive to mandatory. See H.R. Rep. No. 109-31(I), at 442, reprinted in 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances"); see also In re TCR of Denver, LLC, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).").

7. The amendments to § 1112 of the Bankruptcy Code limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause. See In re Gilroy, No. BAP NH 07-054, 2008 WL 4531982, at *4 (B.A.P. 1st Cir. Aug. 4, 2008). Section 1112(b)(4) of the Bankruptcy Code outlines a non-exhaustive list of grounds constituting "cause" for dismissal of a chapter 11 case. 11 U.S.C. § 1112(b). One such ground is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," id. § 1112(b)(4)(A), which courts have interpreted to refer to the "debtor's ability to restore the viability of its business," Loop Corp. v. U.S. Tr., 379 F.3d 511, 516 (8th Cir. 2004) (citations omitted).

8. Courts in the First Circuit apply a two-part test to determine whether "cause" to dismiss is present; determining first whether there has been "a diminution of the bankruptcy estate" and, if so, "whether the debtor has a reasonable likelihood of rehabilitation." Andover Covered

5

Bridge, LLC, 553 B.R. 162, 175 (B.A.P. 1st Cir. 2016). Courts may find sufficient cause if a debtor is unable to "effectuate a plan" or where there is not a "reasonable possibility of a successful reorganization within a reasonable period of time." In re Am. Capital Equip., LLC, 688 F.3d 145, 161–62 n.10 (3d Cir. 2012) ("[T]he 'inability to effectuate a plan' remains a viable basis for dismissal[.]").

9. Here, the Debtor will not have an ongoing business to rehabilitate upon closing of the pending sale to Builders Capital and will experience an ongoing diminution of value due to the incurrence of administrative expenses without any corresponding revenue or assets after the sale closes. Further, premised on the sale closing, the Debtor will have no "reasonable likelihood of rehabilitation" because the Debtor will have, after such time, liquidated substantially all of its assets, leaving no business left to reorganize or assets for which the Debtor may maximize value by remaining in chapter 11 after the closing. The Debtor, therefore, believes that cause will exist under § 1112(b) following closing of the sale.

10. Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court should evaluate whether dismissal or conversion is in the best interests of the debtor's creditors and the estate. See 11 U.S.C. § 1112(b); Andover Covered Bridge, 553 B.R. at 172 ("The bankruptcy court has broad discretion to determine . . . whether conversion or dismissal is in the best interest of creditors and the estate."). Courts consider a variety of factors in determining whether to dismiss or convert, including:

(a) whether some creditors received preferential payments, and whether equality of distribution is better served by conversion rather than dismissal;

(b) whether there would be a loss of rights granted if the case were dismissed;

(c) whether the debtor would simply file a further case upon dismissal;

    (d)    the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;

    (e)    in assessing the interest of the estate, whether conversion or dismissal maximizes the estate's value as an economic enterprise;

    (f)    whether any remaining issues would be better resolved outside of the bankruptcy forum;

    (g)    whether the estate consists of a "single asset";

    (h)    whether the debtor engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;

    (i)    whether a plan has been confirmed and whether any property remains in the estate to be administered; and

    (j)    whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

See, e.g., In re Ramallo Bros. Printing, Inc., No. 14-01948, 2015 WL 3862970, at *2 (Bankr. D.P.R. June 22, 2015) (citing In re Costa Bonita Beach Resort, 513 B.R. 184 (Bankr. D.P.R. 2014)). Here, the above factors weigh in favor of dismissal.

    11.    ***First***, the Debtor will sell substantially all of its assets to Builders Capital in accordance with the Sale Order.

    12.    ***Second***, the Debtor does not believe that any rights would be lost if the Chapter 11 Case were dismissed.

    13.    ***Third***, the Debtor will not file a further bankruptcy case upon dismissal, as the Debtor has liquidated its valuable assets and has no basis to file another case.

    14.    ***Fourth***, there are virtually no assets for a chapter 7 trustee to administer or pursue. The Debtor will have liquidated substantially all of its assets in connection with the pending sale to Builders Capital, and the purchase price was a credit bid with no cash to the Debtor. A chapter 7 trustee would, therefore, incur administrative expenses that in all likelihood have no source of

7

repayment given the lack of available cash, thus adding an additional layer of administrative expenses without any attendant benefit.  Further, in the event the Performance Guarantee is returned in the future, such funds are collateral of Builders Capital and not available for other creditors (or the Debtor).

15.     *Fifth*, dismissal maximizes the estate's value as an economic enterprise by minimizing the costs of winding down the Debtor's affairs.  Following dismissal, the Debtor will be able to dissolve and address any remaining issues related to winding down its affairs under applicable non-bankruptcy law.  Beyond that, there is no longer any enterprise value to preserve as of the closing.

16.     *Sixth*, upon the sale closing, the Debtor is not aware of issues to resolve that require oversight of this Court, as the Debtor will have fulfilled its obligations under the Compromise Order and other applicable Court orders.

17.     *Seventh*, the Debtor has no remaining assets after the asset sale, other than the Performance Guarantee (to the extent ever returned and property of the Debtor), which is collateral of Builders Capital in any event.

18.     *Eighth*, there are no allegations of misconduct or bad faith justifying the need for a chapter 7 trustee in this Chapter 11 Case.  The Debtor has met its obligations as a debtor-in-possession in this case and complied with all applicable Court orders.

19.     *Ninth*, as noted, there will be no assets in the Debtor's estate available to be administered after the closing.

20.     *Finally*, there are no environmental, safety, or other special concerns warranting a chapter 7 trustee.

21.     In sum, it is in the best interests of the estate and creditors to dismiss the Chapter

8

11 Case promptly following the sale closing. Dismissal eliminates the continued accrual of any administrative expense obligations and brings closure to the Chapter 11 Case in a timely and efficient manner. As such, the Debtor has met its burden of showing that "cause" exists to dismiss, rather than convert, the Chapter 11 Case under § 1112(b) of the Bankruptcy Code.

C. **In the Alternative, Dismissal of the Chapter 11 Case Is Warranted Under § 305(a) of the Bankruptcy Code.**

22. In the alternative, cause exists to dismiss the Chapter 11 Case pursuant to § 305(a) of the Bankruptcy Code. Section 305(a) permits dismissal at any time if "the interests of creditors and the debtor would be better served by such dismissal." 11 U.S.C. § 305(a)(1). Dismissal under § 305(a) requires that both creditors and the debtor benefit from the dismissal, rather than applying a simple balancing test to determine whether dismissal is appropriate. See In re Costa Bonita Beach Resort Inc., 479 B.R. at 46. As described above, cause exists for dismissal. The Debtor is selling substantially all of its assets and is unlikely to confirm a plan of liquidation (and no party would benefit from such a plan effort given the lack of assets to distribute or fund such an endeavor). Dismissal, therefore, provides the most efficient, cost-effective method of effectuating the winddown of the Debtor's estate.

23. WHEREFORE, the Debtor respectfully requests entry of an order: (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated: October 7, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ Adam R. Prescott*
Adam R. Prescott, Esq.
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
aprescott@bernsteinshur.com

*Counsel to the Debtor and Debtor in Possession*