**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>The Mark Real Estate Holdings, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-20100 |

**TITAN FUNDING, LLC'S MOTION TO CONFIRM DEBTOR'S AUTHORITY TO CLOSE SALE TO TITAN FUNDING, LLC AND/OR ITS ASSIGNS AND MOTION TO AMEND SALE ORDER**

**REQUEST FOR EMERGENCY DETERMINATION AND REQUEST FOR LIMITATION OF NOTICE**

**This Motion includes a request for an emergency determination pursuant to Local Rule 9013-4. A statement of the facts and circumstances justifying emergency relief is included. Titan Funding, LLC respectfully requests that the Court schedule an emergency hearing on this Motion on the afternoon of November 12, 2025 or the morning of November 13, 2025.**

Titan Funding, LLC ("Titan") hereby files this motion (the "Motion") requesting entry of an order (1) confirming the authority of The Mark Real Estate Holdings, LLC (the "Debtor") to close on the sale of the property located at 100 U.S. Route 1, Cumberland, ME (the "Property") with Titan and/or its assigns pursuant to the Sale Motion and Bid Procedures Order (as defined herein) and (2) entering an amended sale order in substantially the form attached hereto. In support hereof, Titan states as follows:

**BACKGROUND**

1. On April 22, 2025, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[1] The Mark Real Estate Holdings, LLC's principal place of business is 100 US Route 1, Cumberland, Maine 04021, and the last four digits of its taxpayer identification number are 8757.

1

2. On June 18, 2025, the Debtor filed its *Application of the Debtor to Compromise Controversies By and between the Debtor, Builders Capital Finance LLC, and Titan Funding, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Request for Expedited Determination and Shortened Objection Period* [Docket No. 112] (the "Application to Compromise"). On June 24, 2025, the Court approved the Application to Compromise, including the term sheet between the Debtor, Titan, and Builders Capital Finance LLC ("BC").

3. Pursuant to the terms of the approved compromise, the Debtor, Titan, and BC immediately began negotiating sale pleadings for a public auction of the Property. On July 22, 2025, the Debtor filed the *Motion for Entry of: (I) Order (A) Approving Bid Procedures, (B) Scheduling Auction and Sale Hearing, (c) Approving Form and Manner of Notice Thereof, and (D) Granting Related Relief; and (II) Order (A) Approving Sale of Substantially All Assets Free and Clear and (B) Granting Related Relief* [Docket No. 146] (the "Sale Motion").

4. On August 13, 2025, the Court entered the *Order (A) Approving Bid Procedures, (B) Scheduling Auction and Sale Hearing, (C) Approving Form and Manner of Notice Thereof, and (D) Granting Related Relief* [Docket No. 174] (the "Bid Procedures Order."). Attached to the Bid Procedures Order as Exhibit 1 is the Bid Procedures (the "Bid Procedures") relative to the sale of the Property.

5. The Bid Procedures provide that the second highest bidder shall be required to serve as Backup Bidder. The Bid Procedures also expressly provide that the Successful Bidder and Backup Bidder are each required to execute a purchase and sale agreement (each, a "PSA"). The Bid Procedures further state that "following entry of the Sale Order, if the Successful Bidder fails to consummate the approved transaction, the Debtor may designate the Backup Bidder as the new

2

Successful Bidder, and the Debtor will be authorized to consummate the transaction with the Backup Bidder without further Court order."

6. In accordance with the Bid Procedures and Bid Procedures Order, the Debtor and Keenan Auction Company, Inc. conducted an auction for the Property on September 17, 2025. At that hearing, BC was designated the Successful Bidder and executed a PSA (the "BC PSA"). Titan was designated as the Backup Bidder with a bid of $15,330,000 and executed a backup PSA (the "Titan PSA").

7. As contemplated by the parties throughout the sale process, paragraph 5 of BC's PSA provides: "Closing shall take place on a date, mutually convenient to the parties, but not in any case later than twenty eight (28) days from the date of this Agreement. It is mutually agreed that time is of the essence to this Agreement and said closing." Paragraph 6 of the BC PSA provides: "If BUYER fails to pay the purchase price in full within the time set forth herein and/or fails to comply with any provision of the Agreement…the Property may be resold in any manner determined by the Seller, in its sole judgment and discretion, and to any party."

8. On September 18, 2025, the Debtor filed its *Notice of Auction Results and Designation of Successful Bidder and Backup Bidder* [Docket No. 187] (the "Auction Notice"), to which the BC PSA and Titan PSA are attached.

