**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: | Chapter 11 |
| COZY HARBOR SEAFOOD, INC., CASCO BAY LOBSTER CO., INC., and ART'S LOBSTER CO., INC., | Case No. 25-20160 (Jointly Administered) |
| Debtors.[1] | |

**NOTICE OF SALE HEARING, DESIGNATION OF SUCCESSFUL BID, PROPOSED SALE, AND RELATED TERMS, CONDITIONS, AND DEADLINES**

Cozy Harbor Seafood, Inc., Casco Bay Lobster Co., Inc., and Art's Lobster Co., Inc., the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Motion for Entry of: (I) Order (A) Approving Bid Procedures, (B) Scheduling Auction and Sale Hearing, (C) Approving Form and Manner of Notice Thereof, and (D) Approving Procedures for Assumption and Assignment of Contracts and Leases; and (E) Granting Related Relief; and (II) Order (A) Approving Sale of Substantially All Assets Free and Clear; (B) Authorizing Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 112] (the "**Bid Procedures and Sale Motion**").

On August 21, 2025, the Bankruptcy Court entered its order granting the bid procedures relief sought in the Bid Procedures and Sale Motion [Docket No. 164] (the "**Bid Procedures Order**"). Through the Bid Procedures Order, the Bankruptcy Court approved the Bid Procedures (as defined in the Bid Procedures Order, and as amended from time to time by subsequent Court Orders) and granted certain related relief.

In accordance with the Bid Procedures Order and subsequent Orders modifying various deadlines in the Bid Procedures Order, the Bankruptcy Court will conduct a final evidentiary hearing to consider the proposed sale of the Debtors' assets (which sale is described below) at the United States Bankruptcy Court for the District of Maine (the "**Court**"), 537 Congress Street, 2nd Floor, Portland, ME 04101, on **October 31, 2025, at 9:30 a.m.** (the "**Hearing**").

You are encouraged to participate in the Hearing, either directly or through your attorney, as appropriate. Any party wishing to participate in the Hearing may do so: (a) in person in the courtroom in Portland; (b) by video from the United States Bankruptcy Court in Bangor, Maine; or (c) by telephone pursuant to the Court's Administrative Procedures for Telephonic Participation set forth in Appendix B to the Court's Local Rules. If you intend to participate in the Hearing via telephone, you are required to register with CourtCall at 1-866-582-6878, no later than 3:00 p.m.

---

[1]The last four digits of the federal taxpayer identification numbers for the debtors are as follows: Cozy Harbor Seafood, Inc.: 8494; Casco Bay Lobster Co., Inc.: 0247; and Art's Lobster Co., Inc.: 1363. The principal place of business for the debtors is 75 St. John Street, Portland, ME 04102.

the last business day prior to the Hearing. **Anyone who anticipates introducing evidence, appearing as a witness, or cross-examining a witness, however, may not participate by phone at the Hearing.**

Further, please take notice that on October 20, 2025, the Debtors filed the Notice Regarding Executed Asset Purchase Agreement [Dkt. No. 242, as supplemented by Docket No. 243] (the "**APA Notice**"). Pursuant to the APA Notice and the Asset Purchase Agreement attached thereto, the Debtors propose to sell substantially all of their assets to Aquashell USA, LLC pursuant to the terms and conditions of that certain Asset Purchase Agreement dated October 20, 2025 [Doc 242-1] (including all exhibits, schedules, addendum, and ancillary documents referenced therein, the "**APA**").

All parties are advised to review the APA carefully. Certain the terms and conditions of the APA are summarized as follows:[2]

| Buyer | Aquashell USA, LLC ("**Purchaser**") |
|---|---|
| **Purchased Assets** | Excepting the Excluded Assets, upon the terms and subject to the conditions set forth herein, on the Closing Date, Sellers shall sell and deliver to Purchaser, and Purchaser shall purchase from Sellers, all of Sellers' rights, title and interests in the Personal Property, Inventory, Assumed Contracts[3] accepted by Purchaser, and the Licenses and Permits (the "**Assets**"), in each case free and clear of any and all Encumbrances, Claims, rights, remedies or interests, except as specifically permitted herein, as approved for sale, transfer and assignment pursuant to the Sale Order. The Assets shall not include the Excluded Assets. |
| **Excluded Assets** | Notwithstanding anything else to the contrary set forth the APA, the Assets shall not include, and Purchaser shall not buy or have any liability or obligation with respect to, any of the following (collectively, the "**Excluded Assets**"): (a) Cash of Sellers; (b) Any and all causes of action of Sellers, whether known or unknown on the Closing Date, including any and all causes of action arising under chapter 5 of the Bankruptcy Code, but excluding those causes of action relating to Assumed Contracts, which causes of action shall be included in the Assets; (c) Except as set forth in Section 9.1(b)(vii) solely with respect to damage or destruction of any Assets occurring after the entry of the Sale Order, Sellers' rights and interests under any insurance policies; (d) Any and all: (i) employment, consulting, advisory or service agreements, plans, commitments, arrangements, understandings or other contracts, unless assumed hereunder; (ii) leases or consignment agreements and arrangements, unless assumed hereunder; (iii) |