9. The Court held a hearing on the sale of the Property on September 23, 2025. After the hearing, the Court entered the *Order Granting Debtor's Motion for Entry of an Order: (A) Approving Sale of Substantially all Assets Free and Clear, and (B) Granting Related Relief* [Docket No. 194] (the "Sale Order").

10. Despite having a clear and unobstructed path to closing, BC failed to close on or before October 15, 2025 (its deadline as set forth in the BC PSA). BC did not seek an extension

3

of time to close prior to the expiration of its closing period, nor did it request Titan's consent for an extension.

11. Therefore, by virtue of BC's default under the terms of the BC PSA and its failure to close in accordance with the deadline set forth therein, the Titan PSA became the effective PSA. Titan is now the party that is authorized to close on the sale of the Property.

12. Despite the plain reading of the documents and its own failure to abide by the terms of the documents that it negotiated, BC argues that it is the only party entitled to close on a sale of the Property with the Debtor. On October 30, 2025, BC filed its *Motion to Confirm Debtor's Authority to Close Pursuant to Order Granting Debtor's Motion for Entry of an Order: (A) Approving Sale of Substantially all Assets Free and Clear, and (B) Granting Related Relief* [Docket No. 210] (the "Motion to Confirm Authority"). However, after a hearing on November 4, 2025, the Court denied the Motion to Confirm Authority.

13. Titan's deadline to close on a sale of the Property is November 13, 2025. The Bid Procedures expressly provide that if the Successful Bidder fails to consummate the approved transaction, the Debtor may designate the Backup Bidder as the new Successful Bidder, and the Debtor will be authorized to consummate the transaction with the Backup Bidder without further order of the Court. However, despite this language, BC continues its attempts to thwart the sale of the Property to Titan. On November 7, 2025, BC filed its *Notice of Default Under that Certain Settlement Term Sheet by and Between the Debtor, Builders Capital Finance LLC, and Titan Funding LLC and Affiliates* [Docket No. 226] (the "Default Notice"). The Default Notice purports to call a default based upon (1) the failure of the Debtor to close a sale of the Property by October 31, 2025, and (2) Titan's failure to provide a deposit equal to 5% of the purchase price. BC also alleges that Titan violated the settlement agreement between the parties. For the avoidance of

4

Case 25-20100    Doc 229    Filed 11/10/25    Entered 11/10/25 17:06:40    Desc Main
Document    Page 5 of 10

doubt, the only party in breach as of the date of this filing is BC for its failure to close in accordance with the terms of the BC PSA.

14.     Because BC attempts to cloud title to prevent Titan from exercising its right to purchase the Property in accordance with the documents and procedures to which BC consented, Titan now requests (1) confirmation that it can close and (2) the entry of an amended Sale Order designating Titan as the successful bidder.

15.     Titan is preparing to close on the sale of the Property. Titan intends to wire all funds (including funds to pay U.S. Trustee fees, commissions, and real estate taxes) to Drummond Woodsum's escrow account by close of business on Wednesday. The funds will be held in escrow pending further order of the Court in accordance with this Motion. Moreover, Titan has prepared a draft deed and shared that deed with the Debtor. However, in light of BC's actions, Titan believes that entry of an amended Sale Order is necessary before the transaction can close.

## RELIEF REQUESTED

16.     Titan respectfully requests entry of an order substantially in the form attached hereto approving the sale of the Property to Titan or its assigns.

## BASIS FOR RELIEF

17.     Since entry of the Settlement Order, Titan has complied with every agreement and every Court order. Titan consented to the Sale Motion, the Bid Procedures, the sale process, and the Sale Order. Furthermore, when BC was selected as the Successful Bidder, Titan did not object and simply reiterated its position as the Backup Bidder.

5

18. BC had an unobstructed path to closing its sale with the Debtor, and BC could have closed on its purchase of the Property prior to October 15, 2025. Titan took no action to interfere with the sale of the Property because that right belonged solely to BC until October 15, 2025.[2]

19. For its part, BC also did not object to the sale process or the selection of Titan as the Backup Bidder. BC consented to the Bid Procedures, the Court orders relative to the sale of the Property, and the form PSA that it executed. BC did not object to Titan's presence (and bidding) at the auction, the Auction Notice, or Titan's presence at the hearing to approve the Sale Order in its capacity as Backup Bidder. It was only after BC defaulted under the BC PSA that it raised any concerns with Titan as the Backup Bidder.

20. Titan's status as Backup Bidder is undisputed, and Titan has the sole right to purchase the Property until November 13, 2025 pursuant to the Titan PSA. Although the Bid Procedures provide that a further order from the Court is unnecessary to sell the Property to the Backup Bidder, BC has manufactured a title problem by virtue of its filing of the Default Notice, and Titan now believes it is necessary to obtain an amended sale order to ensure that the sale is free and clear of BC's lien.