---

[2] This summary is qualified in its entirety by the APA. To the extent of any conflict between this summary and the APA, the APA shall control. Capitalized terms used in this summary shall have the meaning ascribed to such terms in the APA.

[3] "**Assumed Contracts**" shall mean any and all executory contracts and/or leases assumed by any of Sellers and assigned to Purchaser pursuant to the terms of the APA and the Sale Order, and includes leases and/or subleases (as the case may be) for the existing facilities operated by Sellers, including for the Union Wharf, Portland Fish Pier, Tenants Harbor and St. John Street locations, but subject, in the case of the Tenants Harbor and St. John Street locations, to Section 8.2(f) of the APA and subject, in the case of the Union Wharf location, to Section 8.2(g) of the APA.

| | |
|---|---|
| | employee benefit, deferred compensation and/or severance agreements, plans, commitments, arrangements or understandings including, without limitation, all stock option, stock purchase, bonus, incentive and similar agreements, plans, commitments, arrangements or understandings; (iv) collective bargaining agreements, commitments, arrangements or understandings with employees; and (v) agreements, obligations and liabilities with respect to or relating to any "pension plan" or "welfare plan" (as such terms are defined in ERISA); and (e) All utility deposits. |
| **Assumed Liabilities** | Purchaser shall not assume any liabilities or obligations of Sellers, except for those specific liabilities and obligations from and after the Closing as to the Licenses and Permits and the leases and subleases (as applicable) referenced and included in the Assumed Contracts (the "**Assumed Liabilities**"); provided that Purchaser shall not assume any liability or obligations of Sellers in relation to Sellers' noncompliance with the Assumed Contracts or the Licenses and Permits that arose on or prior to the Closing Date (including any applicable cure costs), and/or to the extent provided for by the terms of the Sale Order. |
| **Deposit** | Prior to the Effective Date, Purchaser delivered to Monument Title Company ("**Escrow Agent**"), as escrow agent, the sum equal to approximately Two Hundred Eighty Thousand Dollars ($280,000.00) (the "**Deposit**"). |
| **Purchase Price** | The purchase price for the Assets (the "**Purchase Price**") shall consist of **Six Million Five Hundred Four Thousand Nineteen and 00/100 Dollars ($6,504,019.00)** (the "**Base Price**"), subject to adjustment as set forth below, in cash or by means of a completed federal funds wire transfer to an account or accounts designated by Sellers in writing not later than one (1) Business Day prior to the Closing Date, provided that the Purchase Price shall be subject to all prorations and adjustments set forth in the APA, including, without limitation, those set forth in Section 8.7 of the APA.  In addition, it is acknowledged that the Base Price referenced above is based on Purchaser having allocated a value of $2,015,099 to Sellers' accounts receivable, $2,738,920 to Sellers' Inventory and $1,750,000 to the Personal Property of Sellers.  The foregoing value attributable to accounts receivable is based upon the values provided by Sellers to Purchaser as of October 11, 2025, with the accounts receivable as of such date shown on **Schedule AR** attached hereto and the foregoing value attributable to Inventory is based upon the values provided by Sellers to Purchaser as of October 11, 2025, with a summary of Inventory as of such date shown on **Schedule INV** attached hereto.  At or about Closing, the Base Price shall be adjusted from the foregoing values for accounts receivable and Inventory in accordance with the following formula: (i) 90% of the value of the actual accounts receivable not more than 90 days past due as of the Closing and less any setoffs which may be asserted by the account debtor (the "**Valued Receivables**"); and (ii) 85% of the value of the actual Seafood Inventory which is good, usable and saleable, with such Inventory valued at the lower of cost or selling price.  For the foregoing purposes, "good, usable and saleable" Seafood Inventory shall consist of all Seafood Inventory, except for such Seafood Inventory whose "best end date" as of the Closing Date does not extend more than twelve (12) months after the Closing Date (such Seafood Inventory which is not considered "good, usable and saleable" referenced herein as the "**Old Inventory**").  The Parties shall cooperate with one another in determining the foregoing values, with Purchaser having the right to inspect and |