21. In accordance with the Default Notice, Titan anticipates that BC will argue that because the sale hasn't closed by October 31, the Debtor must now give BC a deed in lieu of foreclosure. First, the Debtor can only convey an interest in the Property that it has. Here, the Debtor's interest in the Property has been pledged to Titan through the Titan PSA (to which BC consented), such that a deed in lieu of foreclosure would be ineffective and would remain subject to Titan's rights. Moreover, the failure to close by October 31 was solely the result of BC's failure

---

[2] BC has still not provided an explanation as to why it failed to close by October 15, 2025. It has made amorphous arguments that it faced issues relative to title insurance. However, BC had an order from this Court that provides that the Debtor was authorized to sell the Property to BC free and clear of all liens, claims, and encumbrances.

to comply with the terms of its own PSA. BC cannot manufacture a default, then capitalize on that default to the detriment of Titan. Had BC not defaulted under its own PSA, the sale would have closed long before October 31. Finally, BC has waived the October 31 deadline by its acquiescence to Titan as the backup bidder with the full knowledge and consent of the 28-day closing period in the Titan PSA.

22. Titan further anticipates that BC will argue that Titan failed to provide a deposit of 5% of the purchase price, and therefore is in default. This argument is meritless because the Bid Procedures and the Titan PSA provides that no deposit is required. As set forth in the Titan PSA (attached to the Auction Notice as Exhibit B), the deposit language was crossed out of the Titan PSA, and $0 was included in the space to designate the deposit. This is the same language that was used in the BC PSA. Thus, no deposit was necessary and Titan is not in default under the Titan PSA.

23. Finally, Titan anticipates that BC will argue that by virtue of the Subordination and Intercreditor Agreement by and between Titan and BC (the "SIA"), Titan shall be required to turn over its interest in the Property to BC until BC's claim is paid in full. The SIA governs the relationship between BC and Titan in their capacity as creditors. It does not have any bearing on either party's ability to purchase the Property through a process that all parties consented to and which received Court approval. Nothing in the SIA prevents Titan from participating in a public auction and purchasing the Property free and clear. Moreover, even if the SIA could be interpreted to prevent Titan from purchasing the Property (it could not), BC has waived the opportunity to object by its failure to object to Titan as the Backup Bidder.

24. For these reasons, Titan respectfully requests entry of an order approving the amended sale order submitted herewith. Titan also requests that the Court order BC to provide it

with wire instructions to ensure that it is able to send the sale proceeds directly to BC. Should BC not provide wire instructions, Titan will direct the wire of such proceeds to the Debtor's DIP account, which shall be held for BC.

### **STATEMENT PURSUANT TO LOCAL RULE 9013-4(4)**

25. Titan's deadline to close on the sale of the Property is November 13, 2025. Therefore, Titan seeks entry of an order on an emergency basis prior to close of business on November 13, 2025 to ensure that it has enough time to close the transaction and wire funds accordingly. Although Titan did not initially contemplate needing an amended Sale Order, the Default Notice filed on November 7, 2025 has created a question as to title such that Titan believes the entry of an amended order is necessary.

26. Titan files this motion as an emergency motion because of the federal holiday on November 11, 2025. Titan respectfully requests a hearing on this Motion on Wednesday, November 12, 2025 or Thursday, November 13, 2025.[3]

27. As the Court has already denied BC's motion to confirm authority, the issues presented herein are not novel issues to BC or the Debtor. Therefore, no party will be prejudiced if the Motion is heard on an emergency basis with shortened notice.

WHEREFORE, Titan respectfully requests that the Court enter the amended Sale Order submitted herewith and grant such other and further relief as is just and proper.

---

[3] Titan understands that a hearing on Thursday, November 13, 2025 would be beyond 48-hour notice period relative to request for emergency determinations; however, Titan files this as an emergency motion in light of the federal holiday. Titan consents to a hearing on November 13, 2025.

Dated: November 10, 2025

Respectfully submitted,

*/s/ Jeremy R. Fischer*
Kellie W. Fisher
Jeremy R. Fischer
Christopher L. Brooks
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
Telephone: (207) 772-1941
E-mail: kfisher@dwmlaw.com
jfischer@dwmlaw.com
cbrooks@dwmlaw.com

*Counsel to Titan Funding, LLC*

9

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served the foregoing document via this Court's CM/ECF system on all parties requesting CM/ECF notice in this bankruptcy proceeding.

Dated: November 10, 2025                       */s/ Jeremy R. Fischer*