3

| | |
|---|---|
| | count Inventory prior to Closing to arrive at the adjusted figures, which will result in an adjustment to the Purchase Price, either plus or minus, as the case may be. Any dispute with respect to the foregoing shall be settled by the Bankruptcy Court. The term "Dollars" or "$" as used in this Agreement refers to United States Dollars.  The Purchase Price shall be allocated to the three (3) separate Sellers premised on the value of the Assets attributable to each of the respective Sellers (the "**Purchase Price Allocation**").  The Purchase Price Allocation is set forth on **Schedule 2.5** to the APA.<br><br>To the extent that within the ninety (90) day period after the Closing, Purchaser collects accounts receivable which are not Valued Receivables, then Purchaser will remit to Sellers 75% of the amounts so collected no later than thirty (30) days after such amounts are collected.  Further, to the extent that Purchaser sells the Old Inventory and collects payment for same from customers at any time within the six (6) month period after the Closing, then Purchaser will remit to Sellers 75% of the amounts so collected.  Purchaser agrees to use diligent efforts to collect the foregoing receivables, but Purchaser is not required to institute litigation to collect such receivables.  In addition, Purchaser will use reasonable good faith efforts to sell the Old Inventory, but such efforts will not require Purchaser to prioritize the sales of such Old Inventory over the sale of other Inventory. |
| **Free and Clear Sale** | The Debtors are seeking to sell the Assets free and clear of all claims, and other interests, claims, and Encumbrances, pursuant to section 363(f) of the Bankruptcy Code, except as to any assumed liabilities. |
| **Private or Public Sale** | The sale was subject to a competitive marketing and bidding process in accordance with the Bid Procedures.  The APA reflects the outcome of that process and Purchaser has been designated as the Successful Bid by the Debtors in accordance with the Bid Procedures. |
| **Closing Date** | The closing (the "**Closing**") shall occur at a date and time mutually agreeable between Purchaser and Sellers that is on or before the Outside Closing Date (defined below), provided the Sale Order has been entered by the Bankruptcy Court and becomes a Final Order; provided, however, that Purchaser, in its sole discretion, may elect to close prior to the Sale Order becoming a Final Order.  The Closing shall be an escrow-style closing through the Escrow Agent.  Sellers and Purchaser shall, no later than 5:00 P.M. (Portland, Maine time) on the Business Day immediately preceding Closing, each deliver to the Escrow Agent all documents, agreements, instruments, certificates, payments and other items required to be delivered by such Party in connection with the transactions contemplated by this Agreement to be held in escrow pending consummation of the Closing on the Closing Date (defined below).  Notwithstanding the foregoing, Purchaser shall deliver to Escrow Agent the balance of the Purchase Price no later than 12:00 P.M. (Portland, Maine time) on the date of Closing (the "**Closing Date**"). |
| **Closing Conditions** | 8.1 **Conditions to Sellers' Obligation to Close**.   Sellers' obligations to consummate the transactions contemplated by the APA are subject to the satisfaction or waiver, at or prior to the Closing Date, of each of the following |

conditions (any or all of which may be waived in writing by Sellers in whole or in part to the extent permitted by applicable Law):

(a) **Representations and Warranties; Covenants**.

(i) Purchaser shall have performed in all material respects all agreements and covenants required hereby to be performed by Purchaser prior to or on the Closing Date, and all representations and warranties of Purchaser contained in the AP and any related transaction documents shall have been true and correct in all material respects when made and shall be true and correct in all material respects at and as of the Closing Date, as if such representations and warranties were made at and as of the Closing Date (except for those representations and warranties that, by their terms, apply only as of an earlier date, which will be true and correct as of such date), and Purchaser shall have delivered to Sellers a certificate, dated as of the Closing Date and signed by an authorized representative of Purchaser, to that effect.

(ii) Purchaser shall have performed, in all material respects, all agreements and covenants required by this Agreement to be performed by it prior to or on the Closing Date, and Sellers shall have received a certificate, dated as of the Closing Date and signed by an authorized representative of Purchaser, to that effect.

(b) **No Injunction**. No injunction, stay or restraining order shall be in effect prohibiting the consummation of the transactions contemplated by the APA.

(c) **Sale Order**. The Bankruptcy Court shall have entered the Sale Order which Sale Order shall authorize the sale of the Assets free and clear of all Claims and Encumbrances (including, without limitation, by specific reference to all filed security interests) and otherwise be in form and substance acceptable to Sellers in its sole discretion, and such Sale Order shall have become a Final Order (except as modified or amended in any immaterial respect or with the consent of Purchaser, which consent may be withheld in its sole discretion for material modifications and amendments).

(d) **Purchaser's Deliveries**. Purchaser shall have paid the Purchase Price (and any other amounts due hereunder, if any) and shall have duly executed and delivered to Sellers each of the documents, instruments and agreements required to be delivered pursuant to the APA.

(e) **Governmental Permits**. All Governmental Permits required to be obtained in connection with the consummation of the transactions contemplated by the APA shall have been obtained and be in full force and effect.

8.2 **Conditions to Purchaser's Obligation to Close**. Purchaser's obligation to consummate the transactions contemplated in this Agreement is subject, at the option of Purchaser, to the satisfaction or waiver, at or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Purchaser in whole or in part to the extent permitted by applicable Law):

(a) **Representations and Warranties; Covenants**.

5

(i) Sellers shall have performed in all material respects all agreements and covenants required hereby to be performed by Sellers prior to or at the Closing Date, and all representations and warranties of Sellers contained in the APA and any related transaction documents shall have been true and correct in all material respects when made and shall be true and correct in all material respects at and as of the Closing Date, as if such representations and warranties were made at and as of the Closing Date (except for those representations and warranties that, by their terms, apply only as of an earlier date, which will be true and correct as of such date), and Sellers shall have delivered to Purchaser a certificate, dated as of the Closing Date and signed by an authorized representative of Sellers, to that effect.

(ii) Sellers shall have performed, in all material respects, all agreements and covenants required by the APA to be performed by Sellers prior to or at the Closing Date, and Sellers shall have delivered to Purchaser a certificate, dated as of the Closing Date and signed by an authorized representative of Sellers, to that effect.

(b) **Sellers' Deliveries**. Sellers shall have duly executed and delivered to Purchaser each of the documents, instruments and agreements required to be delivered by Sellers pursuant to the APA.

(c) **Material Adverse Change**. No material adverse change with respect to the physical condition of the Assets (ordinary wear and tear excepted) or any Law applicable to the Assets or Purchaser's intended use thereof, shall have occurred between the Effective Date and the Closing Date.

(d) **Sale Order**. The Bankruptcy Court shall have entered the Sale Order which Sale Order shall authorize the sale of the Assets free and clear of all Claims and Encumbrances (including, without limitation, by specific reference to all filed security interests), and otherwise be in form and substance acceptable to Purchaser in its sole discretion, and the Sale Order shall have become a Final Order (except as modified or amended in any immaterial respect or with the consent of Sellers, which consent may be withheld in its sole discretion for material modifications and amendments).

(e) **No Injunction or Challenge**. No injunction, stay or restraining order shall be in effect prohibiting the consummation of the transactions contemplated by the APA. No Law, ordinance or regulation shall have been enacted, and no order, judgment, or decree shall have been enacted or rendered by a Governmental Authority or any other Person (and not subsequently dismissed, settled, withdrawn or terminated, nor shall any petition, complaint, or action have been filed or be pending that seeks such order, judgment or decree) which would prevent the consummation of the transaction at the Closing of, or restrain or invalidate, the transactions contemplated by the APA.

(f) **Affiliate Real Estate**. Purchaser shall have entered into agreements with the owners of the Tenants Harbor and St. John Street leased locations on the following terms and conditions which shall be applicable as of Closing.  For a period of ninety (90) days after the Closing (the "**Option Period**"), Purchaser will have an option to purchase each location free and clear of all Encumbrances with the conveyance by general warranty deed for a purchase price of $4,250,000 in the

| | |
|---|---|
| | case of the St. John Street location and $1,500,000 in the case of the Tenants Harbor location, for a total aggregate purchase price of $5,750,000, with the closing thereof to take place within thirty (30) days after Purchaser has provided written notice of the exercise of such options.  The exercise of such options to purchase will be subject to Purchaser being satisfied with the environmental and structural condition of the location and improvements on the premises, an ALTA survey and policies of title insurance with such endorsements as Purchaser may require.  At the Closing, the existing leases for the Tenants Harbor and St. John Street locations will be amended to provide for an extension of the terms of such leases to 2032, at initial rental rates of $24,800 per month for St. John Street and $8,600 per month for Tenants Harbor, with Purchaser having the option to extend such leases for two additional 5-year terms.  The rental rates will increase by 3% annually.  Such leases will constitute triple net leases. If Purchaser does not provide notice of its election to purchase such properties from their owners on or before the last day of the Option Period, such leases will remain in effect and Purchaser will continue its tenancies thereunder on the foregoing terms.  During the Option Period, the owners may continue to market the locations for sale to prospective buyers, but the owners may not enter into any agreements or understandings which could affect or impair the option referenced herein.<br><br>(g) **Union Wharf Real Estate**. Purchaser shall have entered into a sublease for the Union Wharf location with the consent of the ultimate landlord thereof for the leasing of such location on a triple net basis for an initial term expiring on May 31, 2030, with Purchaser having the option to extend such lease for two additional 5-year terms, with an initial rental rate until May 31, 2026 of $15,153.66 per month (plus the $400 per month water discharge fee charged by the City of Portland), with such rent increasing thereafter by 3% annually.<br><br>(h) **Employment or Service Agreements with Owners; Other Employees**. Purchaser will have offered to the Owners the opportunity to enter into employment or consulting arrangements.  In addition, Purchaser's anticipates hiring other existing employees of Sellers to enable Purchaser to continue operations after Closing in the ordinary course. |
| **Additional Terms from APA** | 6.1 **Confidentiality**. If the Closing is consummated, the majority owners of Sellers, namely, John Norton and Joseph Donovan (the "**Owners**") shall not, and shall cause their respective affiliates not to, directly or indirectly, for so long as such information no longer constitutes a trade secret under applicable Law, without the prior written consent of Purchaser, disclose to any Person (other than each other and their respective affiliates) any confidential information concerning the Assets or the business conducted by Purchaser; provided, however, that the foregoing restriction shall not apply to any information that (a) is or becomes generally available to, or known by, the public (other than as a result of disclosure in violation of this Section 6.1), (b) is or becomes generally available to the Owners from a source other than Purchaser (provided that such source is not known by the Owners to be bound by a duty of confidentiality with the Purchaser) or (c) the Owners can establish was independently developed by the Owners (other than by or in connection with the Sellers' business prior to the Closing), without use of any confidential information concerning the Assets or the business of the Purchaser. |

| | |
|---|---|
| | 6.2 **Competition**. For a period of two (2) years after the Closing, the Owners, directly or indirectly, shall not: (a) engage in any "**Competing Business**," which shall mean a business which has as a principal purpose commercial seafood operations for processing and distribution of fresh and frozen seafood, including lobster, cold-water crab, cold-water shrimp and fish fillets, including haddock, cod, flounder and salmon, in the United States, Canada, Mexico, China, Japan and Europe, or (b) invest in, own, manage, operate, finance, control, advise, render services to or guarantee the obligations of any Person engaged in or planning to become engaged in a Competing Business; provided, however, that the Owners may purchase or otherwise acquire up to (but not more than) five percent (5%) of any class of the securities of any Person (but may not otherwise participate in the activities or operations of such Person) if such securities are listed on any national or regional securities exchange or have been registered under Section 12(g) of the Securities Exchange Act of 1934, as amended.<br><br>6.3 **Non-Solicitation of Customers, Vendors and Suppliers**. For a period of five (5) years after the Closing, the Owners, directly or indirectly, shall not: (a) cause, induce or encourage any actual, prospective or former customer, vendor, supplier or independent contractor of the Business, or any other Person who has had a business relationship with the Business, to terminate or modify any such Person's relationship with the Business in a manner that is adverse to the Business or to Purchaser following the acquisition of the Assets by Purchaser; and (b) induce, or attempt to induce, any customer, vendor, supplier or independent contractor or other Person transacting business with the Business or Purchaser (including any Person who was a customer, vendor, supplier or independent contractor or other Person transacting business with the Business or Purchaser within the twelve (12) months preceding such inducement or attempted inducement) to reduce or cease doing business with the Business or Purchaser or in any way interfere with the relationship between any such customer, vendor, supplier or independent contractor or business relation, on the one hand, and the Business or Purchaser, on the other hand.<br><br>6.4 **Non-Solicitation of Employees**. For a period of five (5) years after the Closing, the Owners, directly or indirectly, shall not: (a) solicit or provide any direct or indirect offer or inducement to any Person who becomes a hired employee of Purchaser on the Closing Date (each such Person a "**Former Seller Employee**") for the purpose of inducing or causing any Former Seller Employee to leave the employment of Purchaser if hired at Closing, and (b) employ or provide any compensation or remuneration of any kind to a Former Seller Employee.<br><br>6.7 **Consideration**. In consideration for the promises of Owners set forth in this Article VI, at Closing, Purchaser will pay the sum of Five Thousand Dollars ($5,000) to each Owner. |
| **First Addendum to APA** | The FIRST ADDENDUM TO ASSET PURCHASE AGREEMENT is summarized as follows:<br><br>WHEREAS, as a condition of entering into the APA and closing the transactions therein, Purchaser has required certain agreements, concessions, covenants, and other commitments from non-parties John Norton, Joseph |

Donovan, and WNDK LLC (collectively, the "**Third-Party Obligors**" and the obligations of the Third-Party Obligors under the APA, collectively, the "**Third-Party Obligations**"); and

WHEREAS, the Third-Party Obligors have agreed to incur the Third-Party Obligations under the condition that the Third-Party Obligors receive, prior to closing, from the Bankruptcy Court  an order granting releases in favor of the Third-Party Obligors of certain claims and causes of action related to the APA and the Chapter 11 Cases that may be brought by the Debtors, the Official Committee of Unsecured Creditors (to the extent adequate standing is obtained), and any subsequent estate fiduciary or trustee (including a chapter 7 trustee) (collectively, the "**Third-Party Causes of Action**"); and

WHEREAS, to facilitate the timely closing of the transactions in the APA, Sellers and Purchaser desire to enter into this First Addendum to include certain additional terms and conditions to the APA related to the Third-Party Obligations.

NOW, THEREFORE, in consideration of the mutual benefits to be derived from this First Addendum and the APA, and of the representations, warranties, conditions, agreements and promises contained herein and for other good and valuable consideration, the Parties hereby agree as follows:

1.   If the Third-Party Obligors do not receive from the Bankruptcy Court an order granting releases from the Third-Party Causes of Action on or before October 31, 2025, then Purchaser or Sellers may terminate the APA with no further liability to Purchaser and Sellers thereunder, and Sellers shall immediately return the Deposit to Purchaser.

If you do not want the Court to approve the proposed sale as set forth in the Bid Procedures and Sale Motion, and upon the terms and conditions set forth in the APA, then on or before **October 28, 2025**, you or your attorney must file a written objection explaining your position with the Court via CM/ECF filing system.

If you object to the cure amount or to the possible assumption and assignment of your executory contract(s) or unexpired lease(s) as set forth in the Bid Procedures Order and APA, you must file an objection to such relief with the Bankruptcy Court no later than **October 29, 2025**.

If you are not able to access the CM/ECF filing system, your response should be served upon the Court prior to the applicable deadline at:

Monica M. Bigley, Clerk of Court
United States Bankruptcy Court for the District of Maine
MC Smith Federal Building
202 Harlow Street, 3rd Floor
Bangor, Maine 04401

– and –

D. Sam Anderson, Esq.
Bernstein, Shur, Sawyer & Nelson, P.A.
100 Middle Street, P.O. Box 9729
Portland, ME 04104-5029

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.**

**All parties are advised to review carefully the Bid Procedures Order and the Bid Procedures and Sale Motion and the APA, which, among other relief, seek authority to sell substantially all of the Debtors' assets free and clear of liens, claims, encumbrances, and other interests pursuant to Section 363(f) of the Bankruptcy Code.  The Bankruptcy Court may deem any lienholder or other interest holder to consent to the free and clear sale under Section 363(f)(2) of the Bankruptcy Code to the extent such holder does not timely object to the sale transaction(s) as set forth in the Bid Procedures and Sale Motion.**

If you or your attorney do not take these steps, the Bankruptcy Court may decide that you do not oppose the sale and related relief sought in the Bid Procedures and Sale Motion and may enter an order granting the requested relief without further notice or hearing, including approval of the APA.

You may obtain a copy of the APA and other related sale documents at no charge by contacting Adam Prescott at aprescott@bernsteinshur.com.  All documents also are available online through PACER (https://www.meb.uscourts.gov/pacer).

Dated:   October 22, 2025

Respectfully submitted,
**BERNSTEIN, SHUR, SAWYER & NELSON, P.A.**

*/s/ Adam R. Prescott*
Adam R. Prescott, Esq,
D. Sam Anderson, Esq.
100 Middle Street
PO Box 9729
Portland, Maine 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
aprescott@bernsteinshur.com
sanderson@bernsteinshur.com

*Counsel to the Debtors and Debtors in Possession